**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARIA TAPIA-RENDON, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 1:21-cv-3400 |
| v. | |
| EMPLOYER SOLUTIONS STAFFING GROUP II, LLC; UNITED TAPE & FINISHING CO., INC.; and EASYWORKFORCE SOFTWARE, LLC, | |
| *Defendants*. | |

<u>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

Plaintiff Maria Tapia-Rendon, individually and on behalf of all others similarly situated, brings this Class Action Complaint and Demand for Jury Trial against Defendants Employer Solutions Staffing Group II, LLC ("ESSG"); United Tape & Finishing Co., Inc. ("United Tape"); and EasyWorkforce Software, Inc. ("EasyWorkforce"). Plaintiff alleges the following based upon personal knowledge as to Plaintiff's own experiences, and as to all other matters upon information and belief, including investigation conducted by Plaintiff's attorneys.

**NATURE OF THE CASE**

1.      This class action alleges violations of the Biometric Information Privacy Act, 740 ILCS 14/1–99 ("BIPA"), and common-law claims for negligence and intrusion upon seclusion.

2.      Since 2008, BIPA has imposed a notice-and-consent requirement on companies possessing biometric data like fingerprints, voiceprints, and faceprints.

3.      Defendants collected and disclosed Plaintiff's biometrics without proper notice and consent. Accordingly, Plaintiff seeks statutory damages as authorized by BIPA, in addition to emotional distress damages and punitive damages for her common law claims.

**PARTIES**

4.      Plaintiff is a citizen of Illinois and a resident of Bolingbrook, Illinois.

5.      ESSG is a Minnesota limited liability company headquartered in Eden Prairie, Minnesota. On information and belief, none of ESSG's members are Illinois citizens.

6.      United Tape is an Illinois corporation headquartered in Bolingbrook, Illinois.

7.      EasyWorkforce is a Delaware limited liability company headquartered in Miramar, Florida. On information and belief, none of EasyWorkforce's members are Illinois citizens.

**JURISDICTION AND VENUE**

8.      This Court has subject matter has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this is a class action in which two defendants are citizens of states different than class members, and because the amount in controversy exceeds $5,000,000.00.

9.      This Court has personal jurisdiction over ESSG because it is registered to do, and does, business in this State. That business included employing Plaintiff, placing her at United Tape for work, and collecting her biometrics from Illinois.

10.      This Court has personal jurisdiction over United Tape because it is headquartered and incorporated in Illinois.

11.      This Court has personal jurisdiction over EasyWorkforce because is conducts substantial business in this State, including knowingly selling the biometric devices at issue for use in this State, and capturing Plaintiff's biometrics in this State.

2

12.    Venue is proper in this Court under 28 U.S.C. § 1391 because Plaintiff resides in Will County, which is within this District; because Plaintiff had her biometrics unlawfully collected from DuPage County, which is within this District; and because this lawsuit arises out of Defendants' conduct in DuPage County, which is within this District.

## FACTUAL BACKGROUND

13.    ESSG is a staffing agency.

14.    United Tape is a manufacturer, and a client of ESSG's. ESSG provides temporary employees to work at United Tape's Woodridge, Illinois facility.

15.    EasyWorkforce develops and sells workplace software and equipment, including biometric timeclocks.

16.    One such biometric timeclock is the Xenio 200 Smart Fingerprint Time Clock ("Xenio 200"). The Xenio 200 uses an optical fingerprint sensor allowing workers to clock in and out of shifts and breaks with their fingerprints.

17.    The first time a worker uses the Xenio 200, they have to set up a profile by placing their finger on the scanner. EasyWorkforce's software scans the person's fingerprint and maps the geometry of the print. The worker must then scan the same fingerprint twice more, to allow EasyWorkforce's software captures a reference template: a mathematical representation of the fingerprint that can be stored and used for comparison against scanned fingerprints.

18.    Each time a worker subsequently uses the Xenio 200, EasyWorkforce's software compares the scanned fingerprint against a database of reference templates to identify the individual using the scanner.

19.    The Xenio 200 is internet-connected, and EasyWorkforce's software allows workers to view information about their shifts, employers to collect information from workers at

clock in/out, employers to deliver messages to workers, and EasySoftware to access the data collected through the Xenio 200.

20.     United Tape and ESSG used Xenio 200 biometric timeclocks to track employee hours at United Tape's Woodridge, Illinois facility.

21.     Plaintiff was employed by ESSG and staffed at United Tape's Woodridge facility.

22.     ESSG and United Tape required hourly workers at the Woodridge facility, including Plaintiff, to clock in and out of shifts and breaks with the Xenio 200 biometric timeclock.

23.     The Xenio 200 was connected to EasyWorkforce's timekeeping software and to ESSG's and United Tape's payroll systems (collectively the "Biometric System").

24.     ESSG and United Tape did not explain the Biometric System to their workers, including Plaintiff.

25.     EasyWorkforce did not explain its biometric timeclocks' functionality to the workers using them, including Plaintiff.

26.     ESSG and United Tape did not tell their workers, including Plaintiff, how they used data collected through the Biometric System.

27.     EasyWorkforce did not tell workers using its biometric timeclocks, including Plaintiff, how it used data collected through them.

28.      ESSG and United Tape did not tell their workers, including Plaintiff, how long they kept the data collected through the Biometric System.

29.     EasyWorkforce did not tell workers using its biometric timeclocks, including Plaintiff, how long it kept data collected through its biometric timeclocks.

30.     ESSG's and United Tape's workers, including Plaintiff, did not consent to ESSG's and United Tape's collection of their fingerprints or the identifying data derived from them.

31.     Workers using EasyWorkforce's biometric timeclocks, including Plaintiff, did not consent to EasyWorkforce's capture and collection of their fingerprints or the identifying data derived from them.

32.     Defendants' misappropriation and misuse of her biometrics—and their accompanying failure to publicly explain how and when they destroy biometrics in their possession—have caused Plaintiff mental anguish and related bodily injury. Plaintiff worries and feels mental anguish about what Defendants will do with her biometrics, what will happen to her biometrics if any Defendants go bankrupt, whether Defendants will ever permanently destroy her biometrics, and whether and to whom each Defendant shares her biometrics.

33.     BIPA has been the law of the State of Illinois since 2008.

34.     At the beginning of the class period, June 24, 2016, BIPA had been in effect for eight years.

35.     By the beginning of the class period, BIPA had also been in the news for some time. Facebook had been sued for BIPA violations over a year earlier,[1] and the case had already resulted in headline-generating rulings.[2]  Google and Shutterfly had likewise found themselves in the news for alleged BIPA violations.[3]

---

[1]*See* Tony Briscoe, *Suit: Facebook facial recognition technology violates Illinois privacy laws*, Chicago Tribune (Apr. 1, 2015), https://www.chicagotribune.com/news/breaking/ct-facebook-facial-recognition-lawsuit-met-story.html.

[2]Russell Brandom, *Lawsuit challenging Facebook's facial recognition system moves forward*, The Verge (May 5, 2016), https://www.theverge.com/2016/5/5/11605068/facebook-photo-tagging-lawsuit-biometric-privacy;.

[3]Christopher Zara, *Google Gets Sued Over Face Recognition, Joining Facebook And Shutterfly In Battle Over Biometric Privacy In Illinois*, International Business Times (Mar. 4, 2016), https://www.ibtimes.com/google-gets-sued-over-face-recognition-joining-facebook-shutterfly-battle-over-2330278.

36. Throughout the class period, then, BIPA was well known, and its obligations clear.

## CLASS ALLEGATIONS

37. Plaintiff brings this action on behalf of the following classes of similarly situated individuals:

> **ESSG Class**: All individuals who used a biometric timeclock in the State of Illinois in the course of employment by ESSG on or after June 24, 2016.

> **United Tape Class**: All individuals who used a biometric timeclock while working at any United Tape facility in the State of Illinois on or after June 24, 2016.

> **EasyWorkforce Class**: All individuals who used any EasyWorkforce biometric timeclock in the State of Illinois on or after June 24, 2016.

38. Excluded from the Classes are any members of the judiciary assigned to preside over this matter, any officer or director of Defendant, counsel for the Parties, and any immediate family member of any of the same.

39. Upon information and belief, the Classes contains scores, if not hundreds, of individuals. The Classes are therefore so numerous that joinder of all members is impracticable. The precise number of Class members can be determined by reference to Defendants' records.

40. Plaintiff's claims are typical of the proposed Classes'. Plaintiff's claims have the same factual and legal bases as the proposed Class members', and Defendants' conduct has resulted in identical injuries to Plaintiff and the other members of the Classes.

41. Common questions of law and fact will predominate over any individualized inquiries. Those common questions include:

> a. Whether Defendants collected the Classes' biometric identifiers or biometric information;

b.   Whether Defendants disclosed the Classes' biometric identifiers or information;

c.   Whether Defendants published written policies establishing retention schedules and biometric-destruction guidelines;

d.   Whether Defendants obtained written releases prior to collecting the Classes' biometrics;

e.   Whether Defendants informed the Classes, in writing, of the purposes and duration for which their biometrics would be collected and stored;

f.   Whether Defendants obtained the Classes' consent prior to disclosing their biometrics;

g.   Whether Defendants are liable for $5,000 or only $1,000 per BIPA violation;

h.   Whether Defendants' conduct was negligent;

i.   Whether Defendants' conduct constituted intrusion upon seclusion; and

j.   Whether punitive damages are warranted against Defendants.

42.   Absent a class action, most Class members would find their claims prohibitively expensive to bring individually, and would be left without an adequate remedy. Class treatment of the common questions is also superior because it conserves the Court's and Parties' resources and promotes efficiency and consistency of adjudication.

43.   Plaintiff will adequately represent the Classes. Plaintiff has retained counsel experienced in biometric class actions. Plaintiff and Plaintiff's counsel are committed to vigorously litigating this action on the Classes' behalf and have the resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to the Classes.

44.   Defendants have acted on grounds generally applicable to Plaintiff and the Classes, requiring the Court's imposition of uniform relief, including injunctive and declaratory relief to the Classes.

**COUNT 1**
**Violation of 740 ILCS 14/15**
**Against ESSG, by Plaintiff and the ESSG Class**

45.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46.     ESSG is a limited liability company and is therefore a private entity. 740 ICLS 14/10.

47.     By collecting Plaintiff's and the ESSG Class's fingerprints through the Biometric System, ESSG collected Plaintiff's and the ESSG Class's biometric identifiers. 740 ILCS 14/10.

48.     By capturing and maintaining reference templates and associated timekeeping information, ESSG collected Plaintiff's and the ESSG Class's biometric information. 740 ILCS 14/10.

49.     By sharing the Biometric System's data with EasyWorkforce, ESSG disclosed Plaintiff's and the ESSG Class's biometric identifiers and information.

50.     Prior to collecting Plaintiff's and the ESSG Class's biometric identifiers and information, ESSG did not inform Plaintiff and the ESSG Class in writing that their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(1).

51.     Prior to collecting Plaintiff's and the ESSG Class's biometric identifiers and information, ESSG did not inform Plaintiff and the ESSG Class of the specific purpose for which their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(2).

52.     Prior to collecting Plaintiff's and the ESSG Class's biometric identifiers and information, ESSG did not inform Plaintiff and the ESSG Class of the length of time that their biometrics would be maintained. 740 ILCS 14/15(b)(2).

53.     Prior to collecting Plaintiff's and the ESSG Class's biometric identifiers and information, ESSG did not obtain a written release authorizing such collection. 740 ILCS 14/15(b)(3).

54.     Prior to disclosing Plaintiff's and the ESSG Class's biometric identifiers and information, ESSG did not obtain Plaintiff's and the ESSG Class's informed consent. 740 ILCS 14/15(d)(1).

55.     While ESSG was in possession of Plaintiff's and the ESSG Class's biometric identifiers and information, ESSG failed to provide a publicly available retention schedule detailing the length of time it would maintain Plaintiff's and the ESSG Class's biometrics and guidelines for permanently destroying the same. 740 ILCS 14/15(a).

56.     Accordingly, individually and on behalf of the ESSG Class, Plaintiff respectfully seeks an order: (a) declaring that ESSG's actions as set forth herein violate BIPA; (b) awarding injunctive and equitable relief as necessary to protect the ESSG Class; (c) finding ESSG's conduct intentional or reckless and awarding $5,000 in damages per violation, per ESSG Class member, as authorized by 740 ILCS 14/20(2); (d) awarding Plaintiff and the ESSG Class their reasonable attorneys' fees, costs, and other litigation expenses under 740 ILCS 14/20(3); (e) awarding Plaintiff and the ESSG Class pre- and post-judgment interest; and (f) awarding such other and further relief as the Court deems equitable and just.

## COUNT 2
### Negligence
### Against ESSG, by Plaintiff and the ESSG Class

57.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

58.     By capturing and collecting Plaintiff's and the ESSG Class's biometrics, ESSG assumed a duty of reasonable care toward Plaintiff and the ESSG Class. That duty required ESSG to exercise reasonable care in the capture, collection, use, and maintenance of Plaintiff's and the ESSG Class's biometrics.

59.     Specifically, its duty of reasonable care obligated ESSG to capture, collection, use, and maintain Plaintiff's and the ESSG Class's biometrics in compliance with BIPA.

60. Because ESSG employed Plaintiff and the ESSG Class members, it owed them a heightened duty of care, requiring ESSG to act carefully and not put Plaintiff and the ESSG Class at undue risk of harm.

61. ESSG breached its duties to Plaintiff and the ESSG Class by failing to implement reasonable procedural safeguards for the capture, collection, use, and maintenance of Plaintiff's and the ESSG Class's biometric identifiers and biometric information.

62. Specifically, ESSG breached its duties to Plaintiff and the ESSG Class by failing to inform them in writing that their biometrics were being captured, collected, stored, and used; inform them in writing of the specific purpose for which their biometrics were being collected, stored, and used; inform them of the length of time that their biometrics would be maintained; and obtain a written release authorizing collection of their biometrics.

63. ESSG further breached its duties to Plaintiff and the ESSG Class by failing to provide a publicly available retention schedule and guidelines for permanently destroying their biometrics.

64. ESSG's breach of its duties to Plaintiff and the ESSG Class has directly caused and continues to cause Plaintiff mental anguish and injury. Plaintiff worries and feels mental anguish about what ESSG will do with her biometrics, what will happen to her biometrics if ESSG goes bankrupt, whether ESSG will ever permanently destroy her biometrics, and whether and to whom ESSG shares her biometrics.

65. Accordingly, individually and on behalf of the ESSG Class, Plaintiff respectfully seeks an order: (a) declaring ESSG's conduct negligent; (b) awarding damages in an amount to be proven at trial; (c) awarding punitive damages; (d) awarding pre- and post-judgment interest; and (e) awarding such other and further relief as the Court deems equitable and just.

**COUNT 3**
**Intrusion Upon Seclusion**
**Against ESSG, by Plaintiff and the ESSG Class**

66.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

67.     By intentionally using biometric-scanning devices to capture and collect Plaintiff's and the ESSG Class's fingerprints and then extracting from those fingerprints uniquely identifying reference templates, ESSG intentionally and unlawfully intruded upon Plaintiff's and the ESSG Class's private affairs and concerns.

68.     Plaintiff and the ESSG Class members held a reasonable expectation that their biometric identifiers and information would not be captured, collected, stored, or used by their employer, and that any entity capturing, collecting, storing, or using their biometrics would do so only with their informed consent.

69.     A reasonable person would find it highly offensive and objectionable that their employer would intrude upon their seclusion by capturing and maintaining their biometrics without informed consent.

70.     ESSG's intrusion upon Plaintiff's and the ESSG Class's seclusion has directly caused and continues to cause Plaintiff mental anguish and injury. Plaintiff worries and feels mental anguish about what ESSG will do with her biometrics, what will happen to her biometrics if ESSG goes bankrupt, whether ESSG will ever permanently destroy her biometrics, and whether and to whom ESSG shares her biometrics.

71.     Accordingly, individually and on behalf of the ESSG Class, Plaintiff respectfully seeks an order: (a) declaring ESSG's conduct to be intrusion upon seclusion; (b) awarding damages in an amount to be proven at trial; (c) awarding punitive damages; (d) awarding pre- and post-judgment interest; and (e) awarding such other and further relief as the Court deems equitable and just.

**COUNT 4**
**Violation of 740 ILCS 14/15**
**Against United Tape, by Plaintiff and the United Tape Class**

72.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

73.     United Tape is a corporation and is therefore a private entity. 740 ICLS 14/10.

74.     By collecting Plaintiff's and the United Tape Class's fingerprints through the Biometric System, United Tape collected Plaintiff's and the United Tape Class's biometric identifiers. 740 ILCS 14/10.

75.     By capturing and maintaining reference templates and associated timekeeping information, United Tape collected Plaintiff's and the United Tape Class's biometric information. 740 ILCS 14/10.

76.     By sharing the Biometric System's data with EasyWorkforce, United Tape disclosed Plaintiff's and the United Tape Class's biometric identifiers and information.

77.     Prior to collecting Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape did not inform Plaintiff and the United Tape Class in writing that their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(1).

78.     Prior to collecting Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape did not inform Plaintiff and the United Tape Class of the specific purpose for which their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(2).

79.     Prior to collecting Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape did not inform Plaintiff and the United Tape Class of the length of time that their biometrics would be maintained. 740 ILCS 14/15(b)(2).

80.     Prior to collecting Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape did not obtain a written release authorizing such collection. 740 ILCS 14/15(b)(3).

81. Prior to disclosing Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape did not obtain Plaintiff's and the United Tape Class's informed consent. 740 ILCS 14/15(d)(1).

82. While United Tape was in possession of Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape failed to provide a publicly available retention schedule detailing the length of time it would maintain Plaintiff's and the United Tape Class's biometrics and guidelines for permanently destroying the same. 740 ILCS 14/15(a).

83. Accordingly, individually and on behalf of the United Tape Class, Plaintiff respectfully seeks an order: (a) declaring that United Tape's actions as set forth herein violate BIPA; (b) awarding injunctive and equitable relief as necessary to protect the United Tape Class; (c) finding United Tape's conduct intentional or reckless and awarding $5,000 in damages per violation, per United Tape Class member, as authorized by 740 ILCS 14/20(2); (d) awarding Plaintiff and the United Tape Class their reasonable attorneys' fees, costs, and other litigation expenses under 740 ILCS 14/20(3); (e) awarding Plaintiff and the United Tape Class pre- and post-judgment interest; and (f) awarding such other and further relief as the Court deems equitable and just.

**COUNT 5**
**Negligence**
**Against United Tape, by Plaintiff and the United Tape Class**

84. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85. By capturing and collecting Plaintiff's and the United Tape Class's biometrics, United Tape assumed a duty of reasonable care toward Plaintiff and the United Tape Class. That duty required United Tape to exercise reasonable care in the capture, collection, use, and maintenance of Plaintiff's and the United Tape Class's biometrics.

86.     Specifically, its duty of reasonable care obligated United Tape to capture, collection, use, and maintain Plaintiff's and the United Tape Class's biometrics in compliance with BIPA.

87.     Because Plaintiff and the United Tape Class members worked at the direction of and for the benefit of United Tape, United Tape owed them a heightened duty of care, requiring United Tape to act carefully and not put Plaintiff and the United Tape Class at undue risk of harm.

88.     United Tape breached its duties to Plaintiff and the United Tape Class by failing to implement reasonable procedural safeguards for the capture, collection, use, and maintenance of Plaintiff's and the United Tape Class's biometric identifiers and biometric information.

89.     Specifically, United Tape breached its duties to Plaintiff and the United Tape Class by failing to inform them in writing that their biometrics were being captured, collected, stored, and used; inform them in writing of the specific purpose for which their biometrics were being collected, stored, and used; inform them of the length of time that their biometrics would be maintained; and obtain a written release authorizing collection of their biometrics.

90.     United Tape further breached its duties to Plaintiff and the United Tape Class by failing to provide a publicly available retention schedule and guidelines for permanently destroying their biometrics.

91.     United Tape's breach of its duties to Plaintiff and the United Tape Class has directly caused and continues to cause Plaintiff mental anguish and injury. Plaintiff worries and feels mental anguish about what United Tape will do with her biometrics, what will happen to her biometrics if United Tape goes bankrupt, whether United Tape will ever permanently destroy her biometrics, and whether and to whom United Tape shares her biometrics.

92.    Accordingly, individually and on behalf of the United Tape Class, Plaintiff respectfully seeks an order: (a) declaring United Tape's conduct negligent; (b) awarding damages in an amount to be proven at trial; (c) awarding punitive damages; (d) awarding pre- and post-judgment interest; and (e) awarding such other and further relief as the Court deems equitable and just.

### COUNT 6
### Intrusion Upon Seclusion
### Against United Tape, by Plaintiff and the United Tape Class

93.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

94.    By intentionally using biometric-scanning devices to capture and collect Plaintiff's and the United Tape Class's fingerprints and then extracting from those fingerprints uniquely identifying reference templates, United Tape intentionally and unlawfully intruded upon Plaintiff's and the United Tape Class's private affairs and concerns.

95.    Plaintiff and the United Tape Class members held a reasonable expectation that their biometric identifiers and information would not be captured, collected, stored, or used by the entity receiving the benefit of their work, and that any entity capturing, collecting, storing, or using their biometrics would do so only with their informed consent.

96.    A reasonable person would find it highly offensive and objectionable that an entity receiving the benefit of their work would intrude upon their seclusion by capturing and maintaining their biometrics without informed consent.

97.    United Tape's intrusion upon Plaintiff's and the United Tape Class's seclusion has directly caused and continues to cause Plaintiff mental anguish and injury. Plaintiff worries and feels mental anguish about what United Tape will do with her biometrics, what would happen to her biometrics if United Tape went bankrupt, whether United Tape will ever permanently destroy her biometrics, and whether and to whom United Tape shares her biometrics.

98.    Accordingly, individually and on behalf of the United Tape Class, Plaintiff respectfully seeks an order: (a) declaring United Tape's conduct to be intrusion upon seclusion; (b) awarding damages in an amount to be proven at trial; (c) awarding punitive damages; (d) awarding pre- and post-judgment interest; and (e) awarding such other and further relief as the Court deems equitable and just.

**COUNT 7**
**Violation of 740 ILCS 14/15**
**Against EasyWorkforce, by Plaintiff and the EasyWorkforce Class**

99.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

100.    EasyWorkforce is a limited liability company and is therefore a private entity. 740 ICLS 14/10.

101.    By scanning Plaintiff's and the EasyWorkforce Class's fingerprints through its biometric timeclock software, EasyWorkforce captured and collected Plaintiff's and the EasyWorkforce Class's biometric identifiers. 740 ILCS 14/10.

102.    By scanning and maintaining reference templates and associated timekeeping information through its biometric timeclocks and accompanying software, EasyWorkforce captured and collected Plaintiff's the EasyWorkforce Class's biometric information. 740 ILCS 14/10.

103.    Through its biometric timeclock software, EasyWorkforce collected, received through trade, or otherwise obtained Plaintiff's and the EasyWorkforce Class's biometric identifies and information.

104.    Prior to capturing, collecting, receiving, and obtaining Plaintiff's and the United Tape Class's biometric identifiers and information, EasyWorkforce did not inform Plaintiff and the EasyWorkforce Class in writing that their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(1).

105. Prior to capturing, collecting, receiving, and obtaining Plaintiff's and the EasyWorkforce Class's biometric identifiers and information, EasyWorkforce did not inform Plaintiff and the EasyWorkforce Class of the specific purpose for which their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(2).

106. Prior to capturing, collecting, receiving, and obtaining Plaintiff's and the EasyWorkforce Class's biometric identifiers and information, EasyWorkforce did not inform Plaintiff and the EasyWorkforce Class of the length of time that their biometrics would be maintained. 740 ILCS 14/15(b)(2).

107. Prior to capturing, collecting, receiving, and obtaining Plaintiff's and the EasyWorkforce Class's biometric identifiers and information, EasyWorkforce did not obtain a written release authorizing such collection. 740 ILCS 14/15(b)(3).

108. While EasyWorkforce was in possession of Plaintiff's and the EasyWorkforce Class's biometric identifiers and information, EasyWorkforce failed to provide a publicly available retention schedule detailing the length of time it would maintain Plaintiff's and the EasyWorkforce Class's biometrics and guidelines for permanently destroying the same. 740 ILCS 14/15(a).

109. Accordingly, individually and on behalf of the EasyWorkforce Class, Plaintiff respectfully seeks an order: (a) declaring that EasyWorkforce's actions as set forth herein violate BIPA; (b) awarding injunctive and equitable relief as necessary to protect the EasyWorkforce Class; (c) finding EasyWorkforce's conduct intentional or reckless and awarding $5,000 in damages per violation, per EasyWorkforce Class member, as authorized by 740 ILCS 14/20(2); (d) awarding Plaintiff and the EasyWorkforce Class their reasonable attorneys' fees, costs, and other litigation expenses under 740 ILCS 14/20(3); (e) awarding Plaintiff and the EasyWorkforce

Class pre- and post-judgment interest; and (f) awarding such other and further relief as the Court deems equitable and just.

## COUNT 8
### Negligence
**Against EasyWorkforce, by Plaintiff and the EasyWorkforce Class**

110.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

111.    By capturing and collecting Plaintiff's and the EasyWorkforce Class's biometrics, EasyWorkforce assumed a duty of reasonable care toward Plaintiff and the EasyWorkforce Class. That duty required EasyWorkforce to exercise reasonable care in the capture, collection, use, and maintenance of Plaintiff's and the EasyWorkforce Class's biometrics.

112.    Specifically, its duty of reasonable care obligated EasyWorkforce to capture, collection, use, and maintain Plaintiff's and the EasyWorkforce Class's biometrics in compliance with BIPA.

113.    EasyWorkforce breached its duties to Plaintiff and the EasyWorkforce Class by failing to implement reasonable procedural safeguards for the capture, collection, use, and maintenance of Plaintiff's and the EasyWorkforce Class's biometric identifiers and biometric information.

114.    Specifically, EasyWorkforce breached its duties to Plaintiff and the EasyWorkforce Class by failing to inform them in writing that their biometrics were being captured, collected, stored, and used; inform them in writing of the specific purpose for which their biometrics were being collected, stored, and used; inform them of the length of time that their biometrics would be maintained; and obtain a written release authorizing collection of their biometrics.

115. EasyWorkforce further breached its duties to Plaintiff and the EasyWorkforce Class by failing to provide a publicly available retention schedule and guidelines for permanently destroying their biometrics.

116. EasyWorkforce's breach of its duties to Plaintiff and the EasyWorkforce Class has directly caused and continues to cause Plaintiff mental anguish and injury. Plaintiff worries and feels mental anguish about what EasyWorkforce will do with her biometrics, what will happen to her biometrics if EasyWorkforce goes bankrupt, whether EasyWorkforce will ever permanently destroy her biometrics, and whether and to whom EasyWorkforce shares her biometrics.

117. Accordingly, individually and on behalf of the EasyWorkforce Class, Plaintiff respectfully seeks an order: (a) declaring EasyWorkforce's conduct negligent; (b) awarding damages in an amount to be proven at trial; (c) awarding punitive damages; (d) awarding pre- and post-judgment interest; and (e) awarding such other and further relief as the Court deems equitable and just.

## COUNT 9
### Intrusion Upon Seclusion
### Against EasyWorkforce, by Plaintiff and the EasyWorkforce Class

118. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

119. By intentionally using biometric-scanning devices to capture and collect Plaintiff's and the EasyWorkforce Class's fingerprints and then extracting from those fingerprints uniquely identifying reference templates, EasyWorkforce intentionally and unlawfully intruded upon Plaintiff's and the EasyWorkforce Class's private affairs and concerns.

120. Plaintiff and the EasyWorkforce Class members held a reasonable expectation that their biometric identifiers and information would not be captured, collected, stored, or used without their informed consent.

121. A reasonable person would find it highly offensive and objectionable that a third party would intrude upon their seclusion by capturing and maintaining their biometrics without informed consent.

122. EasyWorkforce's intrusion upon Plaintiff's and the EasyWorkforce Class's seclusion has directly caused and continues to cause Plaintiff mental anguish and injury. Plaintiff worries and feels mental anguish about what EasyWorkforce will do with her biometrics, what will happen to her biometrics if EasyWorkforce goes bankrupt, whether EasyWorkforce will ever permanently destroy her biometrics, and whether and to whom EasyWorkforce shares her biometrics.

123. Accordingly, individually and on behalf of the EasyWorkforce Class, Plaintiff respectfully seeks an order: (a) declaring EasyWorkforce's conduct to be an intrusion upon seclusion; (b) awarding damages in an amount to be proven at trial; (c) awarding punitive damages; (d) awarding pre- and post-judgment interest; and (e) awarding such other and further relief as the Court deems equitable and just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully requests that this Court enter an Order:

a.   Certifying the Classes as defined above, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

b.   Declaring that Defendants' actions as set forth herein violate BIPA and constitute negligence and intrusion upon seclusion;

c.   Awarding injunctive and equitable relief as necessary to protect the Classes;

d.   Finding Defendants' conduct intentional or reckless and awarding $5,000 in damages per violation, per Class member under 740 ILCS 14/20(2), or, if Defendants' conduct does not rise to that standard, $1,000 per violation, per Class member under 740 ILCS 14/20(1);

e.     Awarding Plaintiff and the Classes compensatory damages in an amount to be proven at trial;

f.     Awarding Plaintiff and the Classes punitive damages;

g.     Awarding Plaintiff and the Classes their reasonable attorneys' fees, costs, and other litigation expenses under 740 ILCS 14/20(3);

h.     Awarding Plaintiff and the Classes pre- and post-judgment interest; and

i.     Awarding such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 24, 2021                    Respectfully submitted,

                                        s/ J. Dominick Larry
                                        One of Plaintiff's Attorneys

Thomas R. Kayes
LAW OFFICE OF THOMAS R. KAYES, LLC
2045 W. Grand Ave., Suite B, PMB 62448
Chicago, IL 60612
708.722.2241
tom@kayes.law

J. Dominick Larry
NICK LARRY LAW LLC
8 S. Michigan Ave., Suite 2600
Chicago, IL 60603
773.694.4669
nick@nicklarry.law

*Attorneys for Plaintiff and the Classes*