**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MARIA TAPIA-RENDON, individually and
on behalf of all others similarly situated,

               *Plaintiff*,

               v.

UNITED TAPE & FINISHING CO., INC.;
and EASYWORKFORCE SOFTWARE, LLC

               *Defendants*.

Case No. 1:21-cv-3400

Judge: Hon. Matthew F. Kennelly

Magistrate: Hon. Beth W. Jantz

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR**
**ATTORNEYS' FEES AND INCENTIVE AWARD**

Thomas R. Kayes
THE CIVIL RIGHTS GROUP, LLC
2045 W. Grand Ave., Suite B, PMB 62448
Chicago, IL 60612
708.722.2241
tom@civilrightsgroup.com

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.
Chicago, IL 60622
773.694.4669
nick@nicklarry.law

*Counsel for Plaintiff and the Proposed Class*

## 1.    INTRODUCTION

Under the Settlement[1] with Defendant United Tape, each of the 32 Settlement Class Members will receive a check for at least $1,000. Because there is no claims process, the Class Members will receive these checks with no effort on their part. Few BIPA class actions return as much to their class members as easily. Having achieved this uncommon result, Plaintiff Maria Tapia-Rendon now seeks a modest incentive award of $2,500 and Class Counsel seeks a modest fee of $7,000. (Class Counsel is not seeking to recover litigation expenses.) The requested fee is just 14% of the gross settlement fund, which was $50,000, and just 17.5% of the net fund (i.e., the amount left after the incentive award and notice and administration expenses have been paid). The requested fee and incentive award are both reasonable and well below what is often awarded in similar cases.

## 2.    BACKGROUND

### 2.1.    The Biometric Information Privacy Act

Recognizing the "very serious need" to protect Illinoisans' biometrics—including fingerprints, voiceprints, retina scans, and scans of hand or face geometry—the Illinois legislature passed BIPA unanimously in 2008. 740 ILCS 14/5. BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as those terms are used in the Settlement Agreement ("Settlement"), ECF No. 81-1.

(3) receives a written release executed by the subject of the biometric identifier or biometric information ....

740 ILCS 14/15(b). BIPA also establishes standards for handling biometric data. For example, BIPA requires companies to develop and comply with a written policy establishing a retention schedule and guidelines for permanently destroying biometric data. 740 ILCS 14/15(a).

### 2.2.   Litigation and Class Counsel's work on behalf of the Class.

On June 24, 2021, Maria Tapia-Rendon sued United Tape, along with the staffing agency that placed her at United Tape (Employer Solutions Staffing Group II, LLC), and United Tape's timekeeping vendor (EasyWorkforce Software, LLC) over the use of a finger-scanning timeclock at United Tape's Woodridge, Illinois facility. ECF No. 1. Plaintiff asserted claims for BIPA violations, negligence, and intrusion upon seclusion against each entity.[2]

Plaintiff began discovery in August 2021. Larry Decl. ¶¶ 16–19. In late 2021 and early 2022, Plaintiff's counsel conferred with counsel for United Tape and EasyWorkforce, secured supplemental responses and productions, and served more discovery requests. *Id.* All told, Plaintiff's counsel reviewed scores of relevant discovery requests and thousands of pages of documents and deposition testimony relating to the functionality of the timeclock used by United Tape and United Tape's practices and procedures (or lack thereof) for obtaining workers' consent prior to capturing their biometric data through the timeclocks. *Id.* ¶¶ 16–20.

While discovery was ongoing, counsel for Plaintiff and United Tape began discussing the possibility of class-wide resolution. *Id.* ¶ 23. Plaintiff made her opening demand in March 2022, and Plaintiff and United Tape agreed to these terms on July 12, 2022: United Tape would establish

---

[2]   Plaintiff later voluntarily dismissed her claims against Employer Solutions Staffing Group II, LLC when it became clear that the company neither owned nor had access to the biometric data collected from the timeclock. ECF No. 42.

a settlement fund of $50,000; class members would receive *pro rata* payments without any claims process; and funds from uncashed checks would be distributed to those Class members who did cash their checks, rather than reverting to United Tape. Larry Decl. ¶ 24. Over the following months, the parties negotiated the Settlement's remaining terms. *Id.* ¶ 25.

### 2.3. Settlement Administration to Date

Plaintiff moved for preliminary approval on September 27, 2022, which the Court granted on September 28, 2022. ECF Nos. 78, 83. United Tape has represented that it timely served CAFA notice on October 7, 2022, *see* Larry Decl. ¶ 30, and the Settlement Administrator timely provided notice to the Class in both English and Spanish on October 26, 2022. *Id.* ¶ 29. To date, Class Counsel has not received any objections from class members, requests for exclusion from class members, or objections (or any other communications) from the authorities who received CAFA notice. *Id.* ¶ 31.

### 3. ARGUMENT

The Court should award Class Counsel $7,000 in attorneys' fees and Plaintiff $2,500 as an Incentive Award.

### 3.1. The Court should award the requested attorneys' fees

Rule 23 authorizes courts to "award reasonable attorneys' fees … that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Seventh Circuit has directed courts to award fees in common-fund settlement based on the "market rate," which must be determined by "approximating the terms that would have been agreed to *ex ante*, had negotiations occurred." *In re Synthroid Mktg. Litig.*, 264 F.3d at 719. To determine the applicable market rate, courts in this Circuit weigh three factors: (1) actual fee contracts that were privately negotiated for similar litigation, (2) data from class-counsel auctions, and (3) information from other cases. *Williams v.*

*Rohm & Haas Pension Plan*, 658 F.3d 629, 635–36 (7th Cir. 2011). In effect, "the object is to simulate the market where a direct market determination is infeasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).

Although the first factor is typically awarded less weight, Plaintiff's engagement agreement with Class Counsel provides for fees of one third of the net settlement fund. *See* Larry Decl. ¶ 32. As to the second factor, Class Counsel are unaware of any class-counsel auctions in similar litigation. *In re Cap. One*, 80 F. Supp. 3d at 796 (acknowledging that "data from pre-suit negotiations and auctions tend to be sparse" and declining to rely on any such data). That leaves evidence from similar cases, which courts generally agree provides the most compelling evidence of the market. *See id.* at 796–97 ("The Seventh Circuit has relied on the same empirical data [analyzing fee awards in similar class actions] to determine the 'norm' for fee awards, and this court will do so as well.").

Here, Plaintiff moves the Court to award fees of $7,000, which represents 17.5% of the Net Settlement Fund. [3] Class Counsel would have been justified to request more but chose that amount to ensure that Class Members would receive $1,000 or more. As explained below, the requested fee is fair and reasonable under the Seventh Circuit's market approach. It is in fact lower than the prevailing fee awards in other BIPA litigation.

### 3.1.1. The percentage-of-the-fund model should be used here.

Although district courts have the discretion to choose between the "percentage-of-the-

---

[3]     In the Seventh Circuit, notice and administration expenses are not considered as part of the fund when calculating fee awards. *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). Here, the $7,000—which is inclusive of Class Counsel's costs incurred to date relating to the claims against United Tape—represents 17.5% of the Net Settlement Fund (*i.e.,* the $50,000 gross fund, minus an estimated $7,500 in notice and administration expenses and the $2,500 requested incentive award).

fund" and "lodestar" methods in awarding fees in common-fund cases, *Americana Art China Co., Inc. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014), "[t]he approach favored in the Seventh Circuit is to compute attorneys' fees as a percentage of the benefit conferred on the class," especially when the percentage accurately reflects the market. *Williams v. Gen. Elec. Cap. Auto Lease*, No. 94-7410, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26, 1995); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500–01 (N.D. Ill. 2015) (Kennelly, J.) ("[O]ne common method of choosing between the percentage and lodestar approaches it to look to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred.").

The normal practice in consumer class actions is, overwhelmingly, "to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery." *Kolinek*, 311 F.R.D. at 501. Because the percentage-of-the-fund approach best mirrors typical contingency arrangements, it makes sense that "the vast majority of courts in the Seventh Circuit" use it. *Hale v. State Farm Mut. Auto Ins. Co.*, No. 12-cv-660, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018) (quotation omitted); *see also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 814 (2010) ("Most federal judges chose to award fees by using the highly discretionary percentage-of-the-settlement method.").

Further, a contingent, percentage-of-the-fund approach is what the class would have negotiated with class counsel in a hypothetical *ex ante* bargain; in fact, to Class Counsel's knowledge, it has been used to determine a reasonable fee award in every BIPA class action settlement in this District and beyond, bar one case that recovered only credit monitoring, without any cash recovery to the class. *See Carroll v. Crème de la Crème*, No 2017-CH-01624 (Cir. Ct. Cook Cnty., Ill.). Accordingly, this Court can confidently apply the percentage-of-the-recovery method here, as every other court in this District has done.

### 3.1.2.  The requested fee is more than reasonable.

The Seventh Circuit has instructed district courts to award reasonable attorneys' fees, and that "the measure of what is reasonable is what an attorney would receive from a paying client in a similar case." *Montgomery v. Aetna Plywood*, 231 F.3d 399, 408 (7th Cir. 2000). "[I]n consumer class actions … the presumption should … be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014); *see also* 5 William Rubenstein, Newberg on Class Actions § 15.83 (5th ed.) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund."). The Seventh Circuit has endorsed a sliding-scale fee schedule that awards "class counsel 30% of the first $10 million recovered and a lesser percentage of each additional $10 million recovered." *Kolinek*, 311 F.R.D. at 501 (citing *In re Snythroid Marketing Litig.*, 325 F.3d 974 (7th Cir. 2003)). Against that presumption, courts consider the fee awards made in similar cases, the risks presented by the particular case presented, the quality of the legal work provided, the anticipated work necessary to resolve the litigation, and the stakes of the case. *Taubenfeld*, 415. F.3d at 600.

Considering these factors, the Court can confidently conclude that a hypothetical *ex ante* negotiation would have likely resulted in more than the 17.5% Class Counsel now seeks, in part because this Court and others regularly award higher percentages in similar BIPA cases. *See Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 18-cv-07018, ECF No. 57 (N.D. Ill. Sept. 10, 2010) (awarding 35% of $175,000 fund); *Montgomery v. Peri Framework Sys., Inc.*, No. 20-cv-07771, ECF No. 33 (N.D. Ill. Nov. 9, 2021) (awarding one-third of $165,000 fund); *Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17-cv-8033, ECF No. 103 (N.D. Ill. May 31, 2018) (Kennelly, J.) (awarding one-third of $1,356,000 fund). The work performed and result obtained—

over $1,500 per class member, gross, and over $1,000, net, with no claim form required—confirms the reasonableness of Class Counsel's request. Accordingly, the requested 17.5% is more than appropriate, and is likely better for the class than what it would have agreed to in an *ex ante* negotiation.

### 3.1.3. The risk of non-recovery and the work required to obtain the recovery support the requested fee award.

In a hypothetical *ex ante* negotiation, more than the 17.5% contingent fee requested would be appropriate considering the risks Class Counsel took on litigating this case. At the time Plaintiff filed her suit, she knew that she had not consented to the capture or collection of her biometrics, but she did not know whether other potential class members had consented after her employment, nor did she know whether the class would be large enough for certification to be viable. Moreover, Plaintiff's complaint was filed while *McDonald v. Symphony Bronzeville Park, LLC*, 193 N.E.3d 1253 (Ill. 2022), was pending before the Illinois Supreme Court. Had the Supreme Court ruled in the employer's favor in that matter, Plaintiff's claims would have been preempted by the Illinois Workers' Compensation Act, and there would have been no recovery.

Further, United Tape would be expected to raise largely untested defenses, including that BIPA is unconstitutional special legislation; that the Class consented to United Tape's conduct; and that BIPA's statutory damages regime violates due process. *See* ECF No. 34. Plaintiff further would have expected United Tape to argue that its fingerprint scanners don't capture "biometric identifiers" or "biometric information" as defined by BIPA, but rather capture images of a portion of the finger, and turn that image into a non-identifying template. This matter is in dispute in another BIPA case, *see Howe v. Speedway LLC*, No. 19-cv-1374 (N.D. Ill.), and, to Class Counsel's knowledge, has not yet been resolved by any court. Although Class Counsel puts little stock in this

argument, it is a matter of first impression, and if United Tape were to win on the issue, or on any of its other defenses, there would have been no recovery.

Even if all *McDonald* resolved in Plaintiff's favor *and* Plaintiff certified a class *and* United Tape's defenses proved meritless, Class Counsel still filed this case facing the risk of nonrecovery posed by potential amendments to BIPA itself. Multiple bills have been introduced in recent years that, if passed, could have endangered BIPA plaintiffs.[4] If the legislature were to amend, reduce, or limit the rights available under BIPA, the likelihood of recovery would have been further reduced. *See Perlin v. Time Inc.*, 237 F. Supp. 3d 623,629–30 (E.D. Mich. 2017) (evaluating retroactive effective of statutory amendment on pending class action).

Class Counsel accepted this case understanding that a loss on any of these issues would undermine the Class's claims, and with them, Class Counsel's ability to recoup fees. These risks make it appropriate to award 17.5% of the Net Fund in attorneys' fees.

### 3.1.4. Class counsel achieved an excellent result for the Class.

The relief secured further supports the requested fees. The Court may consider the result achieved, both as a reflection of the quality of Class Counsel's work, and because litigants often consider the degree of success in determining a fee schedule. *See Americana Art China Co.*, 743 F.3d at 247.

The $50,000 settlement fund secured by Class Counsel will result in individual payments to Class Members of more than $1,000, without any claims process. That recovery—over $1,500 gross per class member, and over $1,000 net—is far above average in BIPA settlements. *See*, *e.g.*,

---

[4]     *See* H.B. 559, 102nd Gen. Assembly (Ill. 2021); H.B. 560, 102nd Gen. Assembly (Ill. 2021); H.B. 1764, 102nd Gen. Assembly (Ill. 2021); H.B. 3112, 102nd Gen. Assembly (Ill. 2021); H.B. 3304, 102nd Gen. Assembly (Ill. 2021); H.B. 3414, 102nd Gen. Assembly (Ill. 2021); S.B. 56, 102nd Gen. Assembly (Ill. 2021); S.B. 300, 102nd Gen. Assembly (Ill. 2021).

*Roach v. Walmart, Inc.*, No. 19-CH-01107 (Cir. Ct. Cook Cnty., Ill. June 16, 2021) ($461 gross for 21,667 class members); *Williams et al. v. Personalizationmall.com, LLC*, No. 1:20-cv-00025 (N.D. Ill. July 20, 2022) ($222.79 gross for 18,403 class members); *Marsh et al. v. CSL Plasma Inc.*, No. 19-cv-7606 (N.D. Ill. Dec. 8, 2022) ($132.31 gross for 74,823 class members); *Aguilar v. Rexnord LLC*, No. 2017-CH-14775 (Cir. Ct. Cook Cnty., Ill., June 11, 2019) ($341,000 claims-made settlement for 341-member class); *Svagdis v. Alro Steel Corp.*, No. 2017-CH-12566 (Cir. Ct. Cook Cnty., Ill., Jan. 14, 2019) ($300,000 claims-made fund for approximately 250-member class). The payment here, more than $1,000 per class member—$1,000 being the statutory recovery for a negligent violation of BIPA, 740 ILCS 14/20(1)—is an outstanding result.

### 3.2. The Court should approve the requested incentive award.

The Settlement also provides for an incentive award of $2,500 to Plaintiff for serving as a class representative. Incentive awards are appropriate in class actions to compensate individuals for spending their own time to help the class. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Because a named plaintiff is essential to any class action, "[i]ncentive awards are justified when necessary to induce individuals to become named representatives." *Spano v. The Boeing Co.*, No. 06-cv-743, 2016 WL 3791123, *4 (S.D. Ill. Mar. 31, 2016) (approving incentive awards of $25,000 and $10,000 for class representatives) (internal citation omitted).

Here, Plaintiff's participation was critical. Plaintiff conferred with Class Counsel, provided information and documentation to prepare the pleadings, reviewed the Complaint before filing, answered Defendants' interrogatories, produced relevant documents, sat for a deposition, and engaged in the settlement process. Larry Decl. ¶ 22. These efforts from Plaintiff were necessary to secure the recovery. *Id.* Plaintiff was also willing to attach her name to this litigation, a matter of public record and which has resulted in the publication of her name and involvement to the world

at large, subjecting her to "scrutiny and attention," which is "certainly worth some remuneration." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 601 (N.D. Ill. July 29, 2011).

Plaintiff's requested award also falls below the amounts typically awarded in other privacy cases, including BIPA cases. *See, e.g.*, *Rogers*, 2019-CH-04168, Final Order and Judgment, ¶ 21 (Cir. Ct. Cook Cnty., Ill., May 13, 2021) (awarding $15,000 incentive award in BIPA class action settlement); *Gonzalez v. Silva Int'l, Inc.*, No. 2020-CH-03514, Final Order and Judgment, ¶ 19 (Cir. Ct. Cook Cnty., Ill., June 24, 2021) (awarding $10,000 incentive award in BIPA class action); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv-4462, 2015 WL 1399367, *6 (N.D. Ill. Mar. 23, 2015) (awarding $25,000 incentive award); *Martinez v. Nando's Rest. Grp., Inc.*, No. 19-cv-07012, ECF No. 63 (N.D. Ill. Oct. 27, 2020) ($7,500 incentive award in BIPA case); *Davis v. Heartland Emp. Servs., LLC*, No. 1:19-cv-00680, ECF No. 130 (N.D. Ill. Oct. 25, 2021) ($10,000 incentive award in BIPA case); *see also* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1348 (2006) (finding that "[t]he average award per class representative was $15,992"). Accordingly, Plaintiff's requested incentive award is more than reasonable, and warrants approval.

**4.    CONCLUSION**

For these reasons, Plaintiff Maria Tapia-Rendon requests that the Court enter an order: (1) granting Class Counsel's request for attorneys' fees of $7,000; (2) awarding Plaintiff an incentive award of $2,500; and (3) granting any other relief that the Court finds reasonable and just.

Dated: December 14, 2022

Respectfully submitted,

**MARIA TAPIA-RENDON,** individually
and on behalf of all others similarly situated,

s/ Thomas R. Kayes
One of Plaintiff's Attorneys

Thomas R. Kayes
THE CIVIL RIGHTS GROUP, LLC
2045 W. Grand Ave., Suite B, PMB 62448
Chicago, IL 60612
708.722.2241
tom@civilrightsgroup.com

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.
Chicago, IL 60622
773.694.4669
nick@nicklarry.law

*Counsel for Plaintiff and the Proposed Class*