## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARIA TAPIA-RENDON, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 1:21-cv-3400 |
| v. | |
| UNITED TAPE & FINISHING CO., INC.; and EASYWORKFORCE SOFTWARE, LLC | |
| *Defendants*. | |

### AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Maria Tapia-Rendon, individually and on behalf of all others similarly situated, brings this Amended Class Action Complaint and Demand for Jury Trial against Defendants United Tape & Finishing Co., Inc. ("United Tape"); and EasyWorkforce Software, LLC ("EasyWorkforce"). Plaintiff alleges the following based upon personal knowledge as to Plaintiff's own experiences, and as to all other matters upon information and belief, including investigation conducted by Plaintiff's attorneys.

### NATURE OF THE CASE

1.     This class action alleges violations of the Biometric Information Privacy Act, 740 ILCS 14/1–99 ("BIPA").

2.     Since 2008, BIPA has imposed a notice-and-consent requirement on companies possessing biometric data like fingerprints, voiceprints, and faceprints.

3.     United Tape obtained and disclosed Plaintiff's biometrics without proper notice and consent. EasyWorkforce obtained, disclosed, and failed to secure Plaintiff's biometrics, also

without proper notice and consent. Accordingly, Plaintiff seeks statutory damages, attorneys' fees, costs, and injunctive relief as authorized by BIPA.

## PARTIES

4.      Plaintiff is a citizen of Illinois and a resident of Bolingbrook, Illinois.

5.      United Tape is an Illinois corporation headquartered in Bolingbrook, Illinois.

6.      EasyWorkforce is a Delaware limited liability company headquartered in Miramar, Florida. None of EasyWorkforce's members are Illinois citizens.

## JURISDICTION AND VENUE

7.      This Court has subject matter has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this is a class action in which a defendant is a citizen of states different than class members, and because the amount in controversy exceeds $5,000,000.00.

8.      This Court has personal jurisdiction over United Tape because it is headquartered and incorporated in Illinois.

9.      This Court has personal jurisdiction over EasyWorkforce because is conducts substantial business in this State, including knowingly selling the biometric devices at issue for use in this State, and capturing Plaintiff's and the class members' biometrics in this State.

10.      Venue is proper in this Court under 28 U.S.C. § 1391 because Plaintiff resides in Will County, which is within this District; because Plaintiff had her biometrics unlawfully collected from DuPage County, which is within this District; and because this lawsuit arises out of Defendants' conduct in DuPage County, which is within this District.

## FACTUAL BACKGROUND

11.      United Tape is a manufacturer, with a facility located in Woodridge, Illinois.

12.     EasyWorkforce develops and sells workplace software and equipment, including biometric timeclocks and enrollment devices such as the EC10, EC20, EC200, EC500, EC700, Xenio10, Xenio20, Xenio200, Xenio500, Xenio700, TL200, TL250, and TL500 (collectively, the "Biometric Devices").

13.     The Biometric Devices can operate with two versions of software: on-premises, or cloud-based. On-premises software operates entirely on the equipment of the EasyWorkforce customer. The cloud-based software functions by connecting to cloud-based software operated by EasyWorkforce on servers it rents from a third party. Plaintiff's and the EasyWorkforce Class's claims pertain to the cloud-based software.

14.     The Biometric Devices use fingerprint sensors to enroll workers in EasyWorkforce's timekeeping software and to allow them to clock in and out of shifts and breaks using their fingerprints.

15.     The first time a worker uses a Biometric Device, they have to set up a profile by placing their finger on the scanner. EasyWorkforce's software scans the person's fingerprint and maps the geometry of the fingerprint. The worker must then scan the same fingerprint twice more, to allow EasyWorkforce's software captures a reference template: a mathematical representation of the fingerprint that can be stored and used for comparison against scanned fingerprints.

16.     Each time a worker subsequently uses one of EasyWorkforce's biometric timeclocks,[1] EasyWorkforce's software scans the worker's fingerprint, converts it into an

---

[1]     The EC200, EC500, EC700, Xenio200, Xenio500, Xenio700, TL200, TL250, and TL500 are all biometric timeclocks, meaning that they can be used to enroll workers' fingerprints in the timekeeping system, and can be used by workers to clock in and out. The EC10, EC20, Xenio10, and Xenio20 are enrollment devices, which are fingerprint scanners that attach to computers via

algorithmic representation of the fingerprint, and compares that representation to the stored reference templates to identify the worker.

17.     The Biometric Devices are internet enabled, and EasyWorkforce's cloud-based software allows workers to view information about their shifts, employers to collect information from workers at clock in/out, employers to deliver messages to workers, and EasyWorkforce to access the data collected through the Biometric Devices.

18.     For Biometric Devices using EasyWorkforce's cloud-based software, EasyWorkforce stores the data collected through the Biometric Devices, including reference templates, on servers leased from a third party named Vault Networks, Inc.

19.     Vault Networks was administratively dissolved as a corporation by the State of Florida in 2016, but continues to provide cloud-storage services to EasyWorkforce to this day.

20.     Within the biometric-technology industry, it is standard practice to encrypt information collected through biometric equipment, including reference templates and other forms of biometric information.

21.     EasyWorkforce did not encrypt the data collected from its Biometric Devices and stored on the servers leased from Vault Networks, including the reference templates collected from Plaintiff and the EasyWorkforce Class.

22.     EasyWorkforce did use encryption or similar, cryptographic security measures for its own sensitive information, including passwords and information stored on the Biometric Devices themselves.

---

USB connection, and are used only for the process of enrolling fingerprints in timekeeping systems.

23.     United Tape purchased a TimeLogix TL250 timeclock with cloud-based software from EasyWorkforce, and used it to track employee hours at United Tape's Woodridge, Illinois facility.

24.     Plaintiff was employed by a staffing agency and assigned to work at United Tape's Woodridge facility.

25.     United Tape required hourly workers at the Woodridge facility, including Plaintiff, to clock in and out of shifts and breaks with the TL250 biometric timeclock.

26.     The TL250 was connected to EasyWorkforce's timekeeping software and to United Tape's payroll systems (collectively the "Biometric System").

27.     United Tape did not explain the Biometric System to its workers, including Plaintiff.

28.     EasyWorkforce did not explain its Biometric Devices' functionality to the workers using them, including Plaintiff.

29.     United Tape did not tell its workers, including Plaintiff, how they used data collected through the Biometric System.

30.     EasyWorkforce did not tell workers using its Biometric Devices, including Plaintiff, how it used data collected through them.

31.     United Tape did not tell its workers, including Plaintiff, how long it kept the data collected through the Biometric System.

32.     EasyWorkforce did not tell workers using its Biometric Devices, including Plaintiff, how long it kept data collected through its Biometric Devices.

33.     United Tape's workers, including Plaintiff, did not consent to United Tape's collection of their fingerprints or the identifying data derived from them.

34.     Workers using EasyWorkforce's Biometric Devices, including Plaintiff, did not consent to EasyWorkforce's capture and collection of their fingerprints or the identifying data derived from them.

35.     BIPA has been the law of the State of Illinois since 2008.

36.     At the beginning of the class period, June 24, 2016, BIPA had been in effect for eight years.

37.     By the beginning of the class period, BIPA had also been in the news for some time. Facebook had been sued for BIPA violations over a year earlier,[2] and the case had already resulted in headline-generating rulings.[3]  Google and Shutterfly had likewise found themselves in the news for alleged BIPA violations.[4]

38.     Throughout the class period, then, BIPA was well known, and its obligations clear.

## CLASS ALLEGATIONS

39.     Plaintiff brings this action on behalf of the following classes of similarly situated individuals:

---

[2]     *See* Tony Briscoe, *Suit: Facebook facial recognition technology violates Illinois privacy laws*, Chicago Tribune (Apr. 1, 2015), https://www.chicagotribune.com/news/breaking/ct-facebook-facial-recognition-lawsuit-met-story.html.

[3]     Russell Brandom, *Lawsuit challenging Facebook's facial recognition system moves forward*, The Verge (May 5, 2016), https://www.theverge.com/2016/5/5/11605068/facebook-photo-tagging-lawsuit-biometric-privacy;.

[4]     Christopher Zara, *Google Gets Sued Over Face Recognition, Joining Facebook And Shutterfly In Battle Over Biometric Privacy In Illinois*, International Business Times (Mar. 4, 2016), https://www.ibtimes.com/google-gets-sued-over-face-recognition-joining-facebook-shutterfly-battle-over-2330278.

**United Tape Class**: All individuals who used a biometric timeclock at any facility operated by United Tape & Finishing Co., Inc. in the State of Illinois from June 24, 2016 to September 28, 2022.

**EasyWorkforce Class**: All individuals who used any cloud-based EasyWorkforce Biometric Device in the State of Illinois on or after June 24, 2016.

**EasyWorkforce Subclass:** All EasyWorkforce Class members who used a cloud-based EasyWorkforce Biometric device in the State of Illinois on or before April 30, 2022.

40.     Excluded from the Classes are any members of the judiciary assigned to preside over this matter, any officer or director of Defendant, counsel for the Parties, and any immediate family member of any of the same.

41.     Upon information and belief, the United Tape Class includes 34 individuals, the EasyWorkforce Class includes over 2,600 individuals, and the EasyWorkforce Subclass includes over 2,000 individuals. The Classes are therefore so numerous that joinder of all members is impracticable. The precise number of Class members can be determined by reference to Defendants' records.

42.     Plaintiff's claims are typical of the proposed Classes'. Plaintiff's claims have the same factual and legal bases as the proposed Class members', and Defendants' conduct has resulted in identical injuries to Plaintiff and the other members of the Classes.

43.     Common questions of law and fact will predominate over any individualized inquiries. Those common questions include:

a.     Whether Defendants collected the Classes' biometric identifiers or biometric information;

b.     Whether Defendants disclosed the Classes' biometric identifiers or information;

c.     Whether Defendants obtained written releases prior to collecting the Classes' biometrics;

     d.      Whether Defendants informed the Classes, in writing, of the purposes and duration for which their biometrics would be collected and stored;

     e.      Whether Defendants obtained the Classes' consent prior to disclosing their biometrics; and

     f.      Whether Defendants are liable for $5,000 or only $1,000 per BIPA violation.

44. Absent a class action, most Class members would find their claims prohibitively expensive to bring individually, and would be left without an adequate remedy. Class treatment of the common questions is also superior because it conserves the Court's and Parties' resources and promotes efficiency and consistency of adjudication.

45. Plaintiff will adequately represent the Classes. Plaintiff has retained counsel experienced in biometric class actions. Plaintiff and Plaintiff's counsel are committed to vigorously litigating this action on the Classes' behalf and have the resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to the Classes.

46. Defendants have acted on grounds generally applicable to Plaintiff and the Classes, requiring the Court's imposition of uniform relief, including injunctive and declaratory relief to the Classes.

**COUNT 1**
**Violation of 740 ILCS 14/15**
**Against United Tape, by Plaintiff and the United Tape Class**

47. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48. United Tape is a corporation and is therefore a private entity. 740 ICLS 14/10.

49. By collecting Plaintiff's and the United Tape Class's fingerprints through the Biometric System, United Tape collected Plaintiff's and the United Tape Class's biometric identifiers. 740 ILCS 14/10.

50.     By capturing and maintaining reference templates and associated timekeeping information, United Tape collected Plaintiff's and the United Tape Class's biometric information. 740 ILCS 14/10.

51.     By sharing the Biometric System's data with EasyWorkforce, United Tape disclosed Plaintiff's and the United Tape Class's biometric identifiers and information.

52.     Prior to collecting Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape did not inform Plaintiff and the United Tape Class in writing that their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(1).

53.     Prior to collecting Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape did not inform Plaintiff and the United Tape Class of the specific purpose for which their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(2).

54.     Prior to collecting Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape did not inform Plaintiff and the United Tape Class of the length of time that their biometrics would be maintained. 740 ILCS 14/15(b)(2).

55.     Prior to collecting Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape did not obtain a written release authorizing such collection. 740 ILCS 14/15(b)(3).

56.     Prior to disclosing Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape did not obtain Plaintiff's and the United Tape Class's informed consent. 740 ILCS 14/15(d)(1).

57.     While United Tape was in possession of Plaintiff's and the United Tape Class's biometric identifiers and information, United Tape failed to provide a publicly available retention

schedule detailing the length of time it would maintain Plaintiff's and the United Tape Class's biometrics and guidelines for permanently destroying the same. 740 ILCS 14/15(a).

58.     Accordingly, individually and on behalf of the United Tape Class, Plaintiff respectfully seeks an order: (a) declaring that United Tape's actions as set forth herein violate BIPA; (b) awarding injunctive and equitable relief as necessary to protect the United Tape Class; (c) finding United Tape's conduct intentional or reckless and awarding $5,000 in damages per violation, per United Tape Class member, as authorized by 740 ILCS 14/20(2); (d) awarding Plaintiff and the United Tape Class their reasonable attorneys' fees, costs, and other litigation expenses under 740 ILCS 14/20(3); (e) awarding Plaintiff and the United Tape Class pre- and post-judgment interest; and (f) awarding such other and further relief as the Court deems equitable and just.

**COUNT 2**
**Negligence**
**Against United Tape, by Plaintiff and the United Tape Class**

59.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

60.     By capturing and collecting Plaintiff's and the United Tape Class's biometrics, United Tape assumed a duty of reasonable care toward Plaintiff and the United Tape Class. That duty required United Tape to exercise reasonable care in the capture, collection, use, and maintenance of Plaintiff's and the United Tape Class's biometrics.

61.     Specifically, its duty of reasonable care obligated United Tape to capture, collection, use, and maintain Plaintiff's and the United Tape Class's biometrics in compliance with BIPA.

62.     Because Plaintiff and the United Tape Class members worked at the direction of and for the benefit of United Tape, United Tape owed them a heightened duty of care, requiring

United Tape to act carefully and not put Plaintiff and the United Tape Class at undue risk of harm.

63.     United Tape breached its duties to Plaintiff and the United Tape Class by failing to implement reasonable procedural safeguards for the capture, collection, use, and maintenance of Plaintiff's and the United Tape Class's biometric identifiers and biometric information.

64.     Specifically, United Tape breached its duties to Plaintiff and the United Tape Class by failing to inform them in writing that their biometrics were being captured, collected, stored, and used; inform them in writing of the specific purpose for which their biometrics were being collected, stored, and used; inform them of the length of time that their biometrics would be maintained; and obtain a written release authorizing collection of their biometrics.

65.     United Tape further breached its duties to Plaintiff and the United Tape Class by failing to provide a publicly available retention schedule and guidelines for permanently destroying their biometrics.

66.     United Tape's breach of its duties to Plaintiff and the United Tape Class has directly caused and continues to cause Plaintiff mental anguish and injury. Plaintiff worries and feels mental anguish about what United Tape will do with her biometrics, what will happen to her biometrics if United Tape goes bankrupt, whether United Tape will ever permanently destroy her biometrics, and whether and to whom United Tape shares her biometrics.

67.     Accordingly, individually and on behalf of the United Tape Class, Plaintiff respectfully seeks an order: (a) declaring United Tape's conduct negligent; (b) awarding damages in an amount to be proven at trial; (c) awarding punitive damages; (d) awarding pre- and post-judgment interest; and (e) awarding such other and further relief as the Court deems equitable and just.

**COUNT 3**
**Intrusion Upon Seclusion**
**Against United Tape, by Plaintiff and the United Tape Class**

68.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69.     By intentionally using biometric-scanning devices to capture and collect Plaintiff's and the United Tape Class's fingerprints and then extracting from those fingerprints uniquely identifying reference templates, United Tape intentionally and unlawfully intruded upon Plaintiff's and the United Tape Class's private affairs and concerns.

70.     Plaintiff and the United Tape Class members held a reasonable expectation that their biometric identifiers and information would not be captured, collected, stored, or used by the entity receiving the benefit of their work, and that any entity capturing, collecting, storing, or using their biometrics would do so only with their informed consent.

71.     A reasonable person would find it highly offensive and objectionable that an entity receiving the benefit of their work would intrude upon their seclusion by capturing and maintaining their biometrics without informed consent.

72.     United Tape's intrusion upon Plaintiff's and the United Tape Class's seclusion has directly caused and continues to cause Plaintiff mental anguish and injury. Plaintiff worries and feels mental anguish about what United Tape will do with her biometrics, what would happen to her biometrics if United Tape went bankrupt, whether United Tape will ever permanently destroy her biometrics, and whether and to whom United Tape shares her biometrics.

73.     Accordingly, individually and on behalf of the United Tape Class, Plaintiff respectfully seeks an order: (a) declaring United Tape's conduct to be intrusion upon seclusion; (b) awarding damages in an amount to be proven at trial; (c) awarding punitive damages; (d) awarding pre- and post-judgment interest; and (e) awarding such other and further relief as the Court deems equitable and just.

**COUNT 4**
**Violation of 740 ILCS 14/15(b)**
**Against EasyWorkforce, by Plaintiff and the EasyWorkforce Class**

74.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75.     EasyWorkforce is a limited liability company and is therefore a private entity. 740 ICLS 14/10.

76.     By scanning Plaintiff's and the EasyWorkforce Class's fingerprints through its cloud-based Biometric Devices, EasyWorkforce captured, collected, and obtained Plaintiff's and the EasyWorkforce Class's biometric identifiers. 740 ILCS 14/10.

77.     By scanning and maintaining reference templates and associated timekeeping information through the cloud-based Biometric Devices, EasyWorkforce captured, collected, and obtained Plaintiff's and the EasyWorkforce Class's biometric information. 740 ILCS 14/10.

78.     Through its cloud-based biometric timeclock software, EasyWorkforce captured, collected, received through trade, or otherwise obtained Plaintiff's and the EasyWorkforce Class's biometric identifies and information.

79.     Prior to capturing, collecting, receiving, and obtaining Plaintiff's and the EasyWorkforce Class's biometric identifiers and information, EasyWorkforce did not inform Plaintiff and the EasyWorkforce Class in writing that their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(1).

80.     Prior to capturing, collecting, receiving, and obtaining Plaintiff's and the EasyWorkforce Class's biometric identifiers and information, EasyWorkforce did not inform Plaintiff and the EasyWorkforce Class or their legally authorized representatives of the specific purpose for which their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(2).

81.     Prior to capturing, collecting, receiving, and obtaining Plaintiff's and the EasyWorkforce Class's biometric identifiers and information, EasyWorkforce did not inform

Plaintiff and the EasyWorkforce Class or their legally authorized representatives of the length of time that their biometrics would be maintained. 740 ILCS 14/15(b)(2).

82.     Prior to capturing, collecting, receiving, and obtaining Plaintiff's and the EasyWorkforce Class's biometric identifiers and information, EasyWorkforce did not obtain a written release authorizing such collection. 740 ILCS 14/15(b)(3).

83.     Accordingly, individually and on behalf of the EasyWorkforce Class, Plaintiff respectfully seeks an order: (a) declaring that EasyWorkforce's actions as set forth herein violate 740 ILCS 14/15(b); (b) awarding injunctive and equitable relief as necessary to protect the EasyWorkforce Class; (c) finding EasyWorkforce's conduct intentional or reckless and awarding $5,000 in damages per violation, per EasyWorkforce Class member, as authorized by 740 ILCS 14/20(2); (d) awarding Plaintiff and the EasyWorkforce Class their reasonable attorneys' fees, costs, and other litigation expenses under 740 ILCS 14/20(3); (e) awarding Plaintiff and the EasyWorkforce Class pre- and post-judgment interest; and (f) awarding such other and further relief as the Court deems equitable and just.

**COUNT 5**
**Violation of 740 ILCS 14/15(d)**
**Against EasyWorkforce, by Plaintiff and the EasyWorkforce Subclass**

84.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85.     EasyWorkforce stored the reference templates collected through its cloud-based Biometric Devices on servers it leased from Vault Networks.

86.     By storing reference templates collected through its Biometric Devices on servers it leased, EasyWorkforce possessed Plaintiff's and the EasyWorkforce Subclass's biometric information. 740 ILCS 14/10.

87.     By storing Plaintiff's and the EasyWorkforce Subclass's biometric information in unencrypted format on servers owned by Vault Networks, EasyWorkforce disclosed or otherwise

disseminated Plaintiff's and the EasyWorkforce Subclass's biometric information to Vault Networks. 740 ILCS 14/15(d).

88.     EasyWorkforce did not obtain consent prior to disclosing or disseminating Plaintiff's and the EasyWorkforce Subclass's biometric information. 740 ILCS 14/15(d)(1).

89.     EasyWorkforce's disclosure of Plaintiff's and the EasyWorkforce Subclass's biometric information did not complete a financial transaction, was not required by law, and was not required by a warrant or subpoena. 740 ILCS 14/15(d)(2)–(4).

90.     Accordingly, individually and on behalf of the EasyWorkforce Subclass, Plaintiff respectfully seeks an order: (a) declaring that EasyWorkforce's actions as set forth herein violate 740 ILCS 14/15(d); (b) awarding injunctive and equitable relief as necessary to protect the EasyWorkforce Subclass; (c) finding EasyWorkforce's conduct intentional or reckless and awarding $5,000 in damages per violation, per EasyWorkforce Subclass member, as authorized by 740 ILCS 14/20(2); (d) awarding Plaintiff and the EasyWorkforce Subclass their reasonable attorneys' fees, costs, and other litigation expenses under 740 ILCS 14/20(3); (e) awarding Plaintiff and the EasyWorkforce Subclass pre- and post-judgment interest; and (f) awarding such other and further relief as the Court deems equitable and just.

## COUNT 6
### Violation of 740 ILCS 14/15(e)
### Against EasyWorkforce, by Plaintiff and the EasyWorkforce Subclass

91.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

92.     EasyWorkforce stored the reference templates collected through its cloud-based Biometric Devices on servers it leased from Vault Networks.

93.     By storing reference templates collected through its Biometric Devices on servers it leased, EasyWorkforce possessed Plaintiff's and the EasyWorkforce Subclass's biometric information. 740 ILCS 14/10.

94.     EasyWorkforce stored Plaintiff's and the Subclass's biometric information without encryption, on servers it leased from a third party, Vault Networks.

95.     By storing Plaintiff's and the EasyWorkforce Subclass's biometric information without encryption on servers owned by Vault Networks, EasyWorkforce failed to store and protect from disclosure Plaintiff's and the EasyWorkforce Subclass's biometric information using the reasonable standard of case within the biometric industry. 740 ILCS 14/15(e)(1).

96.     Similarly, by storing Plaintiff's and the EasyWorkforce Subclass's biometric information without encryption on servers owned by Vault Networks, EasyWorkforce failed to store and protect from disclosure Plaintiff's and the EasyWorkforce Subclass's biometric information in a manner that is the same as or more protective than the manner in which EasyWorkforce stores and protects other confidential and sensitive information. 740 ILCS 14/15(e)(2).

97.     EasyWorkforce's failure to encrypt Plaintiff's and the EasyWorkforce's Subclass's biometric information when storing it on Vault Networks' servers resulted in that biometric information being disclosed to Vault Networks without Plaintiff's and the EasyWorkforce Subclass's consent.

98.     Accordingly, individually and on behalf of the EasyWorkforce Subclass, Plaintiff respectfully seeks an order: (a) declaring that EasyWorkforce's actions as set forth herein violate 740 ILCS 14/15(e); (b) awarding injunctive and equitable relief as necessary to protect the EasyWorkforce Subclass; (c) finding EasyWorkforce's conduct intentional or reckless and awarding $5,000 in damages per violation, per EasyWorkforce Subclass member, as authorized by 740 ILCS 14/20(2); (d) awarding Plaintiff and the EasyWorkforce Subclass their reasonable attorneys' fees, costs, and other litigation expenses under 740 ILCS 14/20(3); (e) awarding

Plaintiff and the EasyWorkforce Subclass pre- and post-judgment interest; and (f) awarding such other and further relief as the Court deems equitable and just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully requests that this Court enter an Order:

a.    Certifying the Classes as defined above, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

b.    Declaring that Defendants' actions as set forth herein violate BIPA and constitute negligence and intrusion upon seclusion;

c.    Awarding injunctive and equitable relief as necessary to protect the Classes;

d.    Finding Defendants' conduct intentional or reckless and awarding $5,000 in damages per violation, per Class member under 740 ILCS 14/20(2), or, if Defendants' conduct does not rise to that standard, $1,000 per violation, per Class member under 740 ILCS 14/20(1);

e.    Awarding Plaintiff and the Classes their reasonable attorneys' fees, costs, and other litigation expenses under 740 ILCS 14/20(3);

f.    Awarding Plaintiff and the Classes pre- and post-judgment interest; and

g.    Awarding such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: April 18, 2023

Respectfully submitted,

s/ J. Dominick Larry
One of Plaintiff's Attorneys

Thomas R. Kayes
THE CIVIL RIGHTS GROUP, LLC
2045 W. Grand Ave., Suite B, PMB 62448
Chicago, IL 60612
708.722.2241
tom@civilrightsgroup.com

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.
Chicago, IL 60622
773.694.4669
nick@nicklarry.law

*Attorneys for Plaintiff and the Classes*