**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARIA TAPIA-RENDON, on behalf of herself and all others similarly situated,** ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **vs.** ) ) | **Case No. 21 C 3400** |
| **UNITED TAPE & FINISHING CO., INC. and EASYWORKFORCE SOFTWARE, LLC,** ) ) ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Maria Tapia-Rendon has sued her former employer, United Tape & Finishing Co.[1] and EasyWorkforce Software, LLC (EWF), which sold biometric timeclocks and accompanying software to United Tape, for violations of the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1–99. Tapia-Rendon has moved to certify both a class and a subclass under Federal Rule of Civil Procedure 23(b)(3). For the reasons stated below, the Court grants the motion.

**Background**

A party seeking class certification has the burden of establishing by a preponderance of the evidence that certification is proper. *Priddy v. Health Care Serv.*

---

[1] On May 17, 2023, the Court dismissed with prejudice the claims against United Tape pursuant to a class settlement agreement reached by the parties and approved by the Court regarding "the United Tape class."

*Corp.*, 870 F.3d 657, 660 (7th Cir. 2017).  In assessing whether the movant has met this burden, the district court should "make whatever factual and legal inquiries [that] are necessary under Rule 23."  *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

The Court takes the following facts from the first amended complaint, the undisputed portions of EWF's responses to Tapia-Rendon's requests for admission, and the parties' class certification briefing.

## A.    The BIPA

The BIPA prohibits a private entity from collecting or obtaining a person's biometric identifier or information[2] unless it:  (1) first informs the person or her legally authorized representative in writing that the information is being collected or stored, (2) as well as the purpose and length of term of the collection, storage, and use, and (3) receives a written release executed by the person or her legally authorized representative.  740 ILCS § 15(b)(1)-(3).  The statute also restricts disclosure and dissemination of biometric information and regulates its storage.  *Id*. § 15(c)-(e).

Tapia-Rendon alleges that EWF violated sections 15(b), 15(d) and 15(e) of the BIPA by collecting her and the putative class members' biometric identifiers and/or biometric information without first obtaining her or the putative class members' consent and by storing the information without encryption.  A more detailed description of her allegations is provided below.

---

[2] "Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry.  740 ILCS 14/10.  "Biometric information" is "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."  *Id*.

Section 20 of the BIPA provides a right of action to a person aggrieved by a violation of the statute and states that a prevailing party may recover the greater of actual damages or liquidated damages of $1,000 for a negligent violation, or $5,000 for an intentional or reckless violation. *Id*. § 20. In *Cothron v. White Castle Systems, Inc*., 2023 IL 128004, the Illinois Supreme Court held that "a separate claim accrues under [the BIPA] each time a private entity scans or transmits an individual's biometric identifier or information in violation of section 15(b) or 15(d)." *Id.* ¶ 1. The court further stated that the use of "may" in section twenty indicates that the Illinois General Assembly intended for damages under the BIPA to be discretionary, and largely on this basis the court rejected the argument that "allowing multiple or repeated accruals of claims by one individual could potentially result in punitive and astronomical damage awards that would constitute annihilative liability not contemplated by the legislature and possibly be unconstitutional." *Id.* ¶ 40 (internal quotation marks omitted).

## B.    EWF and its timeclock and enrollment devices

EWF develops and sells workplace software and equipment, including biometric timeclocks and enrollment devices such as the EC10, EC20, EC200, EC500, EC700, Xenio10, Xenio20, Xenio200, Xenio500, Xenio700, TL200, TL250, and TL500 (collectively, the "devices"). These devices allow employers to track employees for security and/or timekeeping purposes as they enter or exit the workplace. EWF has sold its timeclock and enrollment devices to hundreds of customers throughout Illinois.

When an employee enrolls via one of EWF's devices, the device images the employee's finger with a scanner and generates a unique identifier for that person in the form of a mathematical representation of the fingerprint—a "digital template." Tapia-

3

Rendon alleges that EWF's devices exclusively work by "creating a mathematical representation of the minutiae points in [a] *fingerprint*, and then using that representation as a comparator whenever [the employee] use[s] her *fingerprint* to clock in or out."  Pl.'s Mot. at 1 (emphasis added).  EWF's CEO, Sino Jos, testified during his deposition that the image captured is not necessarily inclusive of a fingerprint but is rather "an image of the finger."  Jos Dep. at 208:6-7.  Jos also testified, however, that "fingerprint" is a description that EWF uses externally to describe what is imaged by its products because "it's a common lingo."  *Id*. at 208:13.

Tapia-Rendon alleges that, for its devices that utilize cloud-based software, EWF stores the biometric data collected—including the digital templates—on servers leased from third parties.  EWF admits only that the digital templates may be stored on third-party servers leased by EWF *or* on EWF's customers' own servers.  Jos testified during his deposition that the information collected from EWF's timeclocks utilizing cloud-based software is stored on third-party servers leased by EWF, *id.* at 60:19–61:4, but that the image captured of an employee's fingerprint is not stored on the cloud-based servers. *Id*. at 210:11-12.  Jos further testified that none of the data collected from the timeclocks is encrypted when stored on the cloud.  *Id*. at 247:24.

## C.    United Tape and Tapia-Rendon's interaction with EWF devices

United Tape is a manufacturing company for which Tapia-Rendon was contracted to work on an hourly basis.  In December 2020, EWF sold United Tape one of its timeclock devices—a TL250 Smart Fingerprint Terminal—and also licensed the accompanying software to EWF.

As an employee of United Tape, Tapia-Rendon was required to enroll via the

EWF timeclock that United Tape had purchased from EWF and then use the timeclock to scan in and out of work thereafter.  This involved an initial imaging of her finger that was then used to create a unique identifying digital template for her.  Later this unique identifying digital template would be compared against the image taken of her finger each time she scanned in and out of work.  According to records EWF produced in discovery, starting on January 7, 2021, Tapia-Rendon scanned in and out of work at United Tape a total of fourteen times.

EWF admits that it did not inform Tapia-Rendon that her information would be collected or stored, for what purpose it would be collected or stored, or the length of time that her information would be collected or stored.  Tapia-Rendon alleges that EWF also did not encrypt the biometric data it collected from her that it stored on the servers leased from third parties.

**D.    The putative classes**

Tapia-Rendon seeks to certify the following classes:

**The Class**: All individuals who used any cloud-based EWF biometric device in Illinois on or after June 24, 2016.

**The Subclass:** All Class members who used a cloud-based EWF biometric device in Illinois on or before April 30, 2022.

She alleges that, throughout the relevant class periods, EWF sold in Illinois fourteen timeclocks and enrollment devices equipped with its cloud-based software that all functioned in the same manner.  Tapia-Rendon further alleges that because EWF did not obtain prior consent from users of its devices, the same violations of the BIPA that she experienced were also experienced by at least 2,620 people in Illinois who unknowingly had their data collected and stored by EWF devices.  Those individuals

scanned in and out of the timeclocks in question approximately 2,439,412 times during the class periods.

By EWF's estimate, because the BIPA allows for liquidated damages of $1,000 for each negligent violation and $5,000 for each reckless or intentional violation—and because Tapia-Rendon alleges three separate violations of BIPA per scan—Tapia-Rendon could seek as much as $3,000 for each negligent scan and $15,000 for each reckless or intentional scan. (As noted earlier, the Illinois Supreme Court has held that each scan represents a separate violation of the BIPA. *Cothron*, 2023 IL 128004 at ¶ 1.). The parties agree that Tapia-Rendon has not alleged any actual damages suffered by her or any class member.

## Discussion

In order for the case to proceed as a class action, the plaintiffs must show that their proposed classes satisfy all the requirements of Rule 23, which sets out the criteria for class certification. *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). "In conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

First, under Rule 23(a), a putative class must satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). More specifically, Rule 23(a) requires the class to be so numerous that joinder of all members is impracticable; there are common questions of law or fact; the representatives' claims are typical of those of the class; and the representatives fairly and adequately protect the interests of the class.

6

Second, the proposed class must fall within one of the three categories in Rule 23(b). *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). The plaintiffs argue for certification under Rule 23(b)(3). Rule 23(b)(3) requires finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## A.    Rule 23(a) requirements

EWF does not contest that Tapia-Rendon has met her burden of establishing that the putative classes satisfy the numerosity, commonality, and typicality requirements of Rule 23(a). Nor does EWF appear to dispute the adequacy of the proposed counsel for the class. EWF does, however, challenge the adequacy of Tapia-Rendon as class representative. The Court disagrees.

### 1.    Adequacy

A representative party must demonstrate that he "will fairly and adequately protect the interests of the class." *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 585 (7th Cir. 2020) (internal quotation marks omitted). To demonstrate adequacy of representation, the Court must assess "the adequacy of the named plaintiff[ ] as representative[ ] of the proposed class's myriad members, with their differing and separate interests," and "the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). A named plaintiff is ordinarily considered to be adequate so long as her claims neither conflict with nor are antagonistic to those of other class members. *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 609-10 (7th Cir. 2021) ("representative parties cannot adequately represent

7

class members with divergent interests"); *see also*, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Moreover, "the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses" does not prevent class certification. *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013).

EWF challenges the adequacy of Tapia-Rendon as the named plaintiff based primarily[3] on its contention that her potential recovery is lower than that of the average class member. Specifically, EWF contends that—based on its own estimations—Tapia-Rendon's potential award could be roughly 66 times smaller than that of the average class member. This, EWF contends, diminishes her interest in the litigation and makes it "likely [that] she would be antagonistic to the interests of other class members." Def.'s Resp. at 9.

First, EWF does not explain *how* Tapia-Rendon's smaller recovery makes it "likely [that] she would be antagonistic to the interests of other class members." *Id*. If EWF refers to a claimed increased incentive—as compared to her fellow class members—to settle the case rather than proceed to trial, that contention lacks merit. Any future class settlement would require approval by the Court under Rule 23(e)(2)(D), and in considering approval the Court would need to ensure that "the proposal treats class members equitably relative to each other." *See* Fed. R. Civ. P. 23(e)(2)(D).

Second, EWF fails to cite a single case supporting the proposition that the possibility or likelihood that a named plaintiff might be entitled to a lesser damages

---

[3] EWF also contends, in a cursory and undeveloped manner, that Tapia-Rendon is inadequate because of the applicability of its affirmative defenses to her alleged conduct. As discussed in further detail below, this contention lacks merit even assuming it is not forfeited.

award than others in the class renders her an inadequate class representative. The Court "will not fill this void by crafting arguments and performing the necessary legal research" on EWF's behalf. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 842 (7th Cir. 2010). The contention is therefore forfeited. *See Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived").

Even if EWF had not forfeited this point, it would fail on the merits. EWF concedes that Tapia-Rendon's claims "[arise] from the same event or course of conduct that gives rise to the claims of other class members and [her] claims are based on the same legal theory." Def.'s Resp. at 6 (internal quotation marks omitted). EWF also does not dispute that Tapia-Rendon suffered the same *type* of injury as every other class member ("technical violation of BIPA," *id.* at 2) that entitles her to the same *type* of recovery ("statutory damages," *id.* at 16). Tapia-Rendon is an adequate representative because she "possess[es] the same interest and suffer[ed] the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). Moreover, EWF offers nothing to dispute Tapia-Rendon's already-demonstrated commitment to pursing and participating in this litigation on behalf of her fellow class members.

The Court therefore concludes that Tapia-Rendon and the class members possess the same interest in vindicating their statutory rights under the BIPA such that she adequately represents the class. *See Orr v. Shicker*, 953 F.3d 490, 499 (7th Cir. 2020). The Court further concludes, and EWF does not dispute, that class counsel have demonstrated their adequacy. *See* Fed. R. Civ. P. 23(g).

9

### 2. Other Rule 23(a) requirements

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Seventh Circuit has explained that "[t]he key numerosity inquiry . . . is not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enters., Inc*., 986 F.3d 773, 773 (7th Cir. 2021). The parties estimate that the class is over 2,000 people, making it sufficiently numerous under Rule 23(a)(1) to make joinder impracticable. *See Fauley v. Heska Corp.*, 326 F.R.D. 496, 504–05 (N.D. Ill. 2018) ("[A] class of forty is generally enough to certify a class.").

Second, Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "[T]he class claims 'must depend on a common contention' that is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Howard*, 989 F.3d at 598 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Tapia-Rendon alleges a standardized pattern of conduct toward all members of the proposed classes: biometric registration during a worker's initial enrollment via an EWF device and biometric scanning upon subsequent entries to and exits from the workplace. The putative classes therefore share common questions, including factual questions about the functionality of EWF devices and their collection and storage of class members' data, as well as legal questions about whether that collection and storage constitutes a violation of the BIPA. The Court therefore concludes that the proposed class satisfies the commonality requirement.

Finally, Rule 23(a)(3) requires the class representative's claims to be typical of

those of the potential class members.  Fed. R. Civ. P. 23(a)(3).  "As a general matter, '[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'"  *Howard*, 989 F.3d at 605 (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)) (alteration in original).  Tapia-Rendon is typical of the class because her claim is identical to the claims of the proposed class members, as all of the claims arise from a uniform course of conduct.  The only variation among class members appears to be the possible number of scans—or violations—that each suffered.  Tapia-Rendon's claims thus "have the same essential characteristics as the claims of the class at large."  *Lacy v. Cook County*, 897 F.3d 847, 866 (7th Cir. 2018).

Thus, Tapia-Rendon has satisfied all four requirements of 23(a).

**B.      Rule 23(b)(3) requirements**

As previously noted, certification under Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

EWF contends that superiority does not exist because significant damages are available for most or all class members.  It contends that the potential for significant damages incentivizes individual litigation; poses manageability issues regarding individualized damage determinations that it says will be necessary—under *Cothron*—if EWF is found liable; and raises due process concerns.  EWF also contends that predominance does not exist because its affirmative defenses require individualized evaluation of class members' conduct.

11

### 1.    Large potential recoveries

EWF contends that the damages available to the putative class members under the BIPA—particularly after the Illinois Supreme Court's holding in *Cothron*—places the proposed class outside the intended scope of Rule 23(b)(3) in various ways.

### a.    Incentive to litigate individually

EWF first contends that the putative class members' ability recover potentially significant damages operates to incentivize members to litigate their claims individually. It cites several cases that it contends supports this proposition, but as Tapia-Rendon points out, none of those cases are factually analogous, and none of them are binding authority.

To the Court's knowledge, not a single class member other than Tapia-Rendon has sued EWF, likely because EWF's violations of the BIPA are effectively surreptitious. Nor did any of the thirty-four members of the United Tape settlement class decide to opt out of the class even after they *were* notified of their entitlement to significant damages.

There is a hypothetical possibility that some individual class members may prefer to litigate their claims individually.  But at this point, it's purely hypothetical.  The Court is persuaded that litigating these claims on a class-wide basis "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem Prods., Inc.*, 521 U.S. at 615.

And even if one accepts the possibility of the filing of additional claims given the purported incentive referenced to EWF, as a general rule, "[t]he more claimants there are, the more likely a class action is to yield substantial economies in litigation."

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). The potential class comprises over 2,000 individuals, all with virtually identical claims that will involve identical proof. It can hardly be disputed that resolving these claims through a class action "would be more efficient than proceeding with hundreds of individual suits." *Porter v. Pipefitters Ass'n Loc. Union* 597, 208 F. Supp. 3d 894, 912 (N.D. Ill. 2016).

  **b. Manageability issues**

   The Court addresses next EWF's contention that *Cothron*'s lack of guidance regarding how discretionary damages under the BIPA are to be awarded renders the putative class here unmanageable. Specifically, EWF contends that, if judgment is found against it, the Court or a jury would need to engage in a "nightmarish," individualized damages assessment for each individual class member. Def.'s Resp. at 14. The Court disagrees.

   In the Court's view, EWF's overstates the impact of *Cothron*. First of all, on the record before the Court, the number of violations of the BIPA is likely to be easily ascertainable, as the nature of the violations is alleged to be the same from class member to class member. Although *Cothron* leaves room for discretion in fashioning a damages award under the BIPA, there is a reasonable likelihood a standardized per-scan will almost certainly be established and applied consistently across the class. Again, the class is not seeking actual damages, and the likelihood of any significant number of class members having viable claims for actual damages is remote. Rather, the request is for liquidated damages under the statute, and there is every reason to believe that these will be assessed on a common per-scan basis across the class, even if the amount differs from the $1,000 or $5,000 liquidated damages amounts provided in

the BIPA. In other words, the fact that damages under the BIPA are discretionary after *Cothron* does not mean that they cannot be awarded in a common class-wide manner.

Moreover, as EWF correctly points out, the superiority analysis—which includes assessing possible class-management issues—involves *balancing* manageability issues with the benefits to be gained from resolving claims on a class-wide basis. *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) ("class action treatment is appropriate and is permitted by Rule 23 when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding"). As already noted, the issues involved in this case are common to all potential class members, so the efficiency of a class proceeding far outweighs any management problems—real or hypothetical—posed by awarding discretionary damages to the putative classes.

If it at some point EWF's manageability concerns become realized, "Rule 23(c)(1)(B) specifically recognizes the possibility of certifying not just 'class claims,' but also class 'issues.'" *Arreola v. Godinez*, 546 F.3d 788, 800-01 (7th Cir. 2008) ("district judges can devise solutions to address [variances between class members' fact-bound, personal damages] if there are substantial common issues that outweigh the single variable of damages amounts."). Thus, "the need for individual damages determinations does not, in and of itself, require denial of [class] certification." *Id.*

### c. Due process concerns

Finally, EWF contends that in this case, "any judgment may be violative of [its] constitutional due process rights" because the potential damages "rise to over $10 billion in aggregate for reckless or intentional violations." Def.'s Resp. at 15. Even

assuming EWF's potential damages estimates are not exaggerated, this argument is foreclosed by *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006).  As EWF acknowledges in a footnote, the Seventh Circuit held in *Murray* that the potential for massive class-wide damages does not render certification inappropriate.  *Murray*, 434 F.3d at 953.  The Court therefore need not discuss this contention further, as EWF raised it only to preserve the point.

The Court concludes that this case is well-suited for class treatment, especially because the claims involve only statutory damages that are likely to be awarded on a common basis, even after *Cothron*.  There is no indication that the class members' interests would be better served by leaving them to individual lawsuits, or that realistically class members have an interest in doing so.  Furthermore, consolidating these claims in this forum is particularly appropriate given that the BIPA is an Illinois statute, and the alleged violations all occurred within Illinois.

### 2.     Predominance

EWF contends that class-wide issues do not predominate over individualized issues because "[i]n addition to the individualized damages concerns . . . above . . . EWF's waiver and equitable estoppel affirmative defenses require individual evaluations of each class members' conduct when they provided their alleged biometric information to their employer and, in turn, to EWF."  Def.'s Resp. at 17.  The Court has already sufficiently addressed the individualized damages point and has concluded that it does not render class certification inappropriate.  The Court therefore turns to EWF's contentions regarding its claimed affirmative defenses.

Under Illinois law, waiver "is defined as either an express or implied voluntary

and intentional relinquishment of a known and existing right." *Universal Fire & Cas. Ins. Co. v. Jabin*, 16 F.3d 1465, 1470 (7th Cir. 1994) (internal quotation marks omitted). And the gist of the doctrine of equitable estoppel is that "one cannot justly or equitably lull his adversary into a false sense of security, causing him to subject his claim to the bar of the statute, and then plead the very delay caused by his course of conduct." *Beynon Bldg. Corp. v. Nat'l Guardian Life Ins. Co*., 118 Ill. App. 3d 754, 763, 455 N.E.2d 246, 252 (1983). EWF cites no authority to support the contention that either of these affirmative defenses is viable in a suit under the BIPA.[4]

Even if EWF had offered such authority, the Court agrees with Tapia-Rendon that "whether [these defenses] are even available on BIPA claims is a common issue, and if they are, so too is their application." Def.'s Reply at 1. As EWF frames the waiver defense—namely, that all residents of Illinois were on notice of their rights under the BIPA as of the law's passing in 2008—it is equally applicable to all class members. And regarding the supposed estoppel defense, it is not apparent—and EWF has not explained—how it supposedly applies in this case, and more importantly, there's no indication that its application would vary across the class. The argument is therefore forfeited and, in any event, it lacks merit. *Shipley*, 947 F.3d at 1063.

Even if EWF is correct that "[a] person-by-person analysis for the remaining class members will be required when evaluating EWF's defenses" because "EWF had hundreds of clients throughout the state using its timeclocks . . . . [and] each class member's conduct is likely to differ based on who their employer was," Def.'s Resp. at

---

[4] Conversely, Tapia-Rendon cites cases that suggest the BIPA abrogates such common-law defenses.

16

19, EWF fails to explain—and the Court cannot see—how these issues *predominate* over the numerous common issues. *See Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016) (predominance is satisfied when "common questions represent a significant aspect of case and . . . can be resolved for all members of a class in a single adjudication."); *see also*, *Amchem Prods., Inc.*, 521 U.S. at 623–24 (the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").

As discussed earlier, the questions of law and fact underlying the class members' claims are essentially identical and will be premised on common proof. Specifically, the common issue of demonstrating that EWF collected and stored biometric information in violation of the BIPA will predominate over any potential individualized issues. The Court concludes that the proposed class is cohesive and satisfies the predominance requirement.

## Conclusion

For the reasons stated above, the Court grants the plaintiffs' motion for class certification [dkt. no. 138]. The Court certifies the following class under Rule 23(b)(3):

> **The Class**: All individuals who used any cloud-based EWF biometric device in Illinois on or after June 24, 2016.

> **The Subclass:** All Class members who used a cloud-based EWF biometric device in Illinois on or before April 30, 2022.

The Court also appoints the following attorneys as class counsel: Thomas R. Kayes of The Civil Rights Group, LLC and J. Dominick Larry of Nick Larry Law, LLC. The case is set for a telephonic status hearing on August 25, 2023 at 9:05 a.m. for the purpose of setting a schedule for further proceedings and discussing the possibility of settlement.

The parties are directed to confer regarding a schedule and are to submit a joint status report with a proposal (or competing proposals if they cannot agree) on August 22, 2023.

_____

MATTHEW F. KENNELLY
United States District Judge

Date:  August 15, 2023