IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA TAPIA-RENDON, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>UNITED TAPE & FINISHING CO. INC. and EASYWORKFORCE SOFTWARE, LLC,<br><br>　　　　　Defendants. | Case No. 21 C 3400 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Maria Tapia-Rendon sued EasyWorkforce Software LLC (EWF) for violations of the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1–99. Tapia-Rendon moved to certify a class and subclass under Federal Rule of Civil Procedure 23(b)(3). On August 15, 2023, the Court granted the motion for class certification. *Tapia-Rendon v. United Tape & Finishing Co., Inc.*, No. 21 C 3400, 2023 WL 5228178 (N.D. Ill. Aug. 15, 2023) (hereinafter "Class Cert. Order"). EWF then filed a motion for reconsideration. The Court held oral argument on the motion. For the reasons stated below, the Court denies EWF's motion.

### Background

The Court's class certification order discusses the relevant background of this case. To summarize, EWF sells workplace timekeeping systems that allow employers to track employees as they enter and exit the workplace. Employees clock in and clock

1

out by scanning their fingers on EWF devices, and EWF software identifies the employees and tracks their entries. The parties dispute whether EWF's devices capture biometric identifiers and biometric information as those terms are defined in BIPA. EWF has sold its timekeeping systems to hundreds of customers in Illinois, including Tapia-Rendon's employer United Tape & Finishing Co. Tapia-Rendon filed suit alleging that EWF and United Tape violated BIPA sections 15(b), 15(d), and 15(e) by collecting, sharing, and storing her biometrics without following the protocols mandated by the statute. United Tape opted to settle the claims against it, and the Court approved the class settlement agreement of the United Tape claims in May 2023. Only the claims against EWF remain.

On May 19, 2023, Tapia-Rendon filed a motion for certification under Rule 23(b)(3) of a class of individuals who had used EWF biometric devices on or after June 24, 2016 and a subclass of individuals who had used EWF biometric devices on or before April 30, 2022. EWF opposed certification. First, EWF argued that Tapia-Rendon was not an adequate class representative because she did not use EWF's devices as many times as other class members and therefore would have a smaller recovery than the average class member. Second, EWF argued that a class action was not a superior method of adjudication because class members' claims are valuable enough to incentivize individual litigation and the potential for an excessive aggregate damages award would render class litigation unmanageable. Third, EWF argued that common issues did not predominate because EWF's affirmative defenses of waiver and estoppel required individualized analysis.

The Court considered EWF's arguments but found that class certification was

2

appropriate. The Court found that the class satisfied the numerosity, commonality, and typicality requirements of Rule 23(a), none of which EWF disputed. With respect to the Rule 23(a) requirement that a representative party must "fairly and adequately protect the interests of the class," the Court found that EWF forfeited the point by failing to develop and support its argument. The Court also stated that, even considering the smaller-recovery argument on its merits, Tapia-Rendon was an adequate representative because she suffered the same type of injury arising from the same course of events and was entitled to the same type of recovery as the other class members. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal quotations omitted)). Tapia-Rendon therefore shared "the same interest in vindicating [her] statutory rights under the BIPA" as her fellow class members, even if her ultimate recovery might be less than the average class member. Class Cert. Order at 9.

Next, the Court found that the class satisfied the Rule 23(b)(3) requirements "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In response to EWF's argument that the potential for substantial individual damages made individual litigation preferable to class-wide proceedings, the Court noted that no other class members had filed suit. This weighed against EWF's hypothesis that class members had sufficient incentive to litigate individually. In any event, the Court explained that even considering the "hypothetical possibility that some individual class members may prefer to litigate

3

their claims individually . . . the Court is persuaded that litigating these claims on a class-wide basis would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Class Cert. Order at 12 (quoting *Amchem Prods., Inc.*, 521 U.S. at 615).

The Court also disagreed with EWF's argument that class proceedings would be unmanageable because of the Illinois Supreme Court's decision in *Cothron v. White Castle System, Inc.*, 2023 IL 128004, 216 N.E.3d 918, in which the court held that a separate BIPA claim accrues each time a private entity scans a biometric identifier in violation of the statute. *Id.* ¶ 1, 216 N.E.3d at 920. The court in *Cothron* also stated that damages under BIPA are discretionary rather than mandatory. *Id.* ¶ 42. EWF argued that *Cothron* opened the door for an award in the billions if the class members' claims are aggregated and that the consequent need for the Court to reduce the excessive award would create a flood of individualized damages inquiries. But EWF conceded that the Seventh Circuit held in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), that the potential for massive class-wide damages does not render certification inappropriate. In addition, the Court explained that the class had requested only statutory damages and not actual damages, so there was no reason to believe that damages would not be awarded—or could not be reduced—on a standardized basis across the class. Class Cert. Order at 13–14.

Finally, the Court disagreed with EWF's argument that common issues would not predominate because EWF's waiver and estoppel defenses would require individual evaluations of each class members' conduct. The Court first explained that the question

4

whether these defenses are even available under BIPA is a common issue. Moreover, EWF itself framed the waiver defense as one that would be equally applicable to all class members. See Def.'s Resp. to Pl.'s Mot. for Class Cert. at 18 ("BIPA was passed in 2008, meaning any resident of Illinois, including Plaintiff, should know about her BIPA rights."). The Court further found that EWF forfeited its argument that the estoppel defense defeated the predominance requirement because "it is not apparent—and EWF has not explained—how it supposedly applies in this case, and more importantly, there's no indication that its application would vary across the class." Class Cert. Order at 16. The Court concluded that, even if the application of EWF's defenses might differ among class members, "EWF fail[ed] to explain—and the Court cannot see—how these issues *predominate* over the numerous common issues." Class Cert. Order at 17.

Because the Court found that the requirements of Rule 23(a) and 23(b)(3) were met, it granted Tapia-Rendon's motion to certify:

> **The Class:** All individuals who used any cloud-based EWF biometric device in Illinois on or after June 24, 2016.
>
> **The Subclass:** All members who used a cloud-based EWF biometric device in Illinois on or before April 30, 2022.

## Discussion

Federal Rule of Civil Procedure 54(b) permits a district court to revise a non-final order at any time before entering judgment. A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Rather, "a motion to reconsider is only appropriate where a court has misunderstood a party,

where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), *overruled in part on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

Because the class certification order thoroughly discusses the requirements for class certification under Rules 23(a) and 23(b), the Court will not repeat that analysis here. Rather, it will address each of EWF's arguments for reconsideration in turn.

**A.     Rule 23(b)(3) superiority requirement**

EWF first argues that the Court erred in finding that the proposed class meets the "superiority" requirement of Rule 23(b)(3). To certify a class action under Rule 23(b)(3) the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Rule identifies four considerations that are "pertinent" to these determinations:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). EWF asserts that the Court's superiority analysis was flawed because it did not place enough weight on the fact that class members have a substantial incentive to pursue individual litigation after the Illinois Supreme Court's

6

decision in *Cothron*. Relatedly, EWF says that the Court improperly considered the fact that no class members have filed individual suits against EWF. EWF also argues that the Court misunderstood its argument that a class action would be unmanageable because of potential complications associated with awarding damages.

### 1. Individual incentive to litigate

As the Court noted in its certification order, the Illinois Supreme Court held in *Cothron* that a defendant can commit a fresh BIPA violation (or even multiple violations) each time a fingerprint is scanned. Class Cert. Order at 3 (citing *Cothron*, 2023 IL 128004, ¶ 1). Because BIPA authorizes statutory damages of $1,000 for negligent violations and $5,000 for reckless or intentional violations, 740 ILCS 14/20(1)–(2), individuals who have had their fingerprints scanned numerous times can potentially recover thousands of dollars per scan. In this case, the plaintiffs allege that EWF violated three different subsections of BIPA with each scan and therefore seek $15,000 in damages per scan based on allegations of reckless or intentional conduct on EWF's part. Because many class members scanned their fingers numerous times throughout their employment, each could theoretically recover thousands or even, potentially, millions of dollars. EWF contends that given the high potential value of each class member's claims, class members are sufficiently incentivized to sue individually, and a class action is not superior to this one-by-one approach.

The Court disagrees. To start, there are several reasons why the incentives for individual suit in this case are likely a good deal weaker than EWF suggests. First, the amount that a BIPA plaintiff realistically can expect to recover cannot be predicted by simply multiplying the number of possible violations by $1,000 or $5,000. As this Court

7

has previously discussed, the Illinois Supreme Court indicated in *Cothron* that BIPA's damages are discretionary. *See Rogers v. BNSF Ry. Co.,* No. 19 C 3083, 2023 WL 4297654, at *7–*9 (N.D. Ill. June 30, 2023). In federal court, the parties are entitled to have a jury exercise that discretion. *See id.* at *9. Although the Court has not yet reached the question of how to instruct a jury in a post-*Cothron* BIPA suit, the Illinois Supreme Court has indicated that an appropriate award under BIPA would "(1) fairly compensate[ ] claiming class members and (2) include[ ] an amount designed to deter future violations, without destroying defendant's business." *Cothron*, 2023 IL 128004, ¶ 42, 216 N.E.3d at 918. This suggests that the jury would be permitted to consider factors such as the harm suffered by the class members and the proportionality of any damages award in relation to the severity of the defendant's misconduct. *See also St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919) (explaining that the Fourteenth Amendment bars states from enacting statutory damage provisions that are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable"). Given that, as EWF points out, the class members in this case do not appear to have suffered any harm apart from an arguable invasion of privacy, there is no real reason to believe that jackpot-like individual jury awards are likely.

Second, BIPA litigation, if carried through to a conclusion, is costly and time-consuming. That has been this Court's consistent experience in several years of presiding over both individual and class BIPA suits. For example, class counsel stated at oral argument that this case required investigation into the scanner's source code and other technical details to determine whether and how biometric information was obtained and electronically stored. And retention of expert witnesses to address these

8

and other issues tends to be the norm if the case proceeds past the initial stages. That tends to require a significant outlay of funds on the part of plaintiff's counsel, not to mention the significant time commitment that litigating such a case requires. Even with BIPA's fee-shifting provision, 740 ILCS 14/20(3), attorneys may conclude that it is not worth the investment to pursue BIPA claims on an individual basis given the uncertainty regarding damages in light of their discretionary nature.

Third, as the Court explained in its order granting class certification, *see* Class Cert. Order at 12, BIPA violations are often surreptitious, in the sense that class members may not be aware that their legal rights have been violated—let alone that they could be entitled to a significant recovery as a result. Without the notice that they would receive as part of a class action, these individuals may never know that they had a potentially valuable claim in the first place. See *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (stating that whether "the plaintiff will be aware of her rights" under a statute is among the "considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing [the statute's] objectives"); *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008) (rejecting the defendant's argument "that certification should be denied because class members could obtain a larger award if they filed individual suits" in part because that argument "presumes that the class members are aware that their rights may have been violated").

Some combination of these observations likely explains why BIPA suits commonly are pursued on a class-wide rather than an individual basis. Indeed, as the Court discussed in its certification order, no member of *this* class has brought an

9

individual suit thus far. Nor did any member of the class that entered into a settlement with EWF's co-defendant, United Tape, exercise their right to opt out of that settlement.

EWF responds that the Court should not—and in fact cannot—consider whether class members actually have filed or are likely to file suit. Instead, EWF insists that "[t]he inquiry is focused on the potential amount of recovery and whether there is an incentive to sue, not whether the individual actually sued the defendant." Def.'s Mot. for Reconsideration at 5. EWF cites to the Seventh Circuit's decision in *Andrews v. Chevy Chase Bank*, 545 F.3d 570 (7th Cir. 2008), for this proposition. But *Andrews* did not establish the categorical rule that EWF suggests. In that case, the Seventh Circuit held that the Truth in Lending Act (TILA) remedy of rescission could not be pursued on a class-wide basis. *Andrews*, 545 F.3d at 571. This holding was premised mainly on a TILA-specific textual argument and on the highly individualistic nature of the TILA rescission remedy, which requires undoing complex credit transactions. In reaching this conclusion, the Seventh Circuit briefly addressed the plaintiffs' argument that a class action was the only "realistic" means of recovery. *Id.* at 577. The court noted in response that "TILA rescission is not the sort of remedy that would not otherwise be sought unless the class-action mechanism were available" because "a prevailing debtor with a typical loan can expect to receive over $50,000, plus attorney's fees and costs." *Id.*

This statement cannot be read to establish a categorical rule that courts must deny certification any time a class could theoretically recover over $50,000 per person pursuant to a statute. Nor does it say that courts cannot look at whether putative class members actually have pursued individual suits. Indeed, that would be at odds with the

text of Rule 23(b)(3)(B), which specifically instructs courts to consider "the extent and nature of any litigation concerning the controversy *already begun* by or against class members" (emphasis added). Rather, the Seventh Circuit simply explained that the possibility for significant individual recovery was *one* consideration that supported its conclusion that class actions are not appropriate in TILA rescission cases. There is therefore no basis for EWF's argument that the Court has failed to heed Seventh Circuit precedent.

In sum, the Court reaffirms its previous conclusion that the hypothetical possibility that individuals may prefer to litigate their claims individually does not outweigh the advantages that class-wide proceedings offer in this case.

**2. Manageability**

Rule 23(b)(3) also requires courts to consider "the likely difficulties in managing a class action" when deciding whether to certify a class. EWF argues that a class action would be unmanageable because (1) "a damages award in the billions would present manageability concerns because the award would surely need to be reduced by the Court," as violative of EWF's due process rights, and (2) "any reduction in this case would necessarily have to occur for each individual class member because the damages may be awarded per-scan, not per-person." Def.'s Mot. for Reconsideration at 8–9.

The Court considered and rejected these arguments in its class certification order, and EWF has provided no appropriate basis for the Court to reconsider its decision. As EWF recognizes and the Court has already stated, the Seventh Circuit has held that the large size of a potential damages award when class members' claims are

11

aggregated is not grounds upon which to refuse class certification. *Murray*, 434 F.3d at 953 (explaining that "[t]he reason that damages can be substantial . . . does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize [statutory damages]" without setting limits on "the aggregate award to any class"). Contrary to EWF's argument, this is true even if there is a possibility that an aggregate damages award may be so excessive as to violate the Due Process Clause of the Fourteenth Amendment. *See id.* (explaining that the "constitutional limits [on excessive damages awards] are best applied after a class has been certified" because "a judge may evaluate the defendant's overall conduct and control its total exposure" rather than "[r]educing recoveries by forcing everyone to litigate independently").

EWF nevertheless insists that the task of reducing an excessive award would be unmanageable in this case because some class members' fingers were scanned thousands of times, but others were scanned only a handful of times. EWF stresses that if the Court were to reduce the damages award on a per-scan basis, some class members would receive large awards while other class members would receive modest ones. But this is a straightforward consequence of the statutory scheme as interpreted by the Illinois Supreme Court in *Cothron*: because each scan is a distinct violation, more scans equals more dollars. In this case, there is no reason to believe that a factfinder would conclude that some class members should receive more dollars-per-scan than others. EWF's conduct does not differ among class members, nor does it seem likely that class members differ in the harm they experienced as a result of EWF's actions. (Recall that the class has not requested actual damages.) The Court therefore does not anticipate that a flood of individualized damages inquiries will affect its ability

12

to manage the class action.

B.     **Waiver and estoppel defenses**

EWF next argues that the Court erred in its analysis of EWF's argument that its waiver and estoppel affirmative defenses require the denial of class certification because the defenses would "require individual evaluations of each class members' conduct when they provided their alleged biometric information to their employer and, in turn, to EWF." Def.'s Resp. to Pl.'s Mot. for Class Cert. at 18. First, EWF asserts that the Court incorrectly deemed this argument forfeited. In EWF's view, it was not required to "cite authority in support of its position that these are viable affirmative defense [sic] because Plaintiff did not challenge EWF's waiver and estoppel defenses until its reply brief." Def.'s Mot. for Reconsideration at 9. The Court disagrees. EWF introduced the proposition that these defenses defeat class certification. That requires EWF to articulate at least some colorable legal argument that the defenses apply to the BIPA claims at issue. *See Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 789 (N.D. Ill. 2020) (reasoning that "mere speculation" that a "purportedly individualized issue predominates over common issues" is insufficient to defeat class certification).

Regardless of the forfeiture, as the Court explained in its class certification order and reiterates now, whether these defenses are available against BIPA claims is a common issue that is appropriate to resolve on a class-wide basis. Moreover, the Court is not convinced that the application of EWF's defenses, if available, would require highly individualized inquiries. "As EWF frames the waiver defense—namely, that all residents of Illinois were on notice of their rights under the BIPA as of the law's passing in 2008—it is equally applicable to all class members." Class Cert. Order at 16. With

respect to the estoppel defense, EWF *still* has not explained how it applies in this context or why it would necessitate individualized evaluations—even after it was called out on this in the Court's earlier ruling. As far as the Court can tell, the gist of the estoppel argument is that EWF "in good faith[ ] relied" on the conduct of class members. Def.'s Mot. for Reconsideration at 10 (quoting *Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001)). But it appears that the class members here all acted in the same way: by scanning their fingers to clock in and out of work. If that conduct somehow relieves EWF from BIPA liability, it would do so on a class-wide basis. EWF has offered no reason for the Court to reconsider its previous finding that common issues predominate over individual questions in this case.

C.    **Adequacy of class representative**

Finally, EWF argues that Tapia-Rendon is an inadequate representative of the class because she allegedly knew of her rights under BIPA when she used EWF's timeclock. In EWF's view, this means that Tapia-Rendon waived her rights under the statute. *See* Def.'s Mot. for Reconsideration at 11. An individual may be an inadequate class representative if she "is subject to a defense that couldn't be sustained against other class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011). But EWF did not develop this argument in its class certification response brief. Although it discussed the application of the waiver defense to Tapia-Rendon in an attempt to explain why the 23(b)(3) *predominance* requirement was not met, it failed to explain or support with authority how that affects Tapia-Rendon's *adequacy* as a class representative under 23(a)(4). "Arguments raised or developed for the first time in a motion to reconsider are generally deemed forfeited." *Pole v.*

14

*Randolph*, 570 F.3d 922, 938 (7th Cir. 2009). At any rate, as just discussed, EWF's defenses do not appear to be particularly unique to Tapia-Rendon. Rather, they are the same defenses it intends to raise against the class as a whole. The Court therefore sees no reason to revisit its finding that Tapia-Rendon is an adequate class representative.

## Conclusion

For the reasons stated above, the Court denies EWF's motion for reconsideration [dkt. no. 170] of the class certification order. The case is set for a telephonic status hearing on February 8, 2024 at 9:15 a.m. for the purpose of addressing the proposed class notice and setting a schedule for further proceedings. The following call-in number will be used: 888-684-8852, access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 2, 2024