**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MARIA TAPIA-RENDON, individually and
on behalf of all others similarly situated,

    *Plaintiff*,

vs.

WORKEASY SOFTWARE, LLC,

    *Defendant*,

Case No. 1:21-cv-3400

Hon. Matthew F. Kennelly

**MEMORANDUM IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Thomas R. Kayes
LOEVY + LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
312.243.5900
kayes@loevy.com

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.
Chicago, IL 60622
773.694.4669
nick@nicklarry.law

*Class Counsel*

## TABLE OF CONTENTS

1. INTRODUCTION ................................................................................................. 1

2. STATEMENT OF FACTS ................................................................................... 2

    2.1. WorkEasy's Biometric Devices ................................................................ 2

    2.2. WorkEasy's storage and disclosure of templates ................................... 5

    2.3. Plaintiff's use of the TL250 Timeclock ................................................... 5

3. LEGAL STANDARD ......................................................................................... 5

4. ARGUMENT ....................................................................................................... 6

    4.1. There is no genuine issue of material fact on the Class's Section 15(b) claims. .................................................................................................................. 6

        4.1.1. WorkEasy admits it is a private entity. ..................................... 7

        4.1.2. WorkEasy captured, collected, or otherwise obtained the Class members' biometric information. ................................................... 7

            4.1.2.1. The templates generated by WorkEasy's timeclocks are biometric information. ....................................... 7

            4.1.2.2. WorkEasy captured, collected, or otherwise obtained the templates. ....................................... 10

        4.1.3. WorkEasy did not obtain consent to the capture, collection, or obtainment of their biometric information. ..................................... 12

    4.2. WorkEasy violated Section 15(d) by disclosing or otherwise disseminating Subclass members' biometric information without the requisite authorization. ...................................................................................................... 13

        4.2.1. WorkEasy possessed Subclass members' biometric information. ..... 13

        4.2.2. WorkEasy disclosed or otherwise disseminated Subclass members' biometric information to Vault Networks. ........................................... 14

        4.2.3. WorkEasy lacked authorization for its disclosures. ........................... 15

    4.3. WorkEasy violated Section 15(e) by failing to adequately secure the Subclass's biometric information. .................................................................... 16

        4.3.1. WorkEasy failed to secure the Subclass's biometric information using the reasonable standard of care. ............................................................ 16

i

**4.3.2. WorkEasy gave other types of sensitive information greater protection than the Subclass's biometric information.** ....................... 17

**4.4. WorkEasy's Affirmative Defenses Fail.** ................................................................ 17

    **4.4.1. WorkEasy's first, second, third, eleventh, and fifteenth defenses are not affirmative defenses at all.** ............................................ 17

    **4.4.2. WorkEasy's fourth affirmative defense fails because Plaintiff, the Class, and the Subclass all have standing.** ............................................. 18

    **4.4.3. WorkEasy's common-law defenses do not apply to BIPA claims and lack evidentiary support in any event.** ............................................ 20

    **4.4.4. WorkEasy's sixth affirmative defense has no bearing on Plaintiff's or the Class's claims.** ........................................................... 22

    **4.4.5. WorkEasy's sixteenth affirmative defense cannot prevent liability or be considered prior to the imposition of a damages award.** ........... 23

**5. CONCLUSION** ............................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allstate Ins. Co. v. Menards, Inc.*,
   285 F.3d 630 (7th Cir. 2002) ............................................................................. 10

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................... 5, 6

*Auburndale State Bank v. Dairy Farm Leasing Corp.*,
   890 F.2d 888 (7th Cir. 1989) ....................................................................... 12, 15

*Barnett v. Apple Inc.*,
   225 N.E.3d 602 (Ill. App. Ct. 2022) ........................................... 10, 11, 12, 14

*Barthel v. Ill. Central Gulf R.R. Co.*,
   384 N.E.2d 323 (Ill. 1978) ................................................................................ 20

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014) ....................................................................... 23

*Brandenberg v. Meridian Senior Living, LLC*,
   564 F. Supp. 3d 627 (C.D. Ill. 2021) ............................................................... 20

*Brandenberg v. Meridian Senior Living, LLC*,
   No. 20-cv-03198, 2023 WL 5671275 (C.D. Ill. Sept. 1, 2023) ....................... 20

*Bryant v. Compass Group USA, Inc.*,
   958 F.3d 617 (7th Cir. 2020) ........................................................................... 19

*Chicago Truck Drivers v. Leaseway Transp. Corp.*,
   76 F.3d 824 (7th Cir. 1996) ............................................................................... 7

*Cothron v. White Castle Sys., Inc.*,
   20 F. 4th 1156 (7th Cir. 2021), *certified question answered*,
   2023 IL 128004, 216 N.E.3d 918, *as modified on denial of reh'g* (July 18, 2023) .......... 19

*Cothron v. White Castle Sys., Inc.*,
   216 N.E.3d 918 (Ill. 2023), *as modified on denial of reh'g* (July 18, 2023) ................... 14

*Figueroa v. Kronos Inc.*,
   454 F. Supp. 3d 772 (N.D. Ill. 2020 ........................................................... 12, 15

*Fox v. Dakkota Integrated Sys., LLC*,
   980 F.3d 1146 (7th Cir. 2020) ......................................................................... 19

*Heard v. Becton, Dickinson & Co.*,
   440 F. Supp. 3d 960 (N.D. Ill. 2020) .............................................................. 14

*Howe v. Speedway LLC*,
No. 19-cv-1374, 2024 WL 4346631 (N.D. Ill. Sept. 29, 2024) ...................... 9, 10, 12, 14

*Jacobs v. Hanwha Techwin Am., Inc.*,
No. 21-cv-866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) ............................... 14

*Miller v. Gonzalez*,
761 F.3d 822 (7th Cir. 2014) ....................................................................................... 6

*Mosby v. Ingalls Mem'l Hosp.*,
207 N.E.3d 1157 (Ill. App. Ct. 2022),
*rev'd*, 234 N.E.3d 110 (Ill. 2023) ............................................................................... 11

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) ..................................................................................... 23

*Olle v. C House Corp.*,
967 N.E.2d 886 (Ill. App. Ct. 2012) ..................................................................... 20, 21

*People v. Ford*,
43 N.E.3d 193 (Ill. App. Ct. 2015) ............................................................................ 21

*Raquet v. Allstate Corp.*,
348 F. Supp. 3d 775 (N.D. Ill. 2018) .......................................................................... 18

*Riemer v. Chase Bank USA, N.A.*,
274 F.R.D. 637 (N.D. Ill. 2011) .................................................................................. 18

*Roberson v. Maestro Consulting Services LLC*,
507 F. Supp. 3d 998 (S.D. Ill. 2020) .......................................................................... 19

*Rogers v. BNSF Ry. Co.*,
680 F. Supp. 3d 1027 (N.D. Ill. 2023) ....................................................................... 23

*Rosenbach v. Six Flags Entm't Corp.*,
129 N.E.3d 1197 (Ill. 2019) ................................................................... 10, 14, 19, 21

*Snider v. Heartland Beef, Inc.*,
479 F. Supp. 3d 762 (C.D. Ill. 2020) ............................................................... 20, 21, 22

*United States v. Tucker*,
150 F. Supp. 2d 1263 (D. Utah 2001), *aff'd*, 305 F.3d 1193 (10th Cir. 2002) ................ 14

*Vaughan v. Biomat USA, Inc.*,
No. 20-cv-4241, 2022 WL 4329094 (N.D. Ill. Sept. 19, 2022) ...................................... 20

*Vill. of Park Forest v. Angel*,
347 N.E.2d 278 (Ill. App. Ct. 1976) ..................................................................... 12, 15

**Statutes**

740 ILCS 14/10 ........................................................................................ 7, 10, 13, 22

740 ILCS 14/15 .............................................................................................. *passim*

Fed. R. Civ. P. 56 ..................................................................................................... 5

**Other Authorities**

*Capture*, Merriam-Webster Online Dictionary,
    https://www.merriam-webster.com/dictionary/capture) ................................... 11

*Fingerprint*, Merriam-Webster,
    https://www.merriam-webster.com/dictionary/fingerprint ................................. 9

*Obtain*, Black's Law Dictionary (12th ed. 2024) ....................................... 11

*Obtain*, Merriam-Webster Online Dictionary,
    https://www.merriam-webster.com/dictionary/obtain ..................................... 11

*Otherwise*, Black's Law Dictionary (12th ed. 2024) ................................... 11

*Otherwise*, Merriam-Webster Online Dictionary,
    https://www.merriam-webster.com/dictionary/otherwise................................. 11

## 1.     INTRODUCTION

Defendant WorkEasy Software, LLC sold timekeeping devices to businesses throughout Illinois. Those devices included fingerprint timeclocks, which worked by scanning workers' fingerprints and using the prints' unique features to generate mathematical representations of the fingerprints, known as templates. Once WorkEasy's devices generated a template for a worker, the template was saved in WorkEasy's database, and the worker was enrolled in WorkEasy's timekeeping system. From there, the worker could use his or her fingerprint to clock in and out of shifts, simply by pressing their fingerprint against the scanning surface of the WorkEasy timeclock. At that point, WorkEasy's software would generate a new template, compare it to the stored template in WorkEasy's database, and, if there was a match, clock the worker in or out.

Plaintiff Maria Tapia-Rendon used one of WorkEasy's fingerprint timeclocks in Illinois. She sued, obtained certification of a Class and Subclass, and now seeks partial summary judgment on liability on her claims that WorkEasy violated Sections 15(b), (d), and (e) of the Biometric Information Privacy Act, 740 ILCS 14/1–99 ("BIPA"), by collecting her biometric information without written consent, disclosing it without written consent, and failing to adequately secure it.

For each claim, Plaintiff must show that WorkEasy's timeclocks used information derived from fingerprints to identify the Class or Subclass members. Despite hundreds of pages of its own documents using the word "fingerprint" to describe what is scanned by its devices, WorkEasy has contested this threshold issue, arguing that a fingerprint is only really a fingerprint if it includes every single ridge, line, and swirl. There is no reason to believe the Illinois legislature had WorkEasy's idiosyncratic definition of "fingerprint" in mind rather than the term's plain and ordinary meaning, and, as WorkEasy's witnesses have admitted in multiple depositions, its devices scan "fingerprints," as the term is used in common and industry language.

With that issue out of the way, the remaining summary-judgment issues are easily resolved. WorkEasy admits that it has no evidence of obtaining the written release necessary to avoid BIPA Section 15(b) liability. While WorkEasy says it didn't violate Subsection (d)'s prohibition on disclosing or disseminating the Subclass's biometrics, it transmitted the Subclass members' templates to servers owned by a third party, without encryption, in a format that would allow the templates to be used with similar biometric devices. That fits the plain meaning of both "disclose" and "disseminate." And WorkEasy violated Section 15(e)'s security requirements by failing to encrypt the template database, while using encrypted storage for its own emails and business files.

For the final nail in the coffin, each of WorkEasy's sixteen affirmative defenses is fatally flawed. Some aren't affirmative defenses at all, some aren't available for BIPA claims, some are unsupported or contradicted by the evidence, and some have more than one of those problems. In any event, there is no basis for any reasonable juror to find in WorkEasy's favor on any of them.

As a result, Plaintiff asks the Court to grant partial summary judgment and find WorkEasy liable to the Class under BIPA Section 15(b), and to the Subclass under Sections 15(d) and (e).

## 2. STATEMENT OF FACTS

### 2.1. WorkEasy's Biometric Devices

During the Class period, [1] WorkEasy sold timekeeping and enrollment devices to customers in Illinois. Plaintiff's Local Rule 56.1 Statement of Facts ("SOF") SOF ¶ 1.[2] The relevant enrollment devices are known as the EC10, EC20, Xenio10, and Xenio20 (the "Enrollment Devices"), and the relevant timekeeping devices are known as the EC200, EC500, EC700, Xenio10, Xenio20, Xenio200, Xenio500, Xenio700, TL200, TL250, TL500 (the "Timeclocks";

---

[1]    June 24, 2016 to August 15, 2023. *See* ECF No. 167 at 17.
[2]    WorkEasy is a private entity, and was previously known as EasyWorkforce Software, LLC; Easyworkforce Software, Inc.; and SekureID Corp. SOF ¶¶ 2, 3. WorkEasy also sold equipment under the TimeLogix brand. *Id.* ¶ 4.

collectively, the Timeclocks and Enrollment Devices are referred to herein as the "Biometric Devices"). *See* ECF Nos. 139, 167; SOF ¶¶ 5, 6. Enrollment Devices were used to enroll Class members in timekeeping systems, while the Timeclocks could be used to enroll Class members in timekeeping systems and to clock those workers in and out. SOF ¶¶ 5, 6.

The Biometric Devices all worked in substantially the same way. *Id.* ¶ 7. Before a Class member could use a Timeclock, they had to enroll, either with a Timeclock or an Enrollment Device, and the process was substantially the same either way. *Id.* ¶¶ 9, 10. Each time a Class member enrolled, someone with administrative privileges had to access the enrollment feature of the Biometric Device. *Id.* ¶ 11. Then the administrator selected the Class member they wished to enroll from a list. *Id.* ¶ 12. Next, the system prompted the administrator to select "Fingerprints," "Cards," or "Pins" as the method of identity verification. *Id.* ¶ 13. After selecting fingerprints, each administrator was prompted to select which fingerprint to enroll. SOF ¶ 14. The Class member had to scan those fingerprints at least three times on the Biometric Device's scanning surface. *Id.* ¶ 15.

When the Class member scanned their fingerprints during the enrollment process, WorkEasy's Biometric Devices, including their associated software, captured images of the fingerprints. *Id.* ¶ 16. After the Biometric Device "g[o]t an image of [the] finger," the algorithm created a "mathematical representation of the minutiae points of [the] individual[']s fingerprint," *id.* ¶ 17 (quoting Ex. 8,[3] UNITEDTAPE_0058), known as a "template." SOF ¶ 18.

The templates were generated using an algorithm provided by a company called Innovatrics. *Id.* ¶ 19. The Innovatrics algorithm is certified under the Minutiae Interoperability Exchange (MINEX) III standard. SOF ¶ 20. Because the Innovatrics algorithm is MINEX III

---

[3] Unless otherwise specified, all citations to exhibits refer to the exhibits to the declaration of J. Dominick Larry, filed contemporaneously herewith.

certified, templates generated by the Innovatrics algorithm are interoperable (*i.e.* compatible) with systems using other MINEX III-certified algorithms, and vice versa. *Id.* ¶ 21.

WorkEasy's Biometric Devices stored templates in one of two ways: either "on premises" (meaning on servers maintained by the customer), or in a database on servers provided by WorkEasy. SOF ¶¶ 22–24. Most of WorkEasy's customers opted for cloud-based storage, and for those customers, WorkEasy's Biometric Device software caused the templates to be stored in a database maintained by WorkEasy. *Id.* ¶¶ 24, 25.

Once each Class member enrolled with a Biometric Device and had a template created and stored in WorkEasy's database, the Class member could "simply place[] an enrolled finger on the fingerprint scanner to clock in/out." SOF ¶ 26 (quoting Ex. 6, EAS000572, at -572). When a Class member scanned their fingerprint on a Timeclock, the Timeclock and its associated software would create a template from the scan of the fingerprint. SOF ¶ 27. WorkEasy's software would then compare the new template to the stored template database to identify the Class member. *Id.* WorkEasy used the templates to identify the Class members using its timekeeping systems, *id.* ¶ 29, such that if the two templates matched sufficiently, then the clock in/out attempt was successful. *Id.* ¶ 28. Thus, each time a Class member successfully used a Biometric Device, their fingerprint was "captured and processed" by the Biometric Device and accompanying software. *Id.* ¶ 30 (quoting Ex. 2, WorkEasy Rule 30(b)(6) Dep. Tr. at 210:6–211:2.).[4]

During the Class period, WorkEasy never communicated with the Class members, SOF ¶¶ 33–35, nor did it obtain a written release authorizing its capture, collection, obtainment, or use of any Class member's template. *Id.* ¶¶ 38, 39.

---

[4]     WorkEasy and its employees routinely refer to the Biometric Devices as scanning, reading, or otherwise interacting with fingerprints, and the templates as "fingerprint templates" or as being based on or representations of fingerprints. *See* SOF ¶¶ 31, 32.

### 2.2.    WorkEasy's storage and disclosure of templates

WorkEasy's template database resided on servers WorkEasy leased from a company called Vault Networks, Inc. SOF ¶ 40. Throughout the Subclass period,[5] WorkEasy didn't encrypt the template database, even though template-database encryption is a basic security measure within the biometric industry. *Id.* ¶¶ 41–43. WorkEasy didn't obtain consent from any Subclass member or their authorized representative to the storage of the Subclass member's template on Vault's servers without encryption. *Id.* ¶¶ 44, 45. Nor has WorkEasy identified any other legal authorization to transmit Subclass members' templates to Vault. *Id.* ¶¶ 46–50.

To obtain an industry-standard security certification known as SOC 2 certification, WorkEasy encrypted the template database after the Subclass period closed. SOF ¶¶ 51–53. During the Subclass period, WorkEasy used Google's Gmail business email service and its Drive file-storage system for its own files, both of which were encrypted. *Id.* ¶¶ 55, 56.

### 2.3.    Plaintiff's use of the TL250 Timeclock

United Tape & Finishing Co., Inc. purchased a TL250 Smart Fingerprint Terminal from WorkEasy. *Id.* ¶ 58. From January 7, 2021 to January 19, 2021, Plaintiff clocked in and out of work at United Tape using the TL250 Smart Fingerprint Terminal sold by WorkEasy. *Id.* ¶ 59.

### 3.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). And a factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

---

[5]    June 24, 2016 to April 30, 2022. *See* ECF No. 167 at 17.

at 248. In evaluating whether a factual dispute is genuine, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014).

## 4. ARGUMENT

Plaintiff seeks summary judgment on liability on all three of her claims: that WorkEasy captured, collected, or otherwise obtained her and the Class members' biometric information in violation of 740 ILCS 14/15(b); that WorkEasy disclosed or otherwise disseminated her and the Subclass members' biometric information in violation of 740 ILCS 14/15(d); and that WorkEasy unlawfully retained her and the Subclass members' biometric information with inadequate security measures in violation of 740 ILCS 14/15(e). The undisputed evidence shows that no material issue of fact exists as to any element of any of those claims or WorkEasy's affirmative defenses. As a result, summary judgment on liability is appropriate on all counts.

### 4.1. There is no genuine issue of material fact on the Class's Section 15(b) claims.

BIPA bars any private entity from capturing, collecting, or otherwise obtaining any biometric identifier or biometric information unless it first:

> (1)  Informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

> (2)  Informs the subject or subject's legally authorized representative of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and*

> (3)  Receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b) (emphasis added). Here, the undisputed evidence supports only one reasonable conclusion: that WorkEasy violated Section 15(b).

6

### 4.1.1. WorkEasy admits it is a private entity.

BIPA only regulates private entities. 740 ILCS 14/15(b), (d), (e). WorkEasy admits that it is a private entity within BIPA's meaning. SOF ¶ 2.

### 4.1.2. WorkEasy captured, collected, or otherwise obtained the Class members' biometric information.

WorkEasy is only liable under Section 15(b) if it captured, collected, or otherwise obtained the Class members' biometric information. 740 ILCS 14/15(b). The evidence shows that WorkEasy did so, by storing the Class members' templates in its database.

### 4.1.2.1. The templates generated by WorkEasy's timeclocks are biometric information.

BIPA only regulates biometric identifiers and biometric information. "'Biometric identifier' means a retina or iris scan, *fingerprint*, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10 (emphasis added). "[B]iometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. The statute doesn't define "fingerprint," so the term is "presumed to have [its] ordinary or natural meaning." *Chicago Truck Drivers v. Leaseway Transp. Corp.*, 76 F.3d 824, 828 (7th Cir. 1996). Here, any reasonable juror would have to find that WorkEasy's timeclocks scanned fingerprints, generated templates from the fingerprint scans, and used the templates to identify workers. As a result, the templates are biometric information.

WorkEasy's internal and external documents are replete with descriptions of the Biometric Devices as fingerprint scanners. For example, in its marketing materials for the Biometric Devices, WorkEasy repeatedly and exhaustively refers to them as "fingerprint timeclocks." *See* SOF ¶¶ 31, 32; (collecting examples). Likewise, the timeclock guides and manuals for WorkEasy's customers describe fingerprint-scanning and fingerprint-enrollment processes. *See id.*; *see also, e.g.*, Ex. 6,

7

EAS000572 ("How to Clock In/Out with Fingerprints on a Time Clock"); Ex. 7, EAS000604 ("How to Enroll Fingerprints with a Time Clock").

Unsurprisingly, WorkEasy's employees referred to the timeclocks as scanning fingerprints. *See* SOF ¶¶ 31, 32 (collecting examples). They did this when communicating with current and potential customers. *See, e.g.*, Ex. 39, EWF_000000323 ("███████████████████████ ███████), Ex. 40, EWF_000001705 (███████████████████████████ ███████████████), Ex. 42, EWF_000004058 ████████████████████ ██████████████████████████████████). And they did it their depositions. *See, e.g.*, Ex. 5, Jos Dep. Tr., at 57:4–6 ("[W]e were not saving the fingerprint, and we were only collecting the numerical representation of that"); Ex. 14, Sanchez Tellez Dep. Tr. at 69:11–20; Ex. 2, WorkEasy Rule 30(b)(6) Dep. Tr., at 208:6–13. The reason for the repeated references to fingerprints is simple: as WorkEasy's CEO admitted, "fingerprint" is "the common vocabulary, and that's what is understood." Ex. 5, at 90:1–25; *id.* at 80:21–24 ("That's the industry term."); Ex. 2, at 208:3–13 ("[I]t's a common lingo.").[6]

The record is similarly clear that templates were derived from fingerprints and therefore "identification or the authentication of the employee is based on the fingerprint." Ex. 14, at 69:14–16; *see also* SOF ¶ 32. For example, a client update circulated by WorkEasy describes the template as "a mathematical representation of the minutiae points of [the] individual['s] fingerprint …," Ex. 8, UNITEDTAPE_0058, and WorkEasy's interrogatory answers confirm that "a fingerprint image is taken for purposes of translating it into a digital template," which "is used for matching with the employee." Ex. 1, WorkEasy 2d Supp Ans. to Pltf's 1st Set of Interrogatories, Ans. No. 6.

---

[6] Even WorkEasy's counsel used this phrasing, when asking about WorkEasy's recently rolled out consent interface. *See* Ex. 5, at 85:15–18 ("Q. [N]o new enrollee can enroll their fingerprint unless they agree to that written prompt. Correct? A. Correct …").

WorkEasy can't dispute that the templates were used to identify, or that they were derived from scan data. Instead, WorkEasy argues that the timeclocks only scanned a portion of the finger, not the entire fingerprint. *See, e.g.*, ECF No. 145 at 7. According to WorkEasy, this means that the templates aren't derived from fingerprints, meaning they aren't derived from biometric identifiers, and aren't biometric information. WorkEasy's argument is far off base, for two reasons.

First, as noted above, WorkEasy's own documents, discovery responses, and testimony, admit that the clocks scanned fingerprints. *See, e.g.*, SOF ¶¶ 13, 17, 26, 27, 31, 32

Second, WorkEasy's "interpretation of BIPA's language is overly narrow." *Howe v. Speedway LLC*, No. 19-cv-1374, 2024 WL 4346631, at *7 (N.D. Ill. Sept. 29, 2024). As Judge Chang recently found while rejecting a nearly identical argument, "[t]he term 'fingerprint' as commonly understood does not contain some intrinsic requirement that it can only mean an 'entire' or 'complete' fingerprint, presumably … every single ridge and furrow on the surface of a finger." *Id.* To assess the plain and ordinary meaning, Judge Chang turned to dictionary definitions of "fingerprint," noting that even the defendant's "own dictionary sources defining the term include no such 'completeness' qualification and define a 'fingerprint' as simply 'an impression of the ridges of the fingertip, unique to each human being and used as a means of identification' and 'the distinctive pattern of lines on a human fingertip; no two fingerprints are identical.'" *Howe*, 2024 WL 4346631, at *7 (collecting authorities); *see also Fingerprint*, Merriam-Webster, https://www.merriam-webster.com/dictionary/fingerprint (last accessed Feb. 14, 2025). Judge Chang went on to hold that "[t]he term fingerprint refers to the ridges of the finger (or a portion of the distinctive pattern lines on a finger), as long as that portion of the finger's ridges or pattern is sufficient to be unique to a particular individual and is capable of being used to identify a particular person." *Howe*, 2024 WL 4346631, at *7.

Here, WorkEasy's "fingerprint sensor[s]" "get an image of [the] finger, and … determine whether the pattern of ridges and valleys in this image matches the pattern of ridges and valleys in pre-scanned images," using "specific characteristics, which are unique to every fingerprint" to create a "biometric key." SOF ¶ 17 (quoting Ex. 8). That "biometric key" is capable of being used to, and is in fact used to, identify the users of WorkEasy's timeclocks. Ex. 1, Ans. No. 6; SOF ¶ 29. Thus, WorkEasy's timeclocks scan fingerprints, within the ordinary meaning of that term, *see Howe*, 2024 WL 4346631, at *7, as WorkEasy's own documents already made clear. *See, e.g.* SOF ¶¶ 31, 32; *see also* Ex. 10, Pltf's Expert Disclosure for Class Certification, Rpt. at 9–15 (concluding that the devices scan "fingerprints," as term is understood within biometrics industry).

Because the undisputed record shows that the templates generated by WorkEasy's devices are based on fingerprints and used to identify the Class members, a reasonable jury could only conclude that they constitute "biometric information" as defined by 740 ILCS 14/10.

### 4.1.2.2.    WorkEasy captured, collected, or otherwise obtained the templates.

The Class's Section 15(b) claims require a showing that WorkEasy captured, collected, or otherwise obtained the templates. *See* 740 ILCS 14/15(b). Here, the undisputed evidence compels the conclusion that WorkEasy did so.

As with "fingerprint," BIPA doesn't define capture, collect, or obtain, so the ordinary meanings apply. *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1205 (Ill. 2019); *Barnett v. Apple Inc.*, 225 N.E.3d 602, 609 (Ill. App. Ct. 2022).[7] As to "capture," one of the dictionary definitions, "'to record in a permanent file (as in a computer)' clearly applies" to BIPA. *Mosby v.*

---

[7]    Absent "prevailing authority from the state's highest court," a federal court sitting in diversity "ought to give great weight to the holdings of the state's intermediate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) (collecting cases).

*Ingalls Mem'l Hosp.*, 207 N.E.3d 1157, 1168 (Ill. App. Ct. 2022), *rev'd on other grounds*, 234 N.E.3d 110 (Ill. 2023) (quoting *Capture*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/capture)). "Collect" means "'to bring together into one body and place,' 'to gather or extract from a number of persons or sources,' and 'to gather an accumulation of.'" *Barnett*, 225 N.E.3d at 611 (quoting *Mosby*, 207 N.E.3d at 1168). And "otherwise obtain" operates as a catch-all, for any other method by which an entity could come into possession of biometric data. *See Otherwise*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/otherwise (last accessed Feb. 14, 2025) ("in a different way or manner"); *Otherwise*, Black's Law Dictionary (12th ed. 2024) ("The term *otherwise* tends to be quite broad in scope."); *Obtain*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/obtain (last accessed Feb. 14, 2025) ("to gain or attain usually by planned action or effort"); *Obtain*, Black's Law Dictionary (12th ed. 2024) ("To bring into one's own possession; to procure, esp. through effort").

Here, the undisputed evidence shows that WorkEasy captured, collected, or obtained the Class members' biometric information in the form of their fingerprint templates. To start, WorkEasy stored the templates in its database. SOF ¶ 40. The templates didn't end up there by chance, or without WorkEasy's knowledge; rather, WorkEasy's software was programmed to send the templates to WorkEasy's cloud database. SOF ¶ 25. And WorkEasy then used those templates to identify Class members as they used the Biometric Devices. SOF ¶¶ 26–29.

WorkEasy, therefore, "recorde[d]" the templates "in a permanent file," *Mosby*, 207 N.E.3d at 1168, on the servers, which housed "an accumulation of" the templates. *Barnett*, 225 N.E.3d at 611. Because WorkEasy stored Plaintiff's and the Class members' templates on the servers it operated, a juror could only reasonably conclude that it captured, collected, or otherwise obtained

them. *See Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 783–84 (N.D. Ill. 2020) (plaintiff alleged that defendant "'stored,' 'used,' and 'disclosed' Plaintiffs' biometric data … and to have done those things [the defendant] necessarily first had to 'obtain' the data."); *Howe*, 2024 WL 4346631, at *9 (finding collection where defendant "plainly retains and controls Templates for employees, both the initial Template used to enroll employees on timeclocks, and Templates created each time an employee clocks in and out."); *Cf. Barnett*, 225 N.E.3d at 612–13 (finding obtainment lacking where "the user's biometric information is stored on the user's own device and the defendant "does not collect or store this information on a separate server or device").

### 4.1.3. WorkEasy did not obtain consent to the capture, collection, or other obtainment of their biometric information.

Under Section 15(b), WorkEasy is liable for collecting, capturing, or obtaining the Class's templates unless establishes that it informed the Class members or their legally authorized representatives in writing that their biometric information was being collected or stored *and* informed them of the length of and purpose for which the biometric information is being stored, *and* received a written release as defined by Section 10. *See* 740 ILCS 14/15(b).[8]

Here, WorkEasy admits there is no evidence it obtained a written release as defined by Section 10 from any Class member or their authorized representative. SOF ¶¶ 38, 39. This is

---

[8]     BIPA doesn't explicitly assign the burden of proof regarding compliance with Section 15(b)'s informed, written release requirements. *See* 740 ILCS 14/15(b). However, "[g]enerally, the burden of proof rests on a party asserting the affirmative of an issue … The usual test to determine which side has the burden of proof is to ascertain which party would be entitled to a verdict if no evidence were offered." *Vill. of Park Forest v. Angel*, 347 N.E.2d 278, 284 (Ill. App. Ct. 1976) (citations omitted); *see also Auburndale State Bank v. Dairy Farm Leasing Corp.*, 890 F.2d 888, 893 (7th Cir. 1989). Here, WorkEasy is "asserting the affirmative" of consent, and if there were evidence of biometric information collection (as there is), and there were no evidence of an informed, written release, WorkEasy would be liable. *See* 740 ILCS 14/15(b). As a result, WorkEasy bears the burden of proof on compliance with Section 15(b)(1)–(3). That said, even if the burden were on Plaintiff, the undisputed evidence shows that WorkEasy did not obtain the requisite informed, written release from Class members.

unsurprising, given that WorkEasy also admits that it never communicated with any Class member, *id.* ¶ 33, and that it lacked any defined retention period for the templates, *id.* ¶¶ 36, 37, meaning it could not inform Class members in writing of the "specific … length of term for which" their "biometric information [was] being collected, stored, and used." 740 ILCS 14/15(b)(2).

Because WorkEasy has provided no evidence that it obtained the consent required by BIPA Section 15(b), and in fact admits that it did not obtain such consent, a reasonable juror could only conclude that WorkEasy violated BIPA Section 15(b).

### 4.2. WorkEasy violated Section 15(d) by disclosing or otherwise disseminating Subclass members' biometric information without the requisite authorization.

BIPA Section 15(d) prohibits any private entity possessing biometric information from disclosing the information unless (1) the subject or their authorized representative consents, (2) the disclosure *completes* a financial transaction requested or authorized by the subject or their authorized representative, (3) the disclosure is required by law, or (4) the disclosure is required by a warrant or subpoena. 740 ILCS 14/15(d). Here, the evidence shows that WorkEasy disclosed or disseminated the Subclass members' fingerprint templates to Vault Networks, and there is no evidence of any Subclass member or their representative authorizing the disclosure, or of any legal requirement for the disclosures. Accordingly, summary judgment is appropriate in the Subclass's favor on their Section 15(d) claims.

#### 4.2.1. WorkEasy possessed Subclass members' biometric information.

BIPA Section 15(d) applies to private entities in possession of biometric information. 740 ILCS 14/15(d). WorkEasy is a private entity, SOF ¶ 1, and it possessed the Subclass members' biometric information (in the form of their fingerprint templates, *see* Section 4.1.2.1, *supra*).

BIPA doesn't define "in possession of," as used in Section 15. *See* 740 ILCS 14/10, 15. "[P]ossession" has been defined in the BIPA context as "to have control." *Barnett*, 225 N.E.3d at

609; *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21-cv-866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) ("[P]possession occurs when someone 'exercis[es] any form of control over the data.'") (quoting *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020)).

Here, the undisputed evidence shows that WorkEasy controlled, and thereby possessed, the Subclass members' templates. To start, WorkEasy used its timekeeping software to collect the templates from the Biometric Devices and store them on servers operated by WorkEasy. *See* SOF ¶¶ 25, 40. When the templates were stored on the servers, WorkEasy used them to identify class members. *See* SOF ¶¶ 25–29. And beyond that, WorkEasy could access the templates, move them to backup servers, or delete them (though it never did so), SOF ¶ 57, and "[l]ogically, one cannot destroy what one does not possess and control. Indeed, the *ability* to destroy is definitive evidence of control." *United States v. Tucker*, 150 F. Supp. 2d 1263, 1267 (D. Utah 2001), *aff'd*, 305 F.3d 1193 (10th Cir. 2002) (emphasis added). WorkEasy, therefore, possessed the Subclass members' biometric information. *See Howe*, 2024 WL 4346631, at *9 (finding possession where defendant "plainly retains and controls Templates for employees"); *Cf. Barnett*, 225 N.E.3d at 612–13 (possession lacking where "the user's biometric information is stored on the user's own device and the defendant "does not collect or store this information on a separate server or device").

### 4.2.2. WorkEasy disclosed or otherwise disseminated Subclass members' biometric information to Vault Networks.

Section 15(d) imposes liability for disclosure or other dissemination of biometric information. 740 ILCS 14/15(d). BIPA doesn't define "disclose" or "otherwise disseminate," so the terms' ordinary meanings control. *See Rosenbach*, 129 N.E.3d at 1204. The ordinary meaning of disclose "means to 'expose to view,'" or "'to make known' or 'to reveal *** something that is secret or not generally known.'" *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 925–26 (Ill. 2023), *as modified on denial of reh'g* (July 18, 2023) (quoting Webster's Third New International

Dictionary 645 (1993)). "Moreover," because "section 15(d) has a catchall provision that broadly applies to any way that an entity may 'otherwise disseminate' a person's biometric data," "the plain language of section 15(d) applies to every transmission to a third party." *Id.*

WorkEasy transmitted the Subclass members' biometric information to Vault Networks. During the Subclass period, WorkEasy stored the templates on Vault's servers without any encryption, meaning that they were sent to Vault's servers in the same format in which they were used by WorkEasy, and in which they could be used by other MINEX III-certified biometric systems. SOF ¶¶ 21, 40, 41. Accordingly, WorkEasy disclosed and disseminated the Subclass members' biometric templates within the meaning of Section 15(d). *See Figueroa*, 454 F. Supp. 3d at 785 (finding allegation that timeclock vendor "disseminated Plaintiffs' biometric data to other firms that hosted the information in their data centers" was sufficient to state Section 15(d) claim).

### 4.2.3.  WorkEasy lacked authorization for its disclosures.

With disclosure established, WorkEasy can only avoid liability by invoking one of the statutory exceptions: user authorization or legal requirement. 740 ILCS 14/15(d)(1)–(4).[9]  The evidence shows that neither applies.

Section 15(d) allows for disclosure if "the subject of … the biometric information or the subject's legally authorized representative consents to the disclosure." 740 ILCS 14/15(d)(1). As with collection of the biometric information, WorkEasy's discovery responses show no such consent. *See* SOF ¶¶ 44, 45. Likewise, WorkEasy shared the Subclass's biometric identifiers with Vault Networks for purposes of storing them, SOF ¶ 40, not to "*complete[]* a financial transaction requested or authorized by" the Subclass members or their representatives. 740 ILCS 14/15(d)(2)

---

[9]     As with Section 15(b), BIPA doesn't assign the burden of proof for Section 15(d)'s disclosure exceptions. *See* 740 ILCS 14/15(d). Because WorkEasy is "asserting the affirmative" of the exceptions, burden is on WorkEasy. *See Vill. of Park Forest*, 347 N.E.2d at 284; *Auburndale State Bank*, 890 F.2d at 893.

(emphasis added). And WorkEasy has not identified any statute, regulation, ordinance, subpoena, or warrant that would have compelled it to disclose unencrypted biometric information to Vault Networks, *see* SOF ¶¶ 46–50. Indeed, after the Subclass period, WorkEasy ended the disclosures by encrypting the biometric information, undermining any argument that its transmission of unencrypted templates to Vault Networks was authorized or required. *See* SOF ¶ 51.

Because no exception permitted WorkEasy's disclosure of Subclass members' biometric information to Vault, summary judgment is appropriate on the Subclass's Section 15(d) claims.

### 4.3. WorkEasy violated Section 15(e) by failing to adequately secure the Subclass's biometric information.

BIPA guards against unauthorized access to biometric information in two ways. First, it requires private entities to secure biometrics in their possession[10] "using the reasonable standard of care within the private entity's industry." 740 ILCS 14/15(e)(1). Second, they must secure biometric information "in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." 740 ILCS 14/15(e)(2). The undisputed evidence shows that WorkEasy failed on both counts.

### 4.3.1. WorkEasy failed to secure the Subclass's biometric information using the reasonable standard of care.

Within the biometrics industry, established standards of care exist for biometric information. Those standards include encryption of databases containing biometric templates and obtainment of SOC 2 certification, SOF ¶¶ 43, 53, among others. *See also* Ex. 49, Pltf's Am. Merits Disclosure, at 6–8. WorkEasy fell short of that standard. Specifically, WorkEasy did not encrypt the template database until after the expiration of the Subclass period, when it did so to belatedly obtain SOC 2 certification. *See* SOF ¶¶ 41, 51, 52.

---

[10] As noted above, the undisputed evidence proves that WorkEasy is a private entity and that it possessed the Subclass members' biometric information. *See* Sections 4.1.1, 4.2.1, *supra*.

Because the undisputed evidence shows that WorkEasy lacked industry-standard biometric-security measures like SOC 2 compliance and template-database encryption, summary judgment is appropriate in the Subclass's favor on their BIPA Section 15(e) claims.

### 4.3.2. WorkEasy gave other types of sensitive information greater protection than the Subclass's biometric information.

Even if the industry standard aligned with WorkEasy's security methods, WorkEasy would still be liable under Section 15(e) because it gave its own sensitive information greater protections than the Subclass members' biometric information. *See* 740 ILCS 14/15(e)(2). During the Subclass period, WorkEasy used Google's Gmail email service and Drive file-storage service. *See* SOF ¶ 55. During that time, Gmail mailboxes and Drive files were encrypted by Google. *Id.* ¶ 56. By contrast, WorkEasy didn't encrypt the fingerprint template database until after the Subclass period. *Id.* ¶ 41.

Accordingly, because WorkEasy failed to "store … and protect from disclosure" the Subclass's "biometric information in a manner that is the same as or more protective than the manner in which" WorkEasy "store[d]" its own "and sensitive information," 740 ILCS 14/15(e)(2), the Subclass is further entitled to summary judgment on their Section 15(e) claims.

### 4.4. WorkEasy's Affirmative Defenses Fail.

In its answer to Plaintiff's amended complaint, ECF No. 133, WorkEasy pleads sixteen affirmative defenses. Most of those defenses fail as a legal matter, either because they aren't affirmative defenses at all or because they don't apply to BIPA claims. The remaining defenses, plus some of the legally defective defenses, additionally fail on the factual record. As a result, summary judgment is appropriate on each claim, over the affirmative defenses.

### 4.4.1. WorkEasy's first, second, third, eleventh, and fifteenth defenses are not affirmative defenses at all.

WorkEasy's first, second, third, eleventh, and fifteenth defenses dispute elements of the claims or the propriety of class certification. *See* ECF No. 133 at 24–26. "An affirmative defense,"

however, "admits the allegations in the complaint, but avoids liability, in whole or in part, by new allegations of excuse, justification or other negating matters … An attack on a plaintiff's *prima facie* claim is a 'negative defense,' rather than an affirmative defense, which must plead 'matter that is not within the claimant's prima facie case.'" *Riemer v. Chase Bank USA, N.A.*, 274 F.R.D. 637, 639 (N.D. Ill. 2011) (quoting 2A Moore's Federal Practice ¶ 8.27[1] (2d Ed. 1992)).

Here, WorkEasy's first three defenses offer no new allegation, and instead only contest the elements of Plaintiff's claims. *See* ECF No. 133 at 24, ¶¶ 1–3. Further, each defense—that WorkEasy didn't collect, use, possess, or store biometric data (first defense); that WorkEasy didn't obtain any biometric information (second defense); or that WorkEasy didn't disclose biometric information (third defense)—fails on the facts. *See* Sections 4.1, 4.2, *supra*.

WorkEasy's eleventh defense asserts that Plaintiff fails to state a claim upon which relief may be granted, but that "is not technically an affirmative defense, and the proper vehicle to establish a failure to state a claim defense is to raise a Rule 12(b)(6) motion." *Raquet v. Allstate Corp.*, 348 F. Supp. 3d 775, 786 (N.D. Ill. 2018). And, in any event, the defense in incorrect; the undisputed evidence establishes each element of Plaintiff's claims. *See* Sections 4.1–4.3, *supra*.[11]

Finally, WorkEasy's fifteenth defense—challenging class certification—merely disputes an aspect of the claims. *See Riemer*, 274 F.R.D. at 639. That defense has also been twice rejected by this Court, without relief from the Seventh Circuit. *See* ECF Nos. 167, 187, 202.

### 4.4.2. WorkEasy's fourth affirmative defense fails because Plaintiff, the Class, and the Subclass all have standing.

WorkEasy's fourth affirmative defense is that the Class members lack standing. ECF No. 133 at 24, ¶ 4. WorkEasy doesn't specify whether it pleads lack of statutory standing or lack of

---

[11]     WorkEasy has identified no documents supporting its eleventh affirmative defense. *See* Ex. 55, WorkEasy Resp. to Pltf's 8th RFPs, Resp. No. 92.

constitutional standing, but either way the defense fails.[12]

As to statutory standing, "when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach," and "[t]he violation, in itself, is sufficient to support the individual's or consumer's statutory cause of action." *Rosenbach*, 129 N.E.3d at 1206.

WorkEasy's defense is baseless as to Article III standing as well. Violations of Sections 15(b) and 15(d) confer constitutional standing. *See Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020) (Section 15(b)); *Cothron v. White Castle Sys., Inc.*, 20 F. 4th 1156, 1161 (7th Cir. 2021) (Section 15(d)), *certified question answered*, 2023 IL 128004, 216 N.E.3d 918, *as modified on denial of reh'g* (July 18, 2023). And while the Seventh Circuit hasn't addressed standing for Section 15(e) claims, "[t]he analysis provided" by the Seventh Circuit in *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1152 (7th Cir. 2020), "suggests that Plaintiff's alleged injuries from section 15(e) violations satisfy Article III's injury-in-fact requirement." *Roberson v. Maestro Consulting Services LLC*, 507 F. Supp. 3d 998, 1010 (S.D. Ill. 2020). "In *Fox*, the Court … concluded 'an unlawful *retention* of a person's biometric data is as concrete and particularized an injury as unlawful *collection* of a person's biometric data.'" *Id.* (quoting *Fox*, 980 F.3d at 1155). "[S]ection 15(e) forms a piece of the *retention* regime," and as a result, "the concrete injury suffered by Plaintiff[] was the unlawful *retention* of their biometric data by Defendant[] because Defendant[] allegedly failed to *comply* with the standard of care" dictated by Section 15(e). *Roberson*, 507 F. Supp. 3d at 1010.

---

[12]     WorkEasy has no documents supporting its standing defense. *See* Ex. 55, Resp. No. 83.

The Class and Subclass members therefore have both constitutional and statutory standing, and WorkEasy's fourth affirmative defense fails.

### 4.4.3. WorkEasy's common-law defenses do not apply to BIPA claims and lack evidentiary support in any event.

WorkEasy asserts a series of common-law defenses to Plaintiff's BIPA claims. *See* ECF No. 133 at 24–25, ¶¶ 5, 7–10, 12–14. As the Court noted previously, WorkEasy has failed to show that its common-law defenses are "viable in a suit under the BIPA," while Plaintiff has "cite[d] cases that suggest the BIPA abrogates such common-law defenses." ECF No. 167 at 16 n.4.

Illinois law is clear that "statutes in derogation of common law will not be found to abrogate common-law affirmative defenses, *unless* it plainly appears that the intent of the statute is to impose strict liability ...." *Olle v. C House Corp.*, 967 N.E.2d 886, 890 (Ill. App. Ct. 2012) (citing *Barthel v. Ill. Central Gulf R.R. Co.*, 384 N.E.2d 323 (Ill. 1978)). And the decisions are uniform that "BIPA imposes strict liability (though the defendant's intent may impact recovery)," *Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 773 (C.D. Ill. 2020); *Vaughan v. Biomat USA, Inc.*, No. 20-cv-4241, 2022 WL 4329094, at *12 (N.D. Ill. Sept. 19, 2022) ("BIPA Sections 15(a) and (b) impose strict liability; an alleged violator's state of mind is not an element of either claim."); *Brandenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 634 (C.D. Ill. 2021) (collecting cases); *Brandenberg v. Meridian Senior Living, LLC*, No. 20-cv-03198, 2023 WL 5671275, at *3 (C.D. Ill. Sept. 1, 2023) (declining reconsideration).

Because BIPA applies strict liability, WorkEasy's common-law defenses are unavailable. "[A]llowing a defendant to evade liability under the BIPA" by showing that the Class members used the timeclocks repeatedly at work (5th, 7th, 13th, 14th Aff. Defs.), WorkEasy misunderstood

or substantially complied with the statute (8th, 9th Aff. Defs.),[13] or the Class members suffered no actual damages (10th, 12th Aff. Defs.), "would be inconsistent with the BIPA's requirement that an entity provide written notice that it is collecting biometric information, its purpose for doing so, and the length of such collection and obtain a *written* release from the person whose information it is collecting." *Snider*, 479 F. Supp. 3d at 772 (emphasis added); *Olle*, 967 N.E.2d at 890.

Even if WorkEasy's common-law defenses were available, they lack evidentiary support. WorkEasy's fifth and seventh defenses (implicit or express consent; and estoppel, waiver, ratification, and acquiescence) would require at least a showing that the Class members understood that the Biometric Devices were capturing their biometrics and the risks of the same,[14] but the record contains no evidence to that effect. *See* SOF ¶¶ 33–39. WorkEasy's eighth affirmative defense—"good faith, and the absence of negligent, intentional or reckless conduct," ECF No. 133 at 25, ¶ 8—is contradicted by the evidence, which shows that ███████████████████ ████████████████████████████████████████████████. *See* SOF ¶¶ 60–62.

WorkEasy's ninth affirmative defense (substantial compliance) is entirely without support. As noted above, *see* Sections 4.1–4.3, *supra*, WorkEasy violated Section 15(b)'s consent requirement, Section 15(d)'s prohibition on disclosure, and Section 15(e)'s security requirement. In fact, there is no evidence that WorkEasy complied with *any* of BIPA's subparts.[15]

For WorkEasy's thirteenth defense—"comparative fault, lack of causation, and failure to mitigate, and avoidance of consequences," ECF No. 133 at 24, ¶ 13—WorkEasy's only supporting

---

[13]    WorkEasy has identified no documents supporting its eighth and ninth affirmative defenses. *See* Ex. 55, Resp. Nos. 89, 90.

[14]    *See People v. Ford*, 43 N.E.3d 193, 198 (Ill. App. Ct. 2015) ("[T]he consent given must be to the particular conduct or substantially similar conduct.").

[15]    WorkEasy's tenth and twelfth defenses assert a lack of damage, but the law is clear that no such damages are required to maintain BIPA claims. *See Rosenbach*, 129 N.E.3d 1197.

evidence is a series of spreadsheets it has produced showing the number of employees and scans for WorkEasy's Illinois customers. *See* Ex. 55, Resp. Nos. 84, 94; Ex. 51, EAS001371; Ex. 56, EAS001075; Ex. 57, EAS001431; Ex. 58, EAS001453. Those documents contain no information showing how any Class member was at fault, how anyone other than WorkEasy caused the Class members' harm, or how Class members could have mitigated or avoided the consequences of WorkEasy's conduct. *Id.* In fact, were WorkEasy's evidence sufficient for those defenses, any BIPA claim would be self-defeating, as the evidence of the violation would be proof of the affirmative defense, rendering BIPA meaningless. *See Snider*, 479 F. Supp. 3d at 772.

WorkEasy's fourteenth defense asserts an "intervening and superseding cause." ECF No. 133 at 25 ¶ 13. Presumably, this defense refers to WorkEasy's customers' use of the timeclocks. But that defense ignores a crucial fact: even after WorkEasy's customers set up the timeclocks used by the Class members, it was *WorkEasy'*s software that transmitted the templates to WorkEasy's database, where *WorkEasy* exercised possession over them. *See* SOF ¶¶ 25, 57.

### 4.4.4. WorkEasy's sixth affirmative defense has no bearing on Plaintiff's or the Class's claims.

WorkEasy's sixth affirmative defense asserts that the Class members' claims are barred "because Defendant did not require Plaintiff and the putative class members, as a condition of employment, to use the alleged biometric device." ECF No. 133 at 24, ¶ 6. This defense wholly misunderstands BIPA's framework, which provides that the written release to the obtainment of biometric information may be "executed by an employee as a condition of employment." 740 ILCS 14/10. That language does mean that the law *only* applies to defendants who could require an individual to execute the release as a condition of employment, and the definition of "written release" specifically contemplates other methods of execution. *Id.*

### 4.4.5. WorkEasy's sixteenth affirmative defense cannot prevent liability or be considered prior to the imposition of a damages award.

Finally, WorkEasy pleads that the damages sought are unconstitutionally excessive. ECF No. 133 at 26, ¶ 16. As this Court has recognized, however, the appropriate time to address the constitutionality of a damages award is after it has been entered, and the defense does not provide a defense to *liability* in any event. *See, e.g.*, *Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1042 n.1 (N.D. Ill. 2023); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014) (citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953–54 (7th Cir. 2006)).[16]

## 5.    CONCLUSION

The undisputed evidence shows that Plaintiff has established each element of his claims under BIPA Sections 15(b), 15(d), and 15(e), and that none of WorkEasy's affirmative defenses can prevent a finding of liability. Accordingly, Plaintiff and the Class are entitled to summary judgment as to liability on their BIPA Section 15(b) claims, while Plaintiff and the Subclass are entitled to summary judgment as to liability on their Section 15(d) and 15(e) claims.

Dated: February 14, 2025                                  Respectfully submitted,

                                                                      **MARIA TAPIA-RENDON,** individually
                                                                      and on behalf of all others similarly situated,

                                                                      s/ J. Dominick Larry
                                                                      Class Counsel

Thomas R. Kayes
LOEVY + LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
312.243.5900
kayes@loevy.com

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.

---

[16]    WorkEasy has identified no documents supporting its sixteenth defense. *See* Ex. 55, Resp. No. 97.

Chicago, IL 60622
773.694.4669
nick@nicklarry.law

*Class Counsel*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on February 14, 2025, I served the foregoing by electronic mail and through the Court's CM/ECF electronic-filing system upon those listed below:

James K. Borcia
TRESSLER LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606
dproctor@tresslerllp.com
jborcia@tresslerllp.com
Counsel for United Tape & Finishing Co.

Mark A. Olthoff
POLSINELLI PC
900 W. 48th Pl., Suite 900
Kansas City, Missouri 64112
molthoff@polsinelli.com
Counsel for WorkEasy Software, LLC

Thomas M. Wolf
Josh M. Kantrow
Cameron T. Liljestrand
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 W. Adams St, Suite 300
Chicago, IL 60661
thomas.wolf@lewisbrisbois.com
josh.kantrow@lewisbrisbois.com
cameron.liljestrand@lewisbrisbois.com
Counsel for WorkEasy Software, LLC

Dated: February 14, 2025                    s/ J. Dominick Larry
                                                  Class Counsel

1