IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA TAPIA-RENDON, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>UNITED TAPE & FINISHING CO., INC. and WORKEASY SOFTWARE, LLC,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)      Case No. 21 C 3400<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The matter before the Court involves a crossclaim filed by United Tape & Finishing Co., Inc. (United Tape) against WorkEasy Software, LLC (formerly EasyWorkforce Software, LLC) (herein EWF). United Tape purchased timeclocks from EWF that allowed its employees to clock in and out of work by scanning their fingertips on EWF's timeclock devices. These devices became the subject of a class action lawsuit after Maria Tapia-Rendon sued EWF, United Tape, and Employer Solutions Staffing Group II, LLC on behalf of a putative class, alleging violations of the Illinois Biometric Information Privacy Act (BIPA). *See* 740 Ill. Comp. Stat. 14/20. United Tape ultimately settled those claims with the plaintiffs for $50,000.

In the course of the litigation, United Tape filed a crossclaim against EWF, seeking indemnification for any liabilities, costs, and attorney's fees it incurred in connection with the claims of the plaintiff class. United Tape contends that EWF was

not forthcoming about its timekeeping devices, largely because it did not disclose that the use and operation of the devices was subject to, and ran afoul of, BIPA.

United Tape asserted five claims against EWF. It contends that EWF fraudulently or negligently misrepresented to United Tape that its devices did not store biometric identifiers and biometric information within the meaning of BIPA (counts 1 and 2); United Tape is entitled to contribution from EWF under the Illinois Joint Tortfeasor Contribution Act, 740 Ill. Comp. Stat. 100/2 (count 3); it is entitled to equitable and implied indemnity from EWF (count 4); and EWF breached a contractual agreement with United Tape (count 5).

EWF has moved for summary judgment on all of United Tape's claims.

## Background

Sometime around August 2020, United Tape met with EWF to inquire about purchasing a timeclock device. EWF sells timekeeping and enrollment devices to business customers across Illinois. These devices allow employees to clock in and out of work by scanning their fingertips on the devices.

### A.    United Tape's discussions with EWF

In deciding whether to purchase EWF's devices, Jennifer Dillane, a part owner of United Tape who performed human resources tasks for the company, met with Reggie Padin, a sales representative from EWF. Their communications began in August 2020. Dillane sought to determine whether EWF's electronic timekeeping system would align with United Tape's needs. The two spoke by phone and exchanged emails.

United Tape contends that it wanted to ensure that EWF's system would not store fingerprints from device users and that it was Service Organization Control (SOC)

2

compliant, an industry security certification involving protection of client data. United Tape contends that EWF represented that no "biometric data" would be stored and that the system was SOC compliant. United Tape further alleges that it would not have purchased the timeclocks had it known that the system stored biometric information and was not SOC compliant.

During Dillane's deposition, she testified that Padin said: "They indicated that it was -- that a person would put their fingerprint on the scanner and then a mathematical representation would be compiled and that no fingerprint was stored anywhere." EWF's Ex. A at 22:13-17; *see also id.* at 23:9-21. When asked if EWF told her anything else, she stated that "I don't recall that there was anything specific." *Id.* at 23:24-25. When Dillane was asked whether she ever specifically asked Padin whether the mathematical representation was the equivalent of biometric information and whether he ever told her that the mathematical representation was not biometric information, she responded "I don't recall" to both questions. *Id.* at 15:4-11. She also could not "remember specifically" whether Padin had used the words "biometric data" when explaining that the device did not store such data. *Id.* at 27:5-14. Dillane did recall that Padin had emailed her stating that "We are SOC complaint" in answer to her question about that point. *Id.* at 73:16-17; *see* EWF's Ex. B.

Dillane also indicated that EWF did not provide any written information about the product aside from telling United Tape to explore the EWF website. *See* EWF's Ex. A at 24:14-18. When she checked the website, Dillane said, she learned "[t]hat there was a mathematical representation of a fingerprint taken and that no biometric data was stored is the way that we understood it." *Id.* at 24:23-25 - 25:1-3.

3

When Dillane was asked whether she was aware of BIPA as of November 24, 2020, she said that she was not and that she did not learn about BIPA until United Tape was sued in this case in July 2021. *Id.* at 41:9-15.

In her declaration, submitted after her deposition, Dillane seemingly attempts to walk back some of her deposition statements. She states, in paragraph 6 of the declaration, as follows:

> United Tape wanted to make sure before purchasing the Workeasy system that it would not store fingerprints, which United Tape did not want. Padin represented to me that none of United Tape's workers' fingerprints would be stored anywhere. Padin also represented to me that no biometric [sic] would be stored. If United Tape had known the Workeasy system would be storing our workers' fingerprints or biometric information, it would not have purchased the system.

United Tape's Ex. A, Dillane Dec. ¶ 6.

Eventually, United Tape moved forward with the sale and purchased the timeclock device in December 2020. *See* EWF's Ex. E. During her deposition, Dillane was asked the following questions and gave the following answers:

Q: At the time . . . that United Tape acquired the EasyWorkforce licensing software, did you enter into any contract with EasyWorkforce?

A: No contract. There was simply an invoice.

Q: Great. So no invoices or purchase orders, is that it?

A: That's it.

EWF's Ex. B at 28:17-25.

## B. Class Action

On June 24, 2021, Maria Tapia-Rendon, a former employee at United Tape, filed suit on behalf of a putative class against multiple defendants—EWF, United Tape, and

4

Employer Solutions Staffing Group II, LLC.  Tapia-Rendon alleges that the defendants violated sections 15(b), 15(d), and 15(e) of BIPA.  *See* 740 Ill. Comp. Stat. 14/15(b), (d), (e).  Ultimately, on May 17, 2023, United Tape settled via a class action settlement agreement with Tapia-Rendon and the putative class.  Tapia-Rendon's claims against EWF are currently being litigated.

The plaintiff class contends that EWF's devices record biometric information. These devices all function in a similar manner.  To enroll a new user, an administrator of the device has to first activate the enrollment feature of the device and then select a finger, keycard, or numeric PIN to scan.  If a finger is the selected method of verification, the new user must scan the tip of his or her finger three times on the device's scanning surface.  The device uses software to convert the scan into a mathematical representation of the image.  EWF and plaintiffs dispute whether the devices generate biometric information.  The Court, however, has recently made a finding pursuant to Fed. R. Civ. P. 56(g) that the templates constitute biometric information as defined by BIPA.  *See* Dkt. no. 364.

United Tape contends that it was unaware of any legal issues with the devices it had acquired from EWF until it was served with plaintiffs' suit.  United Tape also contends that EWF had learned about another BIPA lawsuit on December 5, 2017 via a customer email.  Despite receiving this email years prior to United Tape's purchase of the system, United Tape contends, EWF did not inform United Tape about the lawsuit. Had EWF done so, United Tape contends, it would not have purchased EWF's devices.

## C.    Settlement

On May 17, 2023, the Court approved United Tape's settlement with the plaintiff

class. United Tape's insurance company paid the entirety of the $50,000 settlement amount into a settlement escrow account. United Tape contends, however, that the insurer paid only part of United Tape's attorney's fees and costs and that the company is liable for the remaining fees.

United Tape says that it is pursuing the crossclaim against EWF on behalf of itself and its insurer, to recoup the losses both experienced due to this litigation. United Tape asserts five claims against EWF. It contends that EWF fraudulently or negligently misrepresented that its devices did not store biometric identifiers or information within the meaning of BIPA (counts 1 and 2); that it is entitled to contribution from EWF under the Illinois Joint Tortfeasor Contribution Act, 740 Ill. Comp. Stat. 100/2 (count 3); that it is entitled to equitable and implied indemnity from EWF (count 4); and that EWF materially breached its agreement with United Tape (count 5).

EWF has moved for summary judgment on all of United Tape's claims.

**Discussion**

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In assessing a summary judgment motion, the Court construes all facts in the light most favorable to the nonmoving party. *See Horton v. Pobjecky*, 883 F.3d 941, 948

6

(7th Cir. 2018). The Court may not "make credibility determinations" or "weigh the evidence." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). To defeat summary judgment, the nonmoving party must identify specific facts, beyond a "mere scintilla of evidence," that raise a genuine issue for trial and that enable a jury to reasonably find for the non-movant party. *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018); *Anderson*, 477 U.S. at 248.

## A.      Fraudulent and negligent misrepresentation (counts 1 and 2)

United Tape contends that EWF misrepresented, either fraudulently or negligently, that EWF's devices did not, and would not, store users' biometric identifiers or biometric information. EWF maintains that it made no such representations.

To sustain a fraudulent misrepresentation claim, United Tape "must establish the following elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling*, 228 Ill. 2d 324, 342–43, 888 N.E.2d 24, 35–36 (2008); *see Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 569 (7th Cir. 2012). To prevail on its negligent misrepresentation claim, United Tape must establish "(1) a false statement of a material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance when the party making the statement is under a duty to communicate accurate information." *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 938, 791 N.E.2d 553, 562 (2003).

7

Both claims require United Tape to provide evidence of a false statement of material fact by EWF to United Tape. United Tape has not done so.

United Tape relies entirely on EWF's communications to Dillane. But it offers no evidence that EWF told Dillane that its devices did not collect biometric identifiers or biometric information. United Tape does offer testimony that EWF told Dillane that the system would not store *fingerprints.*, *See* EWF's Ex. A at 22:13-17. But the underlying litigation does not turn on whether the system stores fingerprints, i.e., biometric identifiers—rather, the dispute involves whether the system stored biometric *information* as defined by BIPA, that is, information *based on* users' fingerprints. Thus the question is whether EWF made any misrepresentations about the system storing biometric information.

No reasonable jury could construe EWF's alleged statement that the system did not store fingerprints as a representation that the system did not store biometric information. *See Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457 (7th Cir. 2020) (courts "draw all reasonable inferences from that evidence in favor of the party opposing summary judgment," not *all* inferences).

As EWF correctly contends, a series of statements in Dillane's deposition undermine United Tape's claim. After explaining that EWF told her that no fingerprints would be stored in the system, Dillane stated that she could not recall anything else that EWF's representative had said. EWF's Ex. A at 22:18-20. And when directly asked whether EWF used the term "biometric data," Dillane replied, "Well, I can't remember specifically what [Padin] said." *Id.* at 27:5-15. Dillane gave a similar response when asked whether she had ever asked whether the mathematical representation of the

8

fingerprint was the equivalent of biometric information. *Id.* at 25:4-11. United Tape has not offered any evidence from which a reasonable jury could find that EWF represented anything about *either* "biometric information" or even "biometric data" when it discussed its devices' storage capabilities. Nor has United Tape pointed to any evidence that it even asked EWF whether the devices stored this type of information.

More generally, Dillane testified that she was not even aware of BIPA in November 2020 and only became aware of the statute "[w]hen we were sued in July [2021]." *Id.* at 41:9-15. United Tape cannot viably maintain a contention that EWF misrepresented that it was BIPA compliant when United Tape did not even know about the statute at the time.

Dillane's subsequent declaration does not fill in the holes in United Tape's evidence. In her declaration, Dillane states that "Padin represented to me that none of United Tape's workers' fingerprints would be stored anywhere. Padin also represented to me that no biometric would be stored." United Tape's Ex. A, Dillane Dec. ¶ 6. This is odd phrasing: biometric *what*? Perhaps this was a typo combined with careless editing, but regardless of how it happened, a statement that EWF said that no "biometric" would be stored doesn't amount to testimony about storage of biometric *information*—particularly in the face of Dillane's repeated statements that she did not recall what EWF's representative had said, even when asked about "biometric *data*."[1]

-----

[1] Dillane's statement in the same paragraph of her declaration that "[i]f United Tape had known the Workeasy system would be storing our workers' fingerprints or biometric information, it would not have purchased the system," United Tape's Ex. A, Dillane Dec.

Nor does United Tape's contention that EWF misrepresented that the system was "SOC compliant" change the analysis.  First, United Tape's complaint contains no claim based on EWF mispresenting its system's SOC non-compliance.  *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 860 (N.D. Ill. 2013) ("A plaintiff cannot advance new arguments in response to a motion for summary judgment when no such claims were raised prior to summary judgment.").  Second, United Tape has not offered any evidence indicating how, if at all, SOC compliance or noncompliance has anything to do with the key BIPA issues involved in Tapia-Rendon's claims.  As EWF contends, "SOC compliance bears no relevance because United Tape's Cross-Claim does not allege that SOC compliance was the basis for its negligent or fraudulent misrepresentation claims. Further, SOC compliance is completely unrelated to the BIPA lawsuit brought by Plaintiff or United Tape's settlement of the Plaintiff's claims against it, and there is no allegation that any data breach took place."  *See* EWF's Reply at 2.

In sum, United Tape offers no evidence from which a reasonable jury could find that EWF misrepresented that its timekeeping devices did not collect biometric information.  For this reason, the Court grants EWF's motion for summary judgment Counts 1 and 2 of the crossclaim.

## B.      Contribution Act (count 3)

United Tape says in its response that it does not object to dismissal of its claim under the Contribution Act.  *See* United Tape's Resp. to Workeasy's Mot. for Summ. J.

---

¶ 6, does not save this point for United Tape.  A false statement and reliance are two separate elements of United Tape's claims, both of which must be satisfied.

at 7.  The Court grants EWF's motion for summary judgment on count 3.

## C.  Equitable and implied indemnity (count 4)

United Tape asserts that it is entitled to equitable and implied indemnity from EasyWorkforce for its acts and omissions that caused United Tape to incur damages and expense resulting plaintiffs' lawsuit.  A claim "for implied indemnity based upon quasi-contractual principles . . . [requires] (1) a pretort relationship between the third-party plaintiff and the third-party defendant, and (2) a qualitative distinction between the conduct of the third-party plaintiff and the third-party defendant." *Kerschner v. Weiss & Co.*, 282 Ill. App. 3d 497, 503, 667 N.E.2d 1351, 1356 (1996).  An implied indemnity claim is available "where the parties have failed to include an indemnity provision in an agreement, and there is reason for a court to read such a provision into the agreement." *Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*, 341 F.3d 644, 652 (7th Cir. 2003). The Seventh Circuit has clarified that "implied indemnity actions lie only where one party is in some sense 'at fault,' and the other party is blameless though liable—typically because of strict liability, *respondeat superior*, implied warranty, or some other legal principle that imposed liability regardless of fault." *Id.*

Though there are perhaps other points EWF could argue, in seeking dismissal of this claim it focuses on whether there is evidence that would permit a reasonable jury to find that United Tape was blameless despite potential liability under BIPA.  So the Court confines its discussion to this point.

United Tape identifies no evidence that would allow a reasonable fact finder to conclude that it was blameless in any potential BIPA violations.  For example, one of the plaintiffs' claims is that EWF violated section 15(d) of BIPA, 740 Ill. Comp. Stat.

14/15(d), which bars private entities from disclosing or disseminating biometric information unless they have obtained consent from the subject whose biometric information was transmitted.  United Tape has not pointed to any evidence from which a reasonable jury could find that it took the necessary steps to obtain consent and that it therefore was "blameless" for any liability found under 15(b).  United Tape contends that it has submitted evidence of its blamelessness, but its citation in support of this proposition is simply a general reference to paragraphs two through twelve of its statement of additional facts.  *See* United Tape Resp. to EWF's Stat. of Facts (dkt. 341) ¶¶ 2-12.  None of the factual assertions stated there support a determination of blamelessness on United Tape's part with respect to the claimed BIPA violations.  These paragraphs address what plaintiffs' evidence has shown about what EWF's system does, *see id.* ¶¶ 2-4; SOC compliance, *see id.* ¶¶ 5-8; and United Tape's claimed ignorance of the law, *see id.* ¶¶ 9-12.

For these reasons, even construing all reasonable inferences in favor of United Tape, the Court concludes that no reasonable jury could find that United Tape was blameless, as it has not identified any evidence supporting this proposition.

**D.     Breach of contract (count 5)**

"To succeed on an Illinois breach-of-contract claim, a plaintiff must plead and prove (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 680 F. Supp. 3d 1011, 1020 (N.D. Ill. 2023) (internal citation and quotation marks omitted).  United Tape contends that it entered into a contract with EWF for the purchase of its timeclock devices.  It supports this

proposition with an invoice that EWF sent to United Tape.  *See* EWF's Ex. B.

But an invoice that lacks all essential contract terms does not, at least on its own, qualify as a contract under Illinois law.  *See, e.g., Harold & Hilari, Inc. v. AA Auto & Truck Servs., Inc.*, 2020 IL App (1st) 190725-U, ¶ 16 ("In *Toth,* the court held the invoices and statements did not qualify as written contracts because the invoices and account statements did not to contain any promises from the defendant to pay. . . .  'Illinois courts strictly interpret the meaning of a written contract,' and a written contract must contain all essential terms' within the four corners of the instrument."); *Toth v. Mansell*, 207 Ill. App. 3d 665, 670, 566 N.E.2d 730, 734 (1990).  The invoice that United Tape references does not contain any information about the sale aside from the quantity and prices of the products purchased and basic information such as shipping and billing addresses.  "[I]nvoices or sales slips are routinely used for several purposes: to identify the sale and the articles sold, to identify the person making the sale, and to identify the person to whom the goods were delivered.  The documents [in this case] merely acknowledge that defendant purchased supplies from plaintiff."  *Id.*  Aside from this, the invoice does not reflect any of the essential terms of a contract: offer, acceptance, consideration, and mutual assent.  *See AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834, 844 (N.D. Ill. 2006).

This aside, as EWF points out, when Dillane was asked during her deposition if "[a]t the time that . . . United Tape acquired the EasyWorkforce licensing software, did [United Tape] enter into any contract with EasyWorkforce?," she responded: "No contract.  There was simply an invoice."  And, even when given another opportunity to clarify, Dillane doubled down on her statement and said: "That's it" when answering the

13

question "So invoices or purchase orders, is that it?" EWF's Ex. A at 28:21-25.

In its brief, United Tape argues that "Workeasy has in fact admitted that it entered into an agreement with United Tape to sell it a time clock and software at issue in this case. (ECF 321 ¶ 9; ECF 59 ¶ 5 and Affirmative Defense ¶ 5)." But these citations point to statements that suggest opposite conclusions. Paragraph nine of EWF's L.R. 56.1 statement (found at Dkt. no. 321) states that "[i]n December 2020, United Tape purchased a timeclock (the "Timeclock") from EasyWorkforce. (Ex. A, 22:25 – 23:8; Crossclaim, ¶ 5, Exhibit D; December 4, 2020 Invoice, Exhibit E.)." EWF's Stat. of Facts ¶ 9. But the *very* next statement of fact—for whatever reason, not included in the page range in United Tape's citation—states that "[t]he parties did not enter into a written sales contract for the purchase of the Timeclock; EasyWorkforce simply issued an invoice for payment, which United Tape paid. (Ex. A, 28:17 – 22, Ex. D.)" *Id.* ¶ 10. Similarly, paragraph five in EWF's answer (found at Dkt. no. 59) states that "Easyworkforce admits it sold United a timeclock and software in or around December 2020 but denies the remaining allegations in Paragraph 5 of the Cross-claim." EWF's Ans. ¶ 5. This statement, although confirming that both parties made a sale, does little to advance United Tape's argument that a contract was formed. United Tape's last citation is to EWF's fifth affirmative defense, which states that "United's claims are barred by reason of its prior breach of contract in failing to comply with Illinois law." *Id.* at 13 ¶ 5. But the affirmative defense cannot be framed as an admission on EWF's part because an affirmative defense essentially *assumes* admission of the plaintiffs' allegations—here the allegation that there was a contract. *See Myers v. Harold*, 279 F. Supp. 3d 778, 798 (N.D. Ill. 2017) ("[T]he basic concept of an affirmative defense is an

14

admission of the facts alleged in the complaint, coupled with the assertion of some other reason defendant is not liable.").  None of these citations, therefore, provide evidence that would permit a reasonable jury to find that United Tape and EWF entered into a contract.

Lastly, United Tape argues that a written agreement is not required to establish a breach of contract claim.  That is certainly true, but it does not advance the ball. Specifically, United Tape does not elaborate on this argument at all and makes no effort to establish that there was an oral contract.  In any case, the record does not support this contention.  When United Tape's representative Dillane was asked if the "only agreement entered into was the purchase orders [invoices]?", she responded, "Yes." EWF Ex. A at 56:20-23.

All this aside, even if United Tape had evidence sufficient to permit a finding that a contract had been formed, it is not clear what term of the purported contract it contends EWF breached.  To the contrary, Dillane maintained that she has no knowledge of and could not point to any specific provision in any potential agreement between the two parties that was breached.  *See* EWF Ex. A, at 57:6-10.

In sum, there is no evidence that would permit a reasonable jury to find that United Tape and EWF entered into a contract regarding the sale of the timeclocks. EWF is entitled to summary judgment on this claim as well.

### Conclusion

For all of these reasons, the Court grants EWF's motion for summary judgment

on United Tape's crossclaim [317].  The crossclaim is dismissed with prejudice.

Date:  August 10, 2025

_____
MATTHEW F. KENNELLY
United States District Judge