UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA TAPIA-RENDON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>WORKEASY SOFTWARE, LLC,<br><br>*Defendant*. | Case No. 1:21-cv-3400<br><br>Judge: Hon. Matthew F. Kennelly<br><br>Magistrate: Hon. Beth W. Jantz |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Thomas R. Kayes
LOEVY + LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
T: 312.243.5900
kayes@loevy.com

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.
Chicago, IL 60622
773.694.4669
nick@nicklarry.law

*Class Counsel*

# TABLE OF CONTENTS

1. INTRODUCTION .................................................................................................... 1

2. BACKGROUND ...................................................................................................... 1

    2.1. The Biometric Information Privacy Act ................................................... 1

    2.2. Litigation, negotiation, and settlement ...................................................... 2

3. TERMS OF THE SETTLEMENT .......................................................................... 4

    3.1. Class definition ......................................................................................... 4

    3.2. Settlement payments ................................................................................. 5

    3.3. Prospective relief ...................................................................................... 6

    3.4. Release of liability .................................................................................... 6

    3.5. Payment of notice and administration costs .............................................. 7

    3.6. Payment of attorneys' fees, costs, and service award .............................. 7

4. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..................... 7

    4.1. Plaintiff and Proposed Class Counsel have adequately represented the Class. .................................................................................................. 8

    4.2. The Settlement was the result of arm's-length negotiations. .................... 9

    4.3. The Settlement treats all Class and Subclass members equally. ............ 10

    4.4. The relief secured by the Settlement warrants approval. ....................... 11

        4.4.1. The costs, risks, and delay of trial and appeal warrant approval. ..... 12

        4.4.2. The effectiveness of the distribution method supports approval. ...... 13

        4.4.3. The proposed fee award supports approval. ....................................... 14

        4.4.4. There are no agreements requiring disclosure under Rule 23(e)(3). . 14

5. THE NOTICE PLAN SHOULD BE APPROVED .............................................. 15

6. CONCLUSION ...................................................................................................... 15

i

# **TABLE OF AUTHORITIES**

**CASES**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07-cv-2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) .......................................... 8

*Bernal v. ADP LLC, et al.*,
    Case No. 2017-CH-12364 (Ill. Cir. Ct. Feb. 10, 2021) ....................................................... 9

*Citizens Ins. Co. of Am. v. Mullins Food Prods., Inc.*,
    135 F.4th 1082 (7th Cir. 2025) ........................................................................................ 13

*Corzo v. Brown Univ.*,
    No. 22-cv-125, 2024 WL 3506498 (N.D. Ill. July 20, 2024) .......................................... 10

*Cothron v. White Castle Sys., Inc.*,
    2023 IL 128004 ................................................................................................................ 12

*Dixon v. Washington & Jane Smith Cmty.-Beverly*,
    No. 17-cv-8033, ECF No. 103 (N.D. Ill. May 31, 2018) ................................................. 11

*Fox v. Dakkota Integrated Sys., LLC*,
    980 F.3d 1146 (7th Cir. 2020). ........................................................................................... 3

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ............................................................................................. 7

*Herrera v. Charlotte Sch. of Law, LLC*,
    818 Fed. Appx. 165 (4th Cir. 2020) ................................................................................. 10

*Hirmer v. ESO Sols., Inc.*,
    No. 22-cv-1018, 2025 WL 2048339 (N.D. Ill. Jan. 14, 2025) ......................................... 14

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*,
    85 F.4th 1070 (11th Cir. 2023) ........................................................................................ 10

*In re Clearview AI, Inc., Consumer Privacy Litig.*,
    No. 21-cv-135, 2025 WL 1371330 (N.D. Ill. May 12, 2025) .......................................... 14

*Ohio Sec. Ins. Co. et al. v. Wexford Home Corp.*,
    No. 131378 (Ill. Mar. 26, 2025) ....................................................................................... 13

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815, 855 (1999) ................................................................................................ 11

*Roberson v. Maestro Consulting Services, LLC*,
    No. 20-cv-895, 2024 WL 4785358 (S.D. Ill. Nov. 14, 2024) .......................................... 14

*Roberts v. Graphic Packaging Int'l, LLC*,
　No. 21-cv-750, 2024 WL 3373780 (S.D. Ill. July 11, 2024) ........................................... 11

*Rogers v. BNSF Ry. Co.*,
　680 F. Supp. 3d 1027 (N.D. Ill. 2023) ............................................................................ 12

*Sayas v. Biometric Impressions Corp.*,
　No. 2020-CH-00201 (Ill. Cir. Ct. Mar. 6, 2024) ............................................................... 9

*Schulte v. Fifth Third Bank*, 8
　05 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................................ 13

*Snyder v. Ocwen Loan Servicing, LLC*,
　No. 14-cv-8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ....................................... 10

*Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*,
　102 F.4th 438 (7th Cir. 2024) ......................................................................................... 13

*Wright v. Nationstar Mortg. LLC*,
　No. 14-cv-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ....................................... 9

**STATUTES**

740 ILCS 14/15 ................................................................................................................ 1, 12

740 ILCS 14/5 ......................................................................................................................... 1

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment ...................................... 8

**TREATISES**

4 Newberg and Rubenstein on Class Actions § 13:53 (6th ed.) ................................................... 14

1.  **INTRODUCTION**

After more than four years of litigation, including certification of a Class and Subclass, a Rule 23(f) appeal to the Seventh Circuit, and competing summary-judgment motions, Plaintiff Maria Tapia-Rendon has reached a class-wide settlement with Defendant WorkEasy Software, LLC and its insurers, bringing this biometric-privacy litigation to a close on the eve of trial. Under the Settlement, WorkEasy and its insurers will contribute $1.685 million over five years, to be paid out to the Class members and Subclass members who timely submit valid claims.

The Settlement, reached only after a settlement conference and follow-up sessions with the Court, represents a strong result for the Class when viewed against the risk of trial and WorkEasy's financial and insurance positions. For the reasons set forth herein, Plaintiff respectfully requests that the Court grant preliminary approval, approve the notice plan herein, and order the dissemination of notice to the Class.

2.  **BACKGROUND**

    2.1.   **The Biometric Information Privacy Act**

Recognizing the "very serious need" to protect Illinoisans' biometrics, the Illinois legislature passed the Biometric Information Privacy Act, 740 ILCS 14/1–99 ("BIPA"), unanimously in 2008. 740 ILCS 14/5. BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain" a person's biometric identifier or information, unless it first informs them of the collection, its purpose, and the duration of storage, and then obtains written consent to the same. 740 ILCS 14/15(b). BIPA also requires the maintenance of and compliance with a written policy concerning destruction of biometrics, § 15(a), bars disclosure of biometrics without written consent, § 15(d), and requires the use of industry-standard security measures to protect any biometric data collected, § 15(e).

### 2.2. Litigation, negotiation, and settlement

For over a decade, WorkEasy[1] has sold several models of functionally identical biometric timeclocks and accompanying software to businesses worldwide, including to hundreds of businesses in Illinois. ECF No. 301 at 8–9; ECF No. 281. Through a staffing agency, Plaintiff worked for one of WorkEasy's customers, United Tape & Finishing Co., Inc., in Woodridge, Illinois. ECF No. 127, ¶ 24. While there, Plaintiff used one of WorkEasy's cloud-based biometric timeclocks. ECF No. 323, ¶¶ 58, 59. Plaintiff alleged that the timeclocks and their software captured and stored her biometric identifiers and information, and she filed suit against WorkEasy, United Tape, and Employer Solutions Staffing Group II, LLC (the staffing agency) for BIPA violations, as well as common-law privacy torts. ECF No. 1.

Plaintiff initiated discovery in August 2021. Larry Decl. ¶ 3. Plaintiff voluntarily dismissed her claims against Employer Solutions in December 2021, as discovery had shown that the company neither owned nor had access to the biometric data collected from the timeclock. ECF No. 42. Plaintiff reached a class-wide settlement with United Tape on September 27, 2022, ECF No. 81-1, and the Court granted final approval on May 17, 2023. ECF No. 137.

Meanwhile, Plaintiff and WorkEasy completed fact and expert discovery. Larry Decl. ¶ 3.[2] That discovery led to Plaintiff filing an amended complaint in April 2023, dropping her common-law claims and her BIPA Section 15(a) claims against WorkEasy and adding claims alleging that

---

[1] WorkEasy was previously known as EasyWorkforce, EasyClocking, and SekureID. *See* ECF No. 322-1 at 6.

[2] During discovery, one of WorkEasy's insurers, Scottsdale Insurance Company, initiated a declaratory action against WorkEasy and Plaintiff. *See Scottsdale Ins. Co. v. EasyWorkforce Software, LLC, et al.*, No. 23-cv-991 (N.D. Ill.). Around the same time, another one of WorkEasy's insurers, Wilshire Insurance Co., provided defense under a reservation of rights. A third insurer, Hartford Underwriters Insurance Co., initiated a declaratory action against WorkEasy and Plaintiff prior to the final settlement conference in this case. *See Hartford Underwriters Ins. Co. v. WorkEasy Software, LLC, et al.*, No. 25-cv-11109 (N.D. Ill.).

WorkEasy had failed to adequately secure her biometrics in violation of BIPA Section 15(e) and had disclosed her biometrics to its server vendor in violation of BIPA Section 15(d). ECF No. 127.[3] On August 15, 2023, the Court certified a Class of all individuals who used a cloud-based WorkEasy biometric device[4] in Illinois on or after June 24, 2016 and a Subclass of those Class members who used the device on or before April 30, 2022. ECF No. 167. WorkEasy moved for reconsideration of the Court's order, and the Court denied that motion. ECF No. 187. WorkEasy then petitioned the Seventh Circuit for review under Federal Rule of Civil Procedure 23(f), and the Circuit Court denied that petition on April 8, 2024. ECF No. 202.

With class certification resolved, Plaintiff began the process of disseminating notice to the Class. Because the Class members' identities were largely unknown to WorkEasy, Plaintiff had to subpoena each of WorkEasy's Illinois customers for lists of their employees who used WorkEasy's fingerprint devices in Illinois during the Class period. *See, e.g.*, ECF No. 207. After spending tens of thousands of dollars and engaging in repeated rounds of show-cause and contempt briefing involving dozens of entities, *see, e.g.*, ECF Nos. 224–243, 247–281, Plaintiff was eventually able to obtain employee lists from 136 WorkEasy customers, containing contact information for 8,858 class members. ECF No. 281. The notice administrator then disseminated direct notice to the

---

[3]   Plaintiff dismissed her Section 15(a) claims because her theory, as pleaded, failed to confer Article III standing to sue. *See* ECF No. 108. Plaintiff then refiled her Section 15(a) claim in state court. Larry Decl. ¶ 9. As part of the settlement, Plaintiff now seeks to file a second amended complaint re-asserting the Section 15(a) claims, so that the entire controversy can be resolved in one forum. The proposed second amended complaint includes allegations that WorkEasy retained her information when it was no longer necessary to do so, *see* ECF No. 375-1, ¶¶ 23, 46, which constitutes an injury giving rise to federal jurisdiction. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154–55 (7th Cir. 2020).

[4]   "Cloud-based WorkEasy biometric device" is defined to include a specific set of timeclocks. *See* ECF No. 139 at 7.

3

individuals on the Class list and effectuated a publication-notice program to apprise the remaining Class members of the class claims and of their ability to opt out. *See* ECF No. 289.

Following the dissemination of notice, Plaintiff moved for partial summary judgment on liability on all of her claims, and WorkEasy cross-moved for summary judgment. ECF Nos. 300 and 314. The Court granted WorkEasy's summary-judgment motion on Plaintiff's Section 15(d) claims, finding that WorkEasy did not disclose Plaintiff's biometrics to its server vendor, and the Court granted Plaintiff partial summary judgment on the issue of whether the fingerprint data at issue was "biometric information" as defined by BIPA. *See* ECF No. 354. The Court otherwise denied the motions, finding disputed issues of fact regarding WorkEasy's collection and possession of the biometric information, and regarding its compliance with industry standards for securing the biometrics. *Id.* Following its ruling, the Court set a December 8, 2025 trial date. ECF Nos. 357.

On October 9, 2025, the Court presided over a settlement conference attended by counsel and representatives for the Class, WorkEasy, and WorkEasy's three insurers, Hartford Underwriters Insurance Co., Scottsdale Insurance Co., and Wilshire Insurance Co. ECF No. 365. Through the conference and a series of follow-up meetings with the Court, the parties and the insurers were able to reach an agreement in principle on October 15, 2025. ECF No. 367. Over the course of the following five weeks, the parties and the insurers executed a term sheet, solicited bids from and selected a settlement administrator, and executed the settlement agreement now before the Court for preliminary approval. Larry Decl. ¶ 15.

3. **TERMS OF THE SETTLEMENT**

   3.1. **Class definition**

The Court certified a Class and Subclass on August 15, 2023, and the Settlement does not seek to change the Class criteria. Larry Decl., Ex. 1 ("Agreement"), ¶¶ 1.7, 1.37.

### 3.2. Settlement payments

WorkEasy and its insurers have agreed to create a $1,685,000 settlement fund. Agreement, § 2.1. After final approval, WorkEasy will make an initial payment of $400,000 (less the amount already paid for settlement notice), Wilshire will pay $100,000, Hartford will pay $20,000, and Scottsdale will pay $15,000. *Id*. Every six months after that, WorkEasy will pay a further $115,000 until a total of $1,685,000 has been paid into the settlement fund. Agreement, ¶ 2.1.3.

From the fund, the costs of notice and administration (approximately $67,767 for the initial notice and payments, and $14,122 per year after that), litigation expenses (no more than $253,376.31), attorneys' fees (no more than one third of the fund), and Plaintiff's service award (up to $10,000) will be paid. Agreement, ¶ 2.2.2.2. The remaining amount in the Settlement Fund will be distributed to Class Members who submit valid claims according to an allocation formula, with Subclass Members receiving 50% more than Class Members who are not in the Subclass (reflecting the fact that Class Members have two live claims—under BIPA Sections 15(a) and (b)—while Subclass members have an additional claim under Section 15(e)). Agreement, ¶ 2.2.2.1. The Class contains 21,915 members and the Subclass contains 19,248 members, and Class Counsel expect the per-person payments to total between $160 (for Class Members if there is a 15% claims rate) and $750 (for Subclass Members with a 5% claims rate). Agreement, Recitals, ¶ F. Class members will receive their payments yearly, and any unclaimed funds will be rolled over to the next round of payments. Agreement, ¶ 2.2.7. Once WorkEasy has completed its installment payments, any remaining unclaimed funds will be redistributed to the Class Members who timely cashed their checks or otherwise accepted their payments, and that process will continue until the remaining funds are insufficient to cover the costs of distribution. Agreement, ¶¶ 2.2.9–2.2.10. At that point, the remaining funds will be sent to the Unclaimed Property Division of the Illinois

Treasurer's Office. Agreement, ¶ 2.2.10.

### 3.3. Prospective relief

Following the Subclass period, WorkEasy began to encrypt the database containing the templates collected through its biometric devices, and it obtained SOC-2 certification at the corporate level.[5] Then, in 2023, WorkEasy rolled out an update to its cloud-enabled biometric devices, requiring new users to agree to the collection of their biometrics prior to their registration on the device. Larry Decl. ¶ 4. Under the Settlement, WorkEasy will maintain that consent interface and industry-standard database encryption as long as its customers continue to use cloud-based biometric devices in Illinois. Agreement, ¶ 2.3. WorkEasy has also agreed that, beginning within 60 days of the Settlement's Effective Date, it shall ensure deletion of any template data for a Class Member whose status is designated as "terminated" by their employer within 60 days of such status change. *Id.* Prior to the Settlement, WorkEasy's policy was to retain those templates indefinitely, unless the employer requested deletion, which had not occurred. Larry Decl. ¶ 4.

### 3.4. Release of liability

Upon the Effective Date, (i) Plaintiff and every Class Member who has not timely filed a request to be excluded from the Class will release and forever discharge the Released Parties as further explained in the Settlement Agreement, and (ii) the Court will be asked to enter a final judgment in favor of Defendant, dismissing with prejudice all claims asserted in, or that could have been asserted in, this action, the state-court action, or the insurance-coverage actions, against WorkEasy or its insurers. Settlement Agreement ¶ 3.1. The Settlement does not provide for a general release of the Class Members' claims. *Id.*

---

[5] SOC-2 "is an industry certification used to certify that a third-party service provider is compliant with industry standards and ensures that they store and process client data securely." ECF No. 303-49 at 14.

### 3.5. Payment of notice and administration costs

The Settlement Fund will be used to pay the costs of sending the Notice and any other notice the Court requires, as well as all costs of administration. *Id.* ¶ 1.31.

### 3.6. Payment of attorneys' fees, costs, and service award

Plaintiff may seek a service award of not more than $10,000 as compensation for her effort in bringing the case and achieving the benefits of the Settlement on behalf of the Class. *Id.* ¶ 8.3. Further, Class Counsel may seek attorneys' reimbursement of its expenses up to $253,276.31, and attorneys' fees in an amount not to exceed one third of the net settlement fund. Settlement Agreement, ¶ 8.1. WorkEasy may oppose both the request for a service award and the request for attorneys' fees and expenses. *Id.* ¶¶ 8.1, 8.3.

Plaintiff intends to seek reimbursement of litigation expenses from the initial settlement fund, but will seek payment of attorneys' fees and the incentive award over time, in the same fashion that the class members' payments will be distributed. Larry Decl. ¶ 16.

## 4. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

When considering whether a settlement is "within the range of possible approval" such that there is "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing," *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982), Rule 23(e)(2) directs courts to consider whether: (1) the class representative and counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided is adequate. Fed. R. Civ. P. 23(e)(2). Here, the settlement satisfies these factors and warrants preliminary approval.

### 4.1. Plaintiff and Proposed Class Counsel have adequately represented the Class.

Rule 23(e)(2)(A)'s adequacy analysis focuses "on the actual performance of counsel acting

on behalf of the class," and considers (1) the nature and amount of discovery completed and (2) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment.

Here, Plaintiff has been involved throughout this case, including helping her attorneys investigate her claims; reviewing the complaint before filing; responding to discovery from both United Tape and WorkEasy; sitting for two depositions; regularly conferring with her counsel; rejecting, authorizing, and ultimately accepting settlement proposals; participating in the in-person settlement conference that led to the Settlement; and reviewing and signing the settlement agreement. Larry Decl. ¶ 20. There would be no settlement without Plaintiff's representation.

Likewise, Class Counsel's performance in this case demonstrates their adequacy. First, proposed Class Counsel conducted more than enough discovery to "evaluate the merits of the case" and engage in informed negotiations. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-cv-2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (noting that the standard "is not whether it is conceivable that more discovery could possibly be conducted."). Fact and expert discovery were completed, and trial was just six weeks away when the parties reached an agreement in principle with the Court's assistance. ECF Nos. 357 and 367. Class Counsel's work included serving and reviewing responses to hundreds of discovery requests; reviewing thousands of pages of documents and deposition testimony; undertaking the burdensome process of constructing the class list through subpoenas of 267 of WorkEasy's Illinois customers; funding the class-notice process; and briefing numerous dispositive issues, including Plaintiff's motion for class certification, WorkEasy's motion for reconsideration of the Court's certification ruling, WorkEasy's Rule 23(f) appeal of the certification Order; and the parties' summary-judgment

motions. Larry Decl. ¶ 21. That effort has crystallized the issues sufficiently for Plaintiff and her counsel to weigh the risks and rewards of settlement and further litigation. *Id.* ¶ 22.

As a result of that work, Plaintiff and Class Counsel were able to obtain a result that maximizes the recovery for the Class in light of WorkEasy's financial condition and the uncertain—at best—status of WorkEasy's insurance coverage. Despite those real financial limitations, the Settlement will, if approved, recover a gross amount of $76.89 each and provide each claiming class member with payments of hundreds of dollars, which is in line with typical recoveries in BIPA cases against biometric vendors. *See, e.g.*, *Bernal v. ADP LLC, et al.*, Case No. 2017-CH-12364 (Ill. Cir. Ct. Feb. 10, 2021) (gross recovery of $78.13 per class member and payments of approximately $350 per member); *Sayas v. Biometric Impressions Corp.*, Case No. 2020-CH-00201 (Ill. Cir. Ct. Mar. 6, 2024) (gross recovery of $108.50 per class member).

Thus, the Class stands to reap valuable benefits thanks to Plaintiff's and Class Counsel's hard work pursuing representing their interests. This factor is satisfied.

### 4.2. The Settlement was the result of arm's-length negotiations.

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This factor is easily satisfied. To start, the parties here discussed settlement only after starting discovery. *See Wright v. Nationstar Mortg. LLC*, No. 14-cv-10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where the parties "engaged in discovery" prior to reaching settlement). And that negotiation process took place over the course of years. Plaintiff and WorkEasy first began discussing settlement early in 2022, Larry Decl. ¶ 5, and held an unsuccessful settlement conference with Magistrate Judge Jantz in December 2022. ECF Nos. 93, 101. The parties continued to negotiate off-and-on for years, without resolution. Larry Decl. ¶¶ 5–7, 12, 13. Only after the Court ruled on the parties' summary-judgment motions and presided over an in-person settlement conference was

9

an agreement reached, and even that required further assistance from the Court in the days following the conference. *See* ECF Nos. 365, 367.

The settlement process was, therefore, entirely free from collusion, and the Settlement's terms confirm its absence: "[T]here is no provision for reversion of settlement amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation." *Snyder v. Ocwen Loan Servicing, LLC*, No. 14-cv-8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (Kennelly, J.). Accordingly, this factor also favors approval.

### 4.3. The Settlement treats all Class and Subclass members equally.

Next, the Court considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). It does. To start, the allocation formula between Class members and Subclass members is equitable: following summary judgment, Class members have two live bases for BIPA liability (Sections 15(a) and (b)), while Subclass members have an additional basis for recovery (BIPA Section15(e)). Accordingly, Subclass members' recoveries surpass Class-member recoveries by a ratio of three to two. Agreement ¶ 2.2.2.1. Because Rule 23(e)(2)(D) "requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally," *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1093 (11th Cir. 2023), Courts approve similar allocation formulae where "the mechanism developed for distributing the fund is proportionate to what each member of the class suffered, awarding those who suffered more … a greater share." *Herrera v. Charlotte Sch. of Law, LLC*, 818 Fed. Appx. 165, 175–76 (4th Cir. 2020); *Corzo v. Brown Univ.*, No. 22-cv-125, 2024 WL 3506498, at *4 (N.D. Ill. July 20, 2024) (Kennelly, J.).

Within both the Class and the Subclass, the Settlement treats members equitably by

offering them *pro rata* payments: Each claiming Class member will receive two allocation points, and each claiming Subclass member will receive three, with the value of one allocation point being equal across the Class (and dependent on the number of claims filed). *See* Agreement ¶ 2.2.2. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (equitable treatment is "assured by straightforward pro rata distribution of the limited fund.").

The provision of a service award to Plaintiff is consistent with that equitable treatment. The $10,000 service award would reflect the substantial work Plaintiff performed for the Class's benefit, and is in line with those paid in other BIPA cases. *See, e.g.*, *Roberts v. Graphic Packaging Int'l, LLC*, No. 21-cv-750, 2024 WL 3373780, at *6 (S.D. Ill. July 11, 2024) (collecting cases); *Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17-cv-8033, ECF No. 103 (N.D. Ill. May 31, 2018) ($10,000 service award). Moreover, Plaintiff will receive any service award in payments made over five years, just like the Class-Member payments. Larry Decl. ¶ 17.

Because both the allocation plan and the proposed service award are equitable, Rule 23(e)(2)(D) supports preliminary approval.

### 4.4. The relief secured by the Settlement warrants approval.

The final Rule 23(e)(2) factor examines whether the relief provided for the class is adequate considering (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. Fed. R. Civ. P. 23(e)(2). As set forth below, each supports approval.

#### 4.4.1. The costs, risks, and delay of trial and appeal warrant approval.

To start, the cost, risk, and delay of further litigation favor approval. The Court held at summary judgment that a jury could reasonably find that WorkEasy neither collected nor captured

the Class's biometric information. ECF No. 357. If the jury did so find, that would defeat all of Plaintiff's claims. 740 ILCS 14/15. The Court also held that a jury could find WorkEasy's data-security measures sufficient under Section 15(e). ECF No. 357. And the State Court already dismissed Plaintiff's Section 15(a) claims without prejudice. Larry Decl. ¶ 10. In short, while Class Counsel is confident in their ability to prove the Class's claims, they also recognize that their affirmative summary judgment motion largely failed, and anything can happen at trial.

Even if the Class prevailed on liability, obtaining and actually collecting on a damages award would be no sure thing. Starting with the damages award, while Class Counsel believes that BIPA's text provides for liquidated damages of either $1,000 or $5,000 per violation (depending on state of mind), Class Counsel is obviously aware of the Illinois Supreme Court's statements on the matter, and this Court's resulting decision that the statute creates a discretionary-damages regime. *See Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1041 (N.D. Ill. 2023) (citing *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004 ¶ 42). As a result, Plaintiff and Class Counsel were cognizant of the possibility that the jury could award the Class less in damages than WorkEasy was offering in settlement.

Worse still, even if the jury had awarded more than the Class now stands to recover in settlement, the jury's award would have been effectively un-collectable. From the start of Plaintiff's settlement negotiations with WorkEasy in 2022, WorkEasy has denied its ability to fund a large settlement, and has provided detailed financial statements to that effect. Larry Decl. ¶ 14. Each time WorkEasy gave Plaintiff a new set of financials, Class Counsel reviewed them with their accounting expert, and WorkEasy answered any questions Class Counsel had regarding the financials. Larry Decl. ¶ 14. Before and during the settlement conference, WorkEasy shared

12

updated financials with Plaintiff and the Court, and Class Counsel's takeaway was that WorkEasy could not have paid more than it offered in settlement. *Id.*

None of that would have been a problem if WorkEasy had applicable insurance coverage, but two of WorkEasy's insurers had denied coverage and initiated declaratory actions, while the third was offering defense under a reservation of rights. Settlement, Recitals ¶¶ B, C, N. To obtain coverage, Plaintiff and/or WorkEasy would have had to convince the Seventh Circuit to deviate from several of its recent decisions, or to certify the question to the Illinois Supreme Court. *See Citizens Ins. Co. of Am. v. Mullins Food Prods., Inc.*, 135 F.4th 1082, 1091 (7th Cir. 2025) (citing *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 102 F.4th 438 (7th Cir. 2024)). Given that the Seventh Circuit has recently refused to certify the relevant insurance questions to the Illinois Supreme Court, *see Citizens*, 135 F.3d at 1091, and the Illinois Supreme Court has denied petitions for leave to appeal raising similar issues, *see Ohio Sec. Ins. Co. et al. v. Wexford Home Corp.*, No. 131378 (Ill. Mar. 26, 2025), the odds of obtaining coverage were exceedingly slim.

Against these odds, the payment of $1.55 million by WorkEasy and another $135,000 by its insurers represents a best-case outcome, which supports approval. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 582 (N.D. Ill. 2011).

### 4.4.2. The effectiveness of the distribution method supports approval.

The Settlement's straightforward distribution process also favors approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg and Rubenstein on Class Actions § 13:53 (6th ed.). Here, the Settlement provides for complete distribution to Class members who submit valid claims. After the Class members make

a single claim, they will automatically receive recurring distributions until the amount remaining in the fund is less than the cost of distributing it, at which point it will be turned over to the Illinois Treasurer's unclaimed property division. Agreement, ¶ 2.2.7–10.

### 4.4.3. The proposed fee award supports approval.

Third, the relief provided to the class considering "the terms of any proposed award of attorneys' fees, including timing of payment," Fed. R. Civ. P. 23(e)(2)(C)(iii), favors approval. The Settlement contemplates that proposed Class Counsel will seek a fee award not to exceed one third of the settlement fund, which WorkEasy may oppose. Agreement ¶ 8.1. The percentage-of-the-fund method has, to Class Counsel's knowledge, been used to determine attorneys' fees in every BIPA settlement to date, and the Settlement's upper bound of one-third of the fund is within the range of reasonable BIPA settlements. *See, e.g.*, *In re Clearview AI, Inc., Consumer Privacy Litig.*, No. 21-cv-135, 2025 WL 1371330 (N.D. Ill. May 12, 2025) (awarding 39.1% of gross settlement fund); *Hirmer v. ESO Sols., Inc.*, No. 22-cv-1018, 2025 WL 2048339, at *3 (N.D. Ill. Jan. 14, 2025) (awarding 36% of net settlement fund); *Roberson v. Maestro Consulting Services, LLC*, No. 20-cv-895, 2024 WL 4785358, at *3 (S.D. Ill. Nov. 14, 2024) (awarding 40% of the gross settlement fund). Accordingly, the Settlement's allowance for Class Counsel to seek, and WorkEasy to oppose, an award of one-third of the fund in attorneys' fees, Agreement ¶ 8.1, is more than appropriate.

### 4.4.4. There are no agreements requiring disclosure under Rule 23(e)(3).

Rule 23(e)(3) requires disclosure of "any agreement made in connection with the propos[ed]" settlement. Fed. R. Civ. P. 23(e)(3). Here, there are no such agreements; the entirety of the parties' agreement is reflected in the Settlement presented to the Court. Larry Decl. ¶ 19. As such, this factor favors approval as well.

## 5. THE NOTICE PLAN SHOULD BE APPROVED

Even where a class has already been certified under Rule 23(b)(3) and notice disseminated, Rule 23(e) requires notice to the absent class members and an opportunity to object and opt out. Fed. R. Civ. P. 23(e)(1), (4), (5). That notice must be the "best … practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the proposed notice is the best practicable under the circumstances. The Settlement contemplates providing direct "individual notice to all class members who [were] identified" through the subpoena process. Fed. R. Civ. P. 23(c)(2)(B); Settlement, ¶ 4.1.3. The Settlement also contemplates a website, mailing address, and phone number, along with a publication notice plan intended to apprise as many absent class members as practicable of the settlement. Settlement, § 4.1. The publication campaign will be targeted toward Illinoisans who have recently worked hourly jobs, with advertisements appearing on Facebook, Instagram, and on websites likely to be viewed by class members. Larry Decl. ¶ 18. The proposed claim form and short-form and long-form notices are attached as Exhibits A through C to the Settlement, and contain plain-language details of the information required by Rule 23(c)(2)(B). Because the notice satisfies Rule 23 and provides due process, it warrants approval.

## 6. CONCLUSION

Accordingly, Plaintiff respectfully requests that this Court: (1) preliminarily approve the proposed Settlement; (2) approve the form and methods of the proposed notice; (3) order the issuance of notice; and (4) grant such other relief as the Court deems reasonable and just.

Dated: November 24, 2025

Respectfully submitted,

**MARIA TAPIA-RENDON,** individually and on behalf of all others similarly situated,

s/ J. Dominick Larry
One of Plaintiff's Attorneys

Thomas R. Kayes
LOEVY + LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
T: 312.243.5900
kayes@loevy.com

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.
Chicago, IL 60622
773.694.4669
nick@nicklarry.law

*Class Counsel*

16